UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICHOLAS SKIADAS, *individually and on behalf of all others similarly situated*,

                    Plaintiffs,

        -against-

ACER THERAPEUTICS INC., CHRIS SCHELLING, and HARRY PALMIN,

                    Defendants.

---

Case No. 1:19-CV-6137-GHW

Oral Argument Requested

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

MORRISON & FOERSTER LLP

Jamie A. Levitt
Lauren M. Gambier
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  JLevitt@mofo.com
       LGambier@mofo.com

Jordan Eth (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com

*Attorneys for Defendants Acer Therapeutics Inc., Chris Schelling, and Harry Palmin*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................................... 4

    I.    Acer Invests in Development of a Treatment for a Serious Inherited Disorder............................................................................................................. 4

    II.    Acer Expands Its Team to Be Ready to Distribute EDSIVO ................................ 5

    III.    Acer Submits a New Drug Application to the FDA for EDSIVO......................... 6

    IV.    Defendants Are Surprised and Disappointed When the FDA Rejects the NDA .................................................................................................................... 6

ARGUMENT............................................................................................................................ 7

    I.    THE AMENDED COMPLAINT FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION................................................................... 8

        A.    Plaintiff Has Not Pled Any Materially False or Misleading Statements Regarding Defendants' Communications with the FDA ........ 8

        B.    Plaintiff Has Not Pled Any False or Misleading Statements Regarding the Ong Trial or JACC Study .................................................. 11

    II.    THE AMENDED COMPLAINT FAILS TO PLEAD SCIENTER. .................... 15

        A.    Plaintiff's Scienter Allegations Are All Impermissible "Group Pleading"........................................................................................... 15

        B.    Plaintiff Has Not Identified Any Fraudulent Motive.............................. 16

        C.    Plaintiff Has Not Alleged Conscious Misbehavior or Recklessness ....... 18

            1.    Plaintiff Does Not Identify Any Contrary Information to Support His Recklessness Allegations......................................... 19

            2.    Plaintiff Does Not Plead Facts to Support a Claim of False Opinion ...................................................................................... 21

    III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY ................ 23

CONCLUSION ...................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012)..................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).........................................................................................8, 10, 15

*In re Carter-Wallace, Inc. Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)..................................................................................................21

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)................................................................................................18

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
No. 10 Civ. 2835 (NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)................................20

*Cozzarelli v. Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) ........................................................................................16, 18

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..........................................................................................15, 18

*In re Elan Corp. Secs. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y 2008)....................................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
308 F. Supp. 2d 249 (S.D.N.Y. 2004)...................................................................................19

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008)...................................................................................13

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)..............................................................................12, 18

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)......................................................................................15, 17, 19

*Kleinman v. Elan Corp.*,
706 F. 3d 145 (2d Cir. 2013)..........................................................................................13, 14

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)..................................................................................................3

*Lehmann v. Ohr Pharmaceutical, Inc.*,
No. 18-cv-1284 (LAP), 2019 WL 4572765 (S.D.N.Y. Sept. 20, 2019) ......................21, 22, 23

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)...........................................................................................................3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., L.L.C.*,
797 F.3d 160 (2d Cir. 2015)..........................................................................................................16

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)...........................................................................................................................7

*In re Merrill Lynch & Co. Research Reports Secs. Litig.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003)..........................................................................................3

*In re N. Telecom Ltd. Sec. Litig.*,
116 F. Supp. 2d 446 (S.D.N.Y. 2000)..........................................................................................16

*Nguyen v. Radient Pharm. Corp.*,
No. SA CV 11-0406 DOC, 2011 WL 5041959 (C.D. Cal. Oct. 20, 2011) ............................17

*In re Philip Morris Int'l Inc. Secs. Litig.*,
No. 18-cv-08049 (S.D.N.Y. Feb. 4, 2019), ECF No. 123 .................................................14, 22

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..........................................................................................................12

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009)............................................................................................................19

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015),.............................................................................11, 21, 22

*Schueneman v. Arena Pharm., Inc.*,
840 F.3d 698 (9th Cir. 2016) .......................................................................................................20

*Szulik v. Tagliaferri*,
966 F. Supp. 2d 339 (S.D.N.Y. 2013)..........................................................................................15

*Tabak v. Canadian Solar, Inc.*,
549 F. Appx. 24 (2d Cir. 2013).....................................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................................................................7

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)...................................................................................................11, 14

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)....................................................................................20

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)..................................................................................................23

**Statutes**

Fed. R. Civ. P. 9(b). ..................................................................................................7, 10, 21

15 U.S.C.A. § 78u-4...........................................................................................7, 10, 15, 18, 21

**PRELIMINARY STATEMENT**

Acer Therapeutics Inc. ("Acer," and together with individual defendants Chris Schelling and Harry Palmin, "Defendants") is an early-stage biopharmaceutical company dedicated to developing life-saving drugs for people afflicted with rare diseases. This case involves a medication Acer is hoping to develop and bring to market called celiprolol that is used in Europe to treat vascular Ehlers-Danlos syndrome ("vEDS"), a serious life-threatening disease. There is currently no pharmacological treatment for vEDS available in the United States.

In 2016, Acer acquired the rights to data from a clinical study conducted primarily in France on the use of celiprolol to treat vEDS, known as the Ong Trial. Defendants planned to validate the data from this study and then seek approval from the Food and Drug Administration ("FDA") to distribute celiprolol, under the tradename EDSIVO, for treatment of vEDS in the United States.

In October 2018 Acer submitted a new drug application ("NDA") for EDSIVO to the FDA. Two months later, the FDA accepted Acer's NDA for filing and substantive review and granted the application priority review status. This acceptance represented a major step in the process, as the FDA can, and often does, refuse to accept applications after they are submitted. With the application accepted for filing and substantive review, Defendants continued their work planning and building a team for a successful review process and preparing Acer to bring the drug to market. Unfortunately, in late June 2019, the FDA announced its rejection of the NDA application due to purported inadequacies in the data. Acer—whose profitability depends entirely on its ability to bring drugs like EDSIVO to market—saw its stock price drop significantly after this announcement.

Plaintiff then sued on behalf of himself and a putative class of investors who purchased Acer securities between September 25, 2017, the date on which Acer announced that it had

1

obtained positive results from its analysis of the Ong Trial data (Am. Compl. ¶ 45), and June 24, 2019, the date of the FDA's announcement of its rejection of the NDA ("the Class Period") (*Id*. ¶¶ 8-9).

Plaintiff claims that during the Class Period, Acer's stock price was artificially inflated because Defendants allegedly misled the market about the likelihood that the FDA would approve EDSIVO, in order to raise cash to fund Acer's operations. (*Id*. ¶¶ 8-9.) According to Plaintiff, Defendants' statements regarding their communications with the FDA—particularly that the FDA agreed that no further clinical trials of EDSIVO were needed—were materially false or misleading because, Plaintiff speculates, the FDA had not so agreed and had in fact communicated to Acer that the Ong Trial data was flawed. (*Id*. ¶¶ 9-10.) Likewise, Plaintiff asserts that Defendants' statements regarding their positive outlook for EDSIVO were allegedly also false or misleading. (*Id*. ¶ 11.)

Plaintiff's assertions fail in three respects: (1) Defendants *never* said the FDA agreed that no further studies were required for approval; Plaintiff mischaracterizes Defendants' statements made in the context of *submission*, not *approval*, of the NDA; (2) Plaintiff points to *no* information or communications from the FDA that contradict or undermine Defendants' statements; Plaintiff assumes in hindsight that because the FDA rejected the NDA, there must be information that Defendants omitted; and (3) Plaintiff's claim is *illogical*; Defendants' pouring of time, money, and reputational risk into development and distribution of EDSIVO, as alleged in the Amended Complaint, is consistent with Defendants' belief in the truth of their statements.

For these reasons, Plaintiff fails to allege either falsity or scienter—necessary elements for pleading securities fraud. He has not adequately alleged any misrepresentations, instead mischaracterizing Defendants' public statements and speculating about what the FDA "must

have" or "would have" told Defendants. He alleges no motive to commit fraud, as no Defendants sold stock or otherwise received any financial benefit as a result of the purported fraud. Instead, Plaintiff tries to allege recklessness based on a nonsensical scheme that Defendants hired executives and staff and built out the company's operations so that it could raise money to undertake these activities knowing all along that the FDA would reject Acer's NDA. (*Id.* ¶¶ 114-122.)

Investing in early-stage pharmaceutical companies is risky. As Acer's experience with EDSIVO demonstrates, companies can and do devote huge sums of money over many years to developing pharmaceutical products that are not approved. Plaintiff chose to invest in this uncertain business, and all the risks inherent to it were fully disclosed to him. As if this were not already obvious to all investors, Acer's public filings made clear that the development and approval process for new drug candidates such as EDSIVO is risky and unpredictable, and that "[e]ven if [Acer] believe[s] the data collected from clinical trials of [its] current product candidates are promising, such data may not be sufficient to support approval by the FDA . . . ." (Acer Therapeutics Inc., Annual Report (Form 10-K) (Mar. 7, 2018), at 33, attached as Exhibit A to the Declaration of Jamie A. Levitt, dated Feb. 7, 2020 ("Levitt Decl.").)[1] "The FDA may not grant marketing approval on a timely basis, or at all." (Acer Therapeutics Inc., Preliminary Prospectus Supplement (Rule 424(b)(3)) (Dec. 11, 2017), at 16, attached as Levitt Decl. Ex. B.)

Plaintiff is not a victim of a fraud, and he has not adequately pled falsity or scienter. The Court should dismiss the Amended Complaint with prejudice.

---

[1] In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court may take judicial notice of public documents filed with the Securities and Exchange Commission. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 273 F. Supp. 2d 351, 357 (S.D.N.Y. 2003), *aff'd in part & rev'd in part sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

**FACTUAL BACKGROUND**

Acer is a small biopharmaceutical company that focuses on the acquisition, development, and commercialization of therapies for patients with serious rare diseases. (Am. Compl. ¶ 7.) Like many pre-commercial companies of this kind, Acer does not yet generate revenue from product sales. It instead relies on investor funding to finance research and development of drug candidates, in the hope that they will eventually be successfully developed, approved, and brought to market after the long and complex series of requirements for development of a new drug. (Acer Therapeutics Inc., Quarterly Report (Form 10-Q) (Nov. 13, 2017) at 17, attached as Levitt Decl. Ex. C.) Defendants' representations regarding this FDA review and approval process are the subject of this action.

**I.      Acer Invests in Development of a Treatment for a Serious Inherited Disorder**

vEDS causes abnormal fragility in blood vessels, which can lead to aneurysms, abnormal connections between blood vessels known as arteriovenous fistulas, arterial dissections, and spontaneous vascular ruptures, all of which can be fatal. (Am. Compl. ¶ 33; Levitt Decl. Ex. A at 3.) Arterial, digestive, or uterine complications in vEDS patients typically require immediate hospitalization, observation in an intensive care unit, and sometimes surgery. (Am. Compl. ¶ 33; Levitt Decl. Ex. A at 4.) The median survival age of a person with vEDS is 51 years old. (Levitt Decl. Ex. A at 3.) There is currently no approved drug available to treat vEDS in the United States. (Am. Compl. ¶ 34.)

By contrast, EDSIVO, under the generic name celiprolol, is being successfully used to treat vEDS patients in Europe. (Am. Compl. ¶ 34.) In 2004, researchers at Assistance Publique—Hôpitaux de Paris, Hôpital Européen Georges Pompidou ("AP-HP") published data on vEDS patients that inspired a later clinical trial in France and Belgium. (*Id.* ¶ 36.) The clinical trial, known as the "Ong Trial," was funded by the French Ministry of Health and

included fifty-three patients at nine treatment centers. (*Id.* ¶¶ 36-37.) The clinical trial was set up for five years of treatment and five years of follow-up, but the physicians conducting and monitoring the trial stopped it early, after more than five years, because it had already shown statistically significant positive results. (*Id.* ¶ 37.) The data showed that celiprolol reduced patients' risk of a cardiac or arterial event by 64% compared to the control group. (*Id.*) On October 30, 2010, the results of the Ong Trial were published in the prestigious medical journal *The Lancet*. (*Id.* ¶ 36.)

In August 2016, Acer acquired an exclusive license to the Ong Trial data from AP-HP, with the intention of using the data to support an application to the FDA to approve EDSIVO in the United States. From December 2013 to December 2018, Acer spent approximately $23.6 million on research and development expenses directly related to EDSIVO. (*Id.* ¶ 31.) These research and development costs included validation of the Ong Trial data, reconciliation of the data to identify any missing or incomplete data, and completion of a retrospective, source-verified analysis of that data, including the Ong Trial's primary and secondary endpoints. On September 25, 2017, Acer announced that it had successfully verified and confirmed the Ong Trial source data. (*Id.* ¶ 45.)

## II.    Acer Expands Its Team to Be Ready to Distribute EDSIVO

Defendants made plans to be ready to distribute EDSIVO if and when it was approved and took steps to ensure that the drug would be successful, including hiring additional personnel to build out Acer's commercial team. (*Id.* ¶¶ 67-70.) In February 2018, Acer announced that it had expanded its management team by hiring three new executives, as well as a senior marketing director. (*Id.* ¶ 67.) In May 2018, Acer informed the market that it had hired another three executives, as well as a chief legal officer, and that it was planning to make further commercial and medical affairs hires and to expand its commercial and core personnel teams throughout the

year.  (*Id.* ¶ 69.)  In August 2018, Acer announced the hiring of two additional senior executives "[a]s part of [its] pre-commercial preparation," and reiterated its commitment to hiring more senior level personnel and expanding its commercial team.  (*Id.* ¶ 70.)

### III.    Acer Submits a New Drug Application to the FDA for EDSIVO

Acer engaged with the FDA for years in preparation for submission of its NDA.  In September 2015, several years before submission, Defendants met with the FDA to discuss the existing clinical data for EDSIVO.  (*Id.* ¶ 59.)  Defendants met with the FDA again in May 2017 to discuss non-clinical and manufacturing data, and to identify whether there were any gaps to address in advance of submitting the NDA.  (*Id.* ¶ 53.)  On September 25, 2017, the start of Plaintiff's Class Period, Acer announced positive results from its analysis of the Ong Trial data, which would later be used to support the EDSIVO NDA.  (*Id.* ¶ 78.)  Just over a year later, on October 29, 2018, Acer announced that it had submitted an NDA for EDSIVO and requested priority review.  (*Id.* ¶ 71.)  Shortly thereafter, on December 26, 2018, Acer announced that the FDA had accepted the EDSIVO NDA for substantive review *and* granted priority review.  (*Id.* ¶ 72.)

### IV.    Defendants Are Surprised and Disappointed When the FDA Rejects the NDA

On June 25, 2019, Acer announced that it had received a Complete Response Letter ("CRL") from the FDA in response to the EDSIVO NDA.  (*Id.* ¶ 105.)  The FDA issues a CRL when it determines that it will not approve an application in its present form.  To Acer's surprise, the CRL stated that it would be necessary to conduct an "adequate and well-controlled" trial to determine whether celiprolol reduces the risk of clinical events in patients with vEDS.  (*Id.*)  Although the CRL was a major setback, it is not the end of the road for EDSIVO.  Since June 2019, Acer has been in contact with the FDA and other experts regarding the potential path forward for EDSIVO.  (*See* Acer Therapeutics Inc., Current Report (Form 8-K) (Jan. 2, 2020),

attached as Levitt Decl. Ex. D.)  On December 30, 2019, Acer submitted a Formal Dispute

Resolution Request to the FDA Office of New Drugs to appeal the rejection of the NDA.  (*Id.*)

Defendants remain hopeful that they can bring this life-saving drug to the vEDS patients who

need it, and continue to devote time, effort, and money to bringing this about.

## ARGUMENT

To state a claim for securities fraud, Plaintiff must adequately plead: "(1) a material

misrepresentation or omission by the defendant; and (2) scienter . . . ."  *Matrixx Initiatives, Inc.*

*v. Siracusano*, 563 U.S. 27, 37 (2011).  Under Rule 9(b), he "must state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Private Securities Litigation

Reform Act ("PSLRA"), 15 U.S.C.A. § 78u-4, imposes further "[e]xacting pleading

requirements."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Plaintiff

has not met these exacting standards.

He has not adequately pled a false statement.  He has not alleged any facts to suggest that

Defendants' public statements about communications with the FDA were untrue; indeed he has

not identified anything the FDA allegedly said to anyone at Acer at any time.  He cannot point to

allegedly "omitted" information about the data as it was published in publicly-available medical

journals, which Defendants publicly announced to investors.  (Am. Compl. ¶¶ 36, 73.)

Plaintiff's claims of falsity are based instead on a mischaracterization of Defendants' statements

and his bare speculation that there must exist communications with the FDA that contradict

Defendants' public statements.  Mischaracterization and speculation are insufficient to plead

securities fraud.

Plaintiff has pled no stock sales by Defendants, no other benefits supporting motive, nor

any inference—let alone the required "strong" inference—that Defendants were acting with

7

intent to defraud.  Indeed, the facts alleged support the opposite conclusion:  that based on their considerable (and ongoing) investment of time and money into the development of EDSIVO and their interactions with the FDA, Defendants sincerely believed that the NDA for EDSIVO would be approved, and were expanding their operations, at no small risk of time and capital, in anticipation of that approval.

## I.   THE AMENDED COMPLAINT FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

To plead a material misstatement, Plaintiff must, among other things, "explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007), *aff'd in part & vac'd in part*, 579 F.3d 143 (2d Cir. 2009).  Plaintiff has failed to do so here.

### A.   Plaintiff Has Not Pled Any Materially False or Misleading Statements Regarding Defendants' Communications with the FDA

Plaintiff alleges that Defendants made false and misleading statements regarding their communications with the FDA.  First, Plaintiff asserts that it was false to state that the FDA "agreed" that an additional clinical trial was "not needed" or was "not likely needed."  (Am. Compl. ¶¶ 86, 90, 94.)  According to Plaintiff's *rewriting* of Defendants' disclosures, these statements were false and misleading because Defendants "knew or recklessly disregarded that the FDA did not enter into any such agreement with Defendants that no further clinical development would be required for Acer to obtain FDA *approval* for EDSIVO."  (*Id*. ¶¶ 62, 63, 87, 91, 95 (emphasis added).)  Second, Plaintiff alleges that Defendants made false and misleading statements about meetings with the FDA regarding the Ong Trial data and that these statements "led investors to believe that the Ong Trial data were sufficient to support FDA *approval*." (*Id.* ¶¶ 93, 97 (emphasis added).)

Plaintiff's mischaracterization of Defendants' public statements does not render those statements false.  Contrary to Plaintiff's assertion, Defendants *never represented* that the FDA agreed that additional clinical trials were not needed for FDA *approval* of EDSIVO.  Instead, Defendants' disclosure about the FDA agreement appears in a sentence that speaks to *submission*, not *approval*, of the NDA: At that meeting, "the FDA agreed that additional clinical development is not needed and stated that [Acer] may *submit* a 505(b)(2) NDA for EDSIVO™ for the treatment of vEDS."  (*Id*. ¶ 59 (emphasis added).)  Likewise, Defendants stated that at the 2017 meeting the FDA had provided guidance on *filing,* not approval, of the NDA: At that meeting, "the FDA provided [Defendants] with additional guidance on the expected presentation of the existing clinical data for EDSIVO™ to support the NDA *filing*."  (*Id.* ¶ 53 (emphasis added).)  In both cases the disclosures go on to discuss matters relevant to *submission* of the NDA.  Plaintiff ignores the distinction between submission of an NDA for filing and review, and actual approval of that NDA.  Here, quite simply, the FDA agreed that Acer could submit an NDA for celiprolol; once submitted, that NDA was accepted by the FDA for filing and priority review.  Plaintiff cannot allege fraud by rewriting Defendants' disclosures.

In addition to mischaracterizing Acer's disclosures—which itself should put an end to these claims—Plaintiff also has not pled *any* facts demonstrating that Defendants' statements regarding communications with the FDA were false.  Plaintiff never alleges that the described FDA meetings did not in fact take place or that the FDA did not in fact provide the "guidance" described in Defendants' statements.  Nor does he allege any facts or identify any internal documents, communications, confidential witness statements, or literally any other piece of evidence indicating that Defendants' statements regarding Acer's meetings and agreement with the FDA are untrue.

9

Instead, Plaintiff relies on speculation.  He asserts, alleging no facts, that "Acer and the FDA did not reach an agreement that Acer would not need to conduct additional clinical studies beyond the already-completed French Study."  (*Id.* ¶ 9.)  This assertion rests on his own conjecture that "[t]he FDA would not 'agree' that Acer's Ong Trial data were sufficient to support approval for EDSIVO, only to later deny the Company's NDA on the ground that such data are insufficient."  (*Id.* ¶ 63.)  The only thing he refers to in support of this claim is "the FDA's communications to Acer regarding the need for further clinical development to obtain approval." (*Id.* ¶¶ 87, 91, 95.)  But Plaintiff never identifies any such communication, let alone who made the communication, to whom it was made, when it was made, or its contents.  Bare speculation of this kind is plainly insufficient to plead a false statement under Rule 9(b) or the PSLRA.  *See ATSI*, 493 F.3d at 99 ("Allegations [of misstatements] that are conclusory or unsupported by factual assertions are insufficient.").

Finally, Plaintiff cannot claim to have been misled by Defendants' statements into believing that "FDA approval for EDSIVO was, for all intents and purposes, virtually assured . . . ."  (Am. Compl. ¶ 6.)  Plaintiff draws no plausible link between ultimate approval of the drug and Defendants' statements that they received guidance on submission of the NDA, or that the FDA had agreed to accept the NDA for review without further clinical study.  To the contrary, investors in early-stage biopharmaceutical companies know—and Defendants repeatedly cautioned investors—that the clinical development and approval process for new drug candidates is risky and unpredictable, and that "[e]ven if [Acer] believe[s] the data collected from clinical trials of [its] current product candidates are promising, such data may not be sufficient to support approval by the FDA."[2]  (Levitt Decl. Ex. A, at 33.)  Plaintiff neglected to mention these risk

---

[2] Defendants made similar disclosures in the Prospectus Supplements containing the statements Plaintiff contends are misleading.  *See* Levitt Decl. Ex. B at 16 ("The drug testing and approval process requires substantial time, effort

disclosures in his Complaint and attempts to wave them away as "boilerplate," (ECF. No. 35, at 2), but the law holds otherwise:  Courts have found that similar language "adequately disclosed the possibility of a risk that materialized when the FDA denied approval."  *Sanofi Secs. Litig. v. Meeker (In re Sanofi Secs. Litig.)*, 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (citation omitted).

> **B.     Plaintiff Has Not Pled Any False or Misleading Statements Regarding the Ong Trial or JACC Study**

The remainder of the statements that Plaintiff contends are false consist of factual descriptions of Defendants' views of the Ong Trial data and another study Defendants announced as further scientific support for the use of celiprolol to treat vEDS, known as the JACC Study.[3]  Plaintiff cites lengthy excerpts from seven of Acer's public announcements, many of which contain multiple statements of fact, statements of opinion, and general statements of corporate optimism.  Plaintiff makes no distinction between statements of fact and statements of opinion, nor between statements that he alleges are literally false and those which he imagines to be misleading by omission.  Under any possible theory, however, Plaintiff has not alleged an actionable misstatement.

---

and financial resources, and may take several years to complete.  Data obtained from clinical activities are not always conclusive and may be susceptible to varying interpretations, which could delay, limit or prevent marketing approval.  ***The FDA may not grant marketing approval on a timely basis, or at all.***") (emphasis added); Acer Therapeutics Inc., Preliminary Prospectus Supplement (Rule 424(b)(3)) (July. 31, 2018) at 16, attached as Levitt Decl. Ex. E (same).

[3] On April 16, 2019, Defendants announced data from an observational study of 144 vEDS patients who were treated with celiprolol from the years 2000 through 2017 in Paris (the "JACC Study").  (Am. Compl. ¶ 73.)  The JACC Study had been submitted for publication in the *Journal of the American College of Cardiology*, a top-tier cardiology journal, and was under peer review.  (*Id.* ¶ 102.)  The authors of the JACC Study concluded that celiprolol use was potentially associated with a higher-than-expected survival rate relative to the known natural history of the disease and a lower annual occurrence of arterial complications in vEDS patients.  (*Id.* ¶ 103.)  The results of the JACC Study provided further support for celiprolol's efficacy in improving clinical outcomes for patients with vEDS.

When it comes to pleading *why* these statements were supposedly false, Plaintiff simply recites, verbatim, the same allegations for each and every challenged statement—that Defendants were aware of negative information either about the study or about the FDA's view of it and were "duty bound to disclose potentially adverse information within their possession . . . ." (Am. Compl. ¶¶ 79, 81, 83, 85, 89, 101, 104.) But the existence of such purported "adverse information," as discussed above, is entirely speculative. Beyond the conclusory, repetitive pleading, Plaintiff also fails to assert an actionable misstatement for the following reasons.

*First*, many of the challenged statements are non-actionable—and sincerely believed— statements of corporate optimism. Plaintiff points to statements describing the Ong Trial data as "pivotal" or "robust," and the results of the trial as "positive" (*Id.* ¶¶ 78, 82, 84, 88); stating that Acer was "pleased" by the publication of the JACC Study (*Id.* ¶ 100); that Defendants' confirmation of the Ong Trial data "represents a critical element of the clinical module in [Acer's] NDA" (*Id.* ¶ 78); and that Acer is becoming "closer to [its] goal of becoming a leading pharmaceutical company … [and] continue[s] to successfully advance [its] lead product candidate, EDSIVO" (*Id.* ¶ 84). None of these statements are actionable. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[E]xpressions of puffery and corporate optimism do not give rise to securities violations"); *see also Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 585 n.15 (S.D.N.Y. 2016) (statement that filing of an NDA was a "'milestone[]' that reflected the 'significant progress' the Company was making toward FDA approval[]" was non-actionable corporate optimism).

*Second*, the remaining statements are unchallenged statements of fact. Plaintiff points to statements that Defendants' analysis "confirmed the data" from the Ong Trial and that Acer planned to use the data "to support a New Drug Application" (Am. Compl. ¶¶ 78, 88); that

Defendants' analysis of the Ong Trial data was "retrospective [and] source verified" (*Id.*); that the Ong Trial "was stopped early having achieved statistical significance" (*Id.* ¶ 80).  Plaintiff also points to statements regarding the JACC Study that simply describe its findings or quote from its authors.  (*Id.* ¶¶ 98-99, 102-03.)  Yet Plaintiff never alleges that any of these statements are false.  He never claims (nor could he), for example, that Defendants did not actually confirm the trial data, that the Ong Trial was not in fact stopped early after achieving statistical significance, or that Defendants' descriptions of the JACC Study were inaccurate.

*Third*, if Plaintiff is attempting to plead that these factual statements were misleading by omission, Plaintiff must identify "the omitted facts that are necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading." *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (citation omitted).  Plaintiff has not done so and cannot do so here.  The allegedly omitted facts ***were not omitted***.  The Ong Trial and the JACC Study were both published in publicly available medical journals, and Defendants themselves publicly announced to investors both the fact that these studies were published and the names of the journals in which they were published.  (Am. Compl. ¶¶ 36, 73.)  Investors could thus easily access the data from these studies and see for themselves facts such as the size of the Ong Trial participant pool and the distribution of the relevant gene mutation between the experimental and control arms of the study, or the JACC Study's authors' statements about the limitations of the study.  (*Id.* ¶¶ 36-37, 74.)  Investors could not have been misled by Defendants' "omission" of easily accessible publicly available information.  *See Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 (S.D.N.Y. 2008), *aff'd*, 347 Fed. Appx. 665 (2d Cir. 2009) (defendants "had no duty under the securities laws to disclose" publicly reported information).

To the extent Plaintiff is alleging that the omitted facts were what Plaintiff perceives to be "flaws" in the Ong Trial data—including an alleged imbalance between the study's experimental and control arms and bias and underpowering of the study—which rendered the data insufficient for FDA approval, these are not *facts*.  These allegations reflect nothing more than *Plaintiff's* own interpretation of the Ong Trial data.  Disagreement over the "proper interpretation of data" is not a basis for liability under the securities laws.  *Tongue v. Sanofi*, 816 F.3d at 214; *see also Kleinman v. Elan Corp.*, 706 F.3d at 154 ("[W]here a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement.").  This Court reiterated this point mere days ago in *In re Philip Morris Int'l Inc. Secs. Litig.*, No. 18-cv-08049 (S.D.N.Y. Feb. 4, 2020), ECF No. 123 (attached as Levitt Decl. Ex. F), holding that the plaintiff's claim that defendants misled investors by making positive statements about their data "amount[s] to 'little more than a dispute about the proper interpretation of data[,]'" which does not constitute an actionable omission.  *Id.* at 26 (citation omitted).

Finally, Plaintiff's contention that Defendants omitted supposed communications from the FDA indicating that the FDA shared Plaintiff's negative view of the Ong Trial data fails because Plaintiff has identified *no* such communications.  Yet again, Plaintiff repeatedly speculates that such communications *must* exist.  (*See* Am. Compl. ¶ 39 ("Defendants and the FDA **almost certainly** exchanged communications with each other regarding" the purported "imbalance between treatment group and control group") (emphasis added); *Id.* ¶ 63 ("Defendants . . . did not reveal the extent to which the FDA pushed back against Defendants' position regarding the use of retrospective data and the sufficiency of such data."); *Id.* ¶ 64 (based on the FDA's eventual rejection of the NDA, "the FDA had previously communicated to Defendants that the agency did not consider the Ong Trial an 'adequate and well-controlled'

14

trial").)  These allegations are nothing more than speculation based on hindsight, which is insufficient to plead fraud.

## II.    THE AMENDED COMPLAINT FAILS TO PLEAD SCIENTER

Plaintiff also failed to plead scienter.  To prevail on a claim for securities fraud, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citation omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007), *aff'd in part and vac'd in part*, 579 F.3d 143 (2d Cir. 2009).  To qualify as a "strong inference," "the inference of scienter must be 'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citing *Tellabs*, 551 U.S. at 314).  This obligation requires Plaintiff to allege, as he has failed to do here, particular facts showing "(1) that defendants had [both] motive and opportunity to commit [the] fraud or (2) [constituting] strong circumstantial evidence of conscious misbehavior or recklessness." *Local 134 IBEW Joint Pension*, 553 F.3d at 198.  In the absence of allegations of motive, "the strength of the circumstantial evidence must be correspondingly greater." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted).

### A.    Plaintiff's Scienter Allegations Are All Impermissible "Group Pleading"

As a threshold matter, the Amended Complaint group-pleads scienter, with *no* allegations attributing intent to any particular Defendants.  Rather, Plaintiff's scienter allegations refer collectively to "Defendants," without any specific allegations as to Acer, Mr. Schelling, or Mr. Palmin.  Such pleading is insufficient under the PSLRA.  *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 364 (S.D.N.Y. 2013) ("The facts alleged must address the scienter of each individual

15

defendant.  Scienter is not adequately alleged through group pleading.").[4]  Plaintiff's failure to plead the scienter of any of the Defendants is alone grounds for dismissal.

**B.      Plaintiff Has Not Identified Any Fraudulent Motive**

Group pleading aside, Plaintiff also failed to plead a single fact demonstrating that any of the Defendants had a motive to commit fraud.  There are no allegations that any corporate insiders sold stock or otherwise received any financial benefit as a result of the purported fraud.  *See Fecht v. N. Telecom Ltd. (In re N. Telecom Ltd. Secs. Litig.)*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders, or any other evidence of pecuniary gain by company insiders at shareholders' expense, is inconsistent with an intent to defraud shareholders.").  Indeed, Plaintiff concedes that Defendants have never made *any* money from their efforts to develop EDSIVO, and only *would* make money if EDSIVO were successfully brought to market.  (Am. Compl.  ¶¶ 30-31.)

Without any evidence of financial gain by Defendants, Plaintiff resorts to alleging an implausible scheme under which "cash-starved" Acer was motivated to mislead investors about EDSIVO's prospects in order to raise cash to fund its operations through two public offerings.  (*Id*. ¶¶ 8, 110-22.)  But the desire to raise capital is "a goal possessed by virtually all corporate insiders" and does not constitute motive to commit fraud.  *Tabak v. Canadian Solar, Inc.*, 549 Fed. Appx. 24, 28 (2d Cir. 2013) (citation and internal quotation marks omitted); *see also Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 628 (4th Cir. 2008) ("[A] strong inference of fraud does not arise merely from seeking capital to support a risky venture.").  Plaintiff can find no support for his theory in the Second Circuit because the cases are unequivocal on this point:

---

[4]  The Amended Complaint contains cursory allegations about the roles of "[e]ach of the Individual Defendants" in the company (Am. Compl. ¶ 22), but it contains *no* allegation specifically attributing scienter to either Mr. Schelling or Mr. Palmin, and thus has not adequately pled Acer's scienter by imputation.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 177 (2d Cir. 2015).

"Motives that are generally possessed by most corporate directors and officers do not suffice" to support a strong inference of scienter. *Kalnit v. Eichler*, 264 F.3d at 139. "Any corporation would be motivated to make a profit, to avoid bankruptcy, or to finance the successful launch of a promising product. . . . These allegations do not support an inference of scienter." *In re Elan Corp. Secs. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y 2008). [5]

Moreover, what Plaintiff attempts to characterize as motive to commit fraud—that Acer needed to raise cash to continue as a going concern—is a basic feature of the business model in the industry in which Plaintiff chose to invest. Small-cap pharmaceutical companies, like Acer, research and develop biopharmaceuticals—a risky, expensive, and complex endeavor—and rely on investor funding to finance these endeavors, in the hope that the drugs under development will eventually be approved and brought to market. Defendants plainly disclosed this reality to investors: in the same Form 10-Q that Plaintiff contends demonstrates Defendants' motive to commit fraud, Defendants informed investors that Acer "ha[s] not generated any revenue from product sales," "do[es] not know when, or if, [it] will generate any revenue from product sales," and "do[es] not expect to generate any revenue from product sales unless and until [it] obtain[s] regulatory approval for and commercialize[s] any of [its] product candidates." (Levitt Decl. Ex. C, at 17; Am. Compl. ¶¶ 110-11.) Acer needed to raise cash from investors to continue operating and to bring EDSIVO to market because *that is its stated business model*, not fraud.

At bottom, the "scheme" to defraud investors that Plaintiff alleges is simply implausible on its face. The crux of the purported scheme, per Plaintiff's own allegations, is that Defendants

---

[5] Plaintiff's reliance on *Nguyen v. Radient Pharm. Corp.*, No. SA CV 11-0406 DOC (MLGx), 2011 WL 5041959, at *8 (C.D. Cal. Oct. 20, 2011) is misplaced. (ECF. No. 35.) In *Radient Pharmaceuticals*, defendants were alleged to have made a knowingly false statement about their product being involved in a Mayo Clinic trial when it was not. The court found a desire to raise funds sufficient for scienter in that case *when combined with red flags* regarding the company's financial condition, including the fact that the company was failing after decades of attempting to sell their product and was in litigation with its noteholder investors for breach of its financing obligations. Plaintiff has not made any similar allegations in this case.

defrauded investors to raise money that Defendants then poured into developing, and hiring personnel to support, a drug Defendants knew would never be approved. This theory defies logic and law. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d at 600 (finding "implausible" an alleged scheme in which defendant pharmaceutical company "continued to invest substantial time and resources in clinical studies and NDA submissions that it knew were doomed to fail, all the while misrepresenting to the public that approval was likely"); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) (finding it improbable that the company would proceed with trials "if they thought the drug a complete failure"); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d at 627 (inferring fraudulent intent in optimistic statements by a pharmaceutical company trying to raise funds "would choke off the lifeblood of innovation in medicine by fueling frivolous litigation—exactly what Congress sought to avoid by enacting the PSLRA.").

The far more plausible theory, supported by the facts alleged in the Amended Complaint, is that Defendants sincerely believed that the NDA for EDSIVO would be approved and that the drug would eventually be available to patients in need of this life-saving treatment. (Am. Compl. ¶¶ 34, 72.) *See Local 134 IBEW Joint Pension*, 553 F.3d at 198 ("[T]he inference of scienter must be . . . at least as compelling as any opposing inference of nonfraudulent intent." (citation and internal quotation marks omitted)). Defendants would not have invested their time, careers, and millions of dollars into developing EDSIVO, licensing and validating the data, meeting with the FDA, hiring personnel, committing to timely manufacture of the product, and preparing to bring the drug to market if they believed it would not ultimately be approved. (Am. Compl. ¶¶ 31, 67-70.)

### C.   Plaintiff Has Not Alleged Conscious Misbehavior or Recklessness

Plaintiff also fails to plead conscious misbehavior or reckless disregard for the truth. Recklessness in the context of securities fraud actions is a high bar, "a state of mind

18

approximating actual intent . . . ." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted); *Kalnit v. Eichler,* 264 F.3d at 142 (in the absence of motive, the "strength of the circumstantial [evidence] must be correspondingly greater." (citation omitted)).

Plaintiff has not come anywhere close to this high bar.  He does not point to a single fact to support his allegation that Defendants had information contrary to their disclosures or that Defendants knew their opinions were false when made.  And his failure to adequately plead a false or misleading statement makes it impossible for him to do so.  *See In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 308 F. Supp. 2d 249, 259 (S.D.N.Y. 2004) ("[I]f there is no indication that [] statements were false, the plaintiff cannot show that the defendants knew the statements were false.").

### 1.    Plaintiff Does Not Identify Any Contrary Information to Support His Recklessness Allegations

In an attempt to allege reckless disregard for the truth, Plaintiff assumes that Defendants disregarded contrary information with respect to their statements regarding 2015 and 2017 meetings with the FDA. (Am. Compl. ¶¶ 86, 90, 92, 94, 96.)  In particular, Plaintiff challenges the statement in Acer's Dec. 11, 2017 Preliminary Prospectus Supplement that "the FDA agreed that additional clinical development is not needed and stated that we may ***submit*** a 505(b)(2) NDA for EDSIVO for the treatment of vEDS," (*id*. ¶ 59 (emphasis added)) and in Acer's July 31, 2018 Preliminary Prospectus Supplement that "the FDA agreed that an additional clinical trial is not likely needed and stated that we may ***submit*** a 505(b)(2) NDA for EDSIVO for the treatment of vEDS."  (*Id*. ¶ 94 (emphasis added)).  Plaintiff asserts that with these statements Defendants led investors to believe that the FDA would *approve* EDSIVO despite knowing or recklessly disregarding contrary information, *i.e.*, that there allegedly were "serious impediments to FDA approval," that Defendants had no agreement with the FDA, and that the FDA viewed

19

the Ong Trial data as flawed. (*Id*. ¶ 65.) As set forth above, none of these allegations of Defendants' purported knowledge of contrary information are supported by factual allegations; all are pure speculation, belied by Defendants' actions.

To plead scienter based on access to contrary information, Plaintiff "must specifically identify the contradictory information available at the time of the alleged misstatement." *Wachovia Equity Secs. Litig. v. Wachovia Corp. (In re Wachovia Equity Secs. Litig.)*, 753 F. Supp. 2d 326, 359 (S.D.N.Y. 2011). Plaintiff has not done that here. Indeed, "unlike many securities class actions, [P]laintiff[] do[es] not rely on a single confidential witness or internal document in order to support [his] allegations." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10 Civ. 2835 (NRB), 2011 WL 4357368, at *1 (S.D.N.Y. Sept. 19, 2011). Instead, Plaintiff simply guesses that the FDA "would not" have made the purported agreement with Defendants, and thus must have told Defendants that it considered the Ong Trial data flawed. (Am. Compl. ¶¶ 63-64.) It is this pivotal fact that distinguishes this case from *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016), to which Plaintiff cites. (ECF. No. 35, at 3.) In *Schueneman*, the plaintiff actually identified specific information that was not disclosed to investors and which undermined defendant's positive statements about its drug candidate. There, defendant told the public it was confident in its drug's eventual approval based on the positive results of *all* its studies, while failing to disclose, among other things, that one study it conducted on rats showed that the drug caused cancer and that the FDA had expressed concerns about the results of this rat study. *Id.* at 701-702.

The Complaint does not allege any such facts or omissions, and instead relies on speculation that based on the FDA's ultimate decision, the FDA *must have* communicated misgivings about the trial data to Defendants. This is "an impermissible attempt to plead 'fraud

20

by hindsight'": because the NDA for EDSIVO was ultimately rejected—despite having been accepted for substantive review and even granted priority review status—the FDA *must have told* Defendants something indicating it would be rejected.  *See Honeyman v. Hoyt (In re Carter-Wallace, Inc. Secs. Litig.)*, 220 F.3d 36, 42 (2d Cir. 2000).  Such bare speculation is insufficient under Rule 9(b) and the PSLRA.

### 2.    Plaintiff Does Not Plead Facts to Support a Claim of False Opinion

Plaintiff also challenges Defendants' positive opinions about EDSIVO, including their positive views of the Ong Trial data and the JACC Study.[6]  (Am. Compl. ¶¶ 79-89, 99-103.)  But "[t]here is no scienter if the management of the company releases positive reports about the drug to the public along the way which the management honestly believes to be true, and where there is no reckless disregard for the truth."  *In re Sanofi Secs. Litig.*, 87 F. Supp. 3d at 534 (citation and internal quotation marks omitted).  Plaintiff has not pled any facts demonstrating either that Defendants did not honestly believe their positive statements, or that any alleged omission of information about the trial data (which does not exist) was done with reckless disregard for the truth.  *See Lehmann v. Ohr Pharmaceutical, Inc.*, No. 18-cv-1284 (LAP), 2019 WL 4572765, at *6 (S.D.N.Y. Sept. 20, 2019) ("[W]here a false opinion is alleged, the scienter and misrepresentation requirements of §10(b) collapse together because a material misstatement of opinion is by its nature a false statement, not about the objective world, but about the defendant's own belief." (citation and internal quotation marks omitted)).

Plaintiff's claim is circular, conclusory, and contrary to the law.  It hinges on the assertion that Defendants were obligated to disclose what he assumes must be omitted

---

[6] These include statements that Acer "announced positive results" from its "pivotal" clinical trial of EDSIVO (Am. Compl. ¶¶ 78, 84, 88); that the Ong Trial was a "robust clinical study" (*Id.* ¶ 82); and that Acer was "pleased to see this publication [of the JACC Study] . . . suggesting a positive impact of celiprolol" (*Id.* ¶ 100).

21

information about the data, and that Defendants' failure to do so is evidence of scienter. As discussed above, Defendants did not in fact omit any information, and Plaintiff has not identified any omitted information, and thus has not adequately alleged that Defendants opinions were false. "[T]o adequately plead scienter, [Plaintiff] must also provide sufficient factual allegations to indicate that [Defendants] understood that their public statements were inaccurate, or were highly unreasonable in failing to appreciate that possibility." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 534. The Amended Complaint contains no such allegations. And even if Plaintiff had identified information that Defendants had omitted regarding negative information about the data—and he did not—such omission would not be actionable. *See In re Philip Morris*, 18-cv-08049, at 28 ("Defendants' failure to inform investors about the alleged methodological flaws in its studies did not render any of its statements … false or misleading 'merely because it tend[s] to cut against'" Defendants' optimistic statements) (citing *Tongue*, 816 F.3d at 212).

This Court's decision in *Lehmann v. Ohr Pharmaceutical, Inc.*, rejecting similar, albeit stronger, claims is instructive. 2019 WL 4572765. In that case, defendant Ohr Pharmaceutical acquired the rights to a drug called squalamine and began testing it in a clinical trial. Ohr made various positive statements about interim results of the trial, but the trial ultimately failed. Unlike Plaintiff here, the plaintiff in *Ohr* had actually identified information that Ohr knew but did not disclose—that the positive results of the trial were inconsistent with the results of prior trials of the same drug. *Id.* at *1-*2. The *Ohr* court rejected this claim, holding that allegations that Ohr "had access to omitted facts and information" about the trial data "that would have put their positive claims in proper context" do not establish scienter for the same reason that they do not establish an actionable omission: *i.e.*, defendants are under no duty to disclose every fact that could "potentially undermine[] [their] optimistic projections." *Id*. at *4, *6.

22

In this case, Plaintiff has not adequately pled that Defendants actually omitted *any* facts or information about the trial data, as was the case in *Ohr*. Yet even if Plaintiff had done so, as the *Ohr* court made clear, that would not support an allegation of scienter. If the FDA had approved the NDA for EDSIVO, as Defendants believed it would, then Defendants' alleged failure to disclose additional information about the trial data would clearly not demonstrate scienter. "It cannot be the case that ex ante intent is based on ex post results." *Id.* at \*6.

Plaintiff has not satisfied his burden of alleging with particularity facts giving rise to a strong inference, or indeed *any* inference, that Defendants had a motive to commit fraud, *knew* the FDA had not agreed that no further testing was needed contrary to Defendants' public statements, or knew of any omitted facts. This failure to plead the requisite intent for a securities fraud claim is grounds for dismissal.

## III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY

As discussed above, Plaintiff has failed to adequately plead a primary violation of Section 10(b) or Rule 10b-5. This failure to plead a primary violation likewise warrants dismissal of Plaintiff's Section 20(a) claim. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011) (affirming dismissal of Section 20(a) claim on the grounds that plaintiff "failed to state a claim for any primary violation of the securities laws").

### CONCLUSION

Despite having an opportunity to amend the complaint, Plaintiff has failed to state a claim for a violation of Section 10(b), Rule 10b-5, or Section 20(a). Accordingly, Defendants respectfully submit that this Court should dismiss the Amended Complaint with prejudice.

Dated: New York, New York
      February 7, 2020

MORRISON & FOERSTER LLP

By: */s/ Jamie A. Levitt*

    Jamie A. Levitt
    Lauren M. Gambier
    250 West 55th Street
    New York, New York  10019
    Telephone: (212) 468-8000
    Facsimile:  (212) 468-7900
    Email:  JLevitt@mofo.com
            LGambier@mofo.com

    Jordan Eth (admitted *pro hac vice*)
    425 Market Street
    San Francisco, California 94105
    Telephone: (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JEth@mofo.com

*Attorneys for Defendants Acer Therapeutics*
*Inc., Chris Schelling, and Harry Palmin*

24