K1OAASKIC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NICHOLAS SKIADAS,

                Plaintiff,

            v.                          19 CV 6137 (GHW)

ACER THERAPEUTICS INC., ET
AL.,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        January 24, 2020
                                        3:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                        District Judge

                        APPEARANCES

THE ROSEN LAW FIRM, P.A.
     Attorneys for Plaintiff Skiadas
BY:  BRIAN B. ALEXANDER
LAURENCE MATTHEW ROSEN

MORRISON & FOERSTER LLP
     Attorneys for Defendants Acer, et al.
BY:  JAMIE A. LEVITT
JORDAN ETH

(Case called)

THE COURT:  This is Judge Woods.  Do I have counsel for plaintiff on the line?

MR. ALEXANDER:  Yes.  Brian Alexander and Laurence Rosen, the Rosen Law Firm.

THE COURT:  Thank you.

Do I have counsel for defendants on the line?

MR. LEVITT:  Good afternoon, your Honor.

Jamie Leviff and Jordan Ether, for Morrison & Foerster.

THE COURT:  First, counsel, thank you very much for your willingness to adjourn on -- maybe not willingness but your ability change or I appreciate your flexibility and thank you for the change date on such short notice.

I scheduled this in order to discuss the defendant's anticipated motion to dismiss.  I've read the materials that have been provided before today's conference.  It can be helpful for me in scheduling the motions potentially and considering them to hear the parties views regarding the bases for the motion and any anticipated responses.  This is not oral argument on the motion itself but it is helpful for me to hear about the bases and potential arguments and responses to the motion.

So with that introduction, can I hear from counsel for defendants.  What's the basis for your proposed motion?  And

K1OAASKIC                    Conference

counsel, you've seen the, you understand the nature of the plaintiff's likely argument and responses and to the extent you'd like to respond to them here before I hear from counsel for plaintiffs I would invite them.

MR. LEVITT:  Thank you, your Honor.  This is Jamie Levitt.

Your Honor, we will fully brief all of these arguments but our motion to dismiss will focus heavily on the failure in this instance to plead scienter or any material misstatements as required by the rules and the elements of the claims here.

I just wanted to back up just a little bit and I will respond to plaintiff's response as well, but so the Court understands the context for this case, Acer is an early stage small cap viatec company as we've explained.  It's working to develop and bring to the market what is really a life-saving drug for people with a very rare disease called -- that's an inherited disorder that weakens not medically connective in vascular systems such that ruptures are fatal.  There is no treatment here in the United States but there is a drug that is successfully in use in Europe.  The marketing name here would be -- and that's the drug that Acer has been spending years and the individual defendants spending years to develop and $20 million invested in order to bring this life-saving treatment to the market.

Acer used data that it acquired in a clinical data

trial in Europe as the basis for its application to the FDA, the Food and Drug Administration, for this new drug application.  This drug was accepted so that it could be filed which and I know if, one thing I'll respond to a footnote that says it's really no major step to be able to file an NDA, a new drug application, but that's not true.  It's a major step and investors watch very carefully and does -- not right to belittle that -- but in addition at FDA did grant the drug here a priority review.

Based on all the conversations and meetings, all of which was disclosed, and there are no indications or allegations that anything wasn't disclosed, these defendants believed that this drug would be approved.  And when it wasn't they were surprised, as was the market, which dropped and that's the basis for this lawsuit.

But what we have here, your Honor, is at complete lack of scienter of any motive or reckless in terms of the statements that were made here.  There was no motive to defraud the market.  The defendants here had no insider sales, made no money on this and in fact, everyone concedes that there was no money to be made unless this drug was approved and successful.

So plaintiffs seem to point to the fact that this company was in dire financial condition in the sense that they needed to raise money in order to be able to fund the development of this drug.  There are two mayor responses to

K1OAASKIC                      Conference

that, your Honor, which is that certainly raising money is a motive of all companies and is not sufficient to allege scienter under securities laws.  But the cases that plaintiffs point to also don't change anything with respect to that.  The cases that they point to are the cases where the company needs to raise money.  Plus, there are other red flags and that's most particularly the Central District of California case, the Radiant Pharmaceuticals case that the plaintiffs rely on.  In that case it was a 30-year-old company which was failing to each keep up with its competitors, losing money, was in a dire financial situation and was litigating with its investors.  So the Court there found there was certainly other indications of motive which just do not in way exist here.  In fact, this is almost an attack on the business model of a small biotech which is raising money specifically to invest in the drug which is all that's alleged.

Furthermore, with respect to that scienter -- and I'm happy to answer the Court's question -- there is literally is no scienter allegation in this case but there's also no false statement.  What's very notable in this case is that the plaintiffs don't identify any communications from the FDA that were not disclosed.  They don't allege any information that these defendants knew that they didn't disclose or that they misrepresented.  So, this is truly a case of fraud by hindsight that we must have known something else because the FDA didn't

accept and didn't approve this drug. There just is no allegation. And I will also note that the company was very careful and cautious in its risk factors and its disclosures to make the disclosures which every investor here knew which is that there's never a guaranty that the FDA will approve their drug. So the investors knew that they invested knowing this was a risky biotech. They knew there were no representations that the FDA was going to approve it. And that is really the only statement that is at issue.

Here, really what this case is about is, as I said, is fraud by hindsight that somehow and it's really the plaintiff's case, there must be more and we must have known but that just does not suffice under the securities law.

THE COURT: Thank you. What about the arguments that defendants misrepresented what the FDA told Acer about its data when it said that -- to paraphrase -- that the FDA agreed that additional clinical development is not needed? Do you have a response to that specific allegation?

MR. LEVITT: Specifically, what the assertion was, it was in the context of filing this new drug application. The FDA did say that additional trials were not needed. But again, there was never a statement or an affirmation that the FDA said anything more than that. We did not guaranty or in any way indicate that the FDA would approve based on that information. So again, that was information that was fully disclosed to the

K1OAASKIC                    Conference

market.

So we don't I think what the plaintiffs are doing here is sort of bringing out their own interpretation or what they believe investors would have inferred from that statement, but all that was said was that there was no other trials were needed at that time for submission.  Again, it's a very different statement than saying that we somehow guaranty that the FDA would approve based on that trial.

THE COURT:  Thank you.  Let me turn to counsel for plaintiffs.

Counsel, how do you respond?  You can take this up in the same order that counsel for defendants did.

MR. ALEXANDER:  They're trying to make this case into about what defendants, whether defendants knew their application would be rejected.  But what it's really about is what the FDA told them.  And in reference to the last statement you just referenced, they said in their filing is that the FDA agreed that additional clinical development is likely not needed and the other one the FDA believes is additional clinical trial is likely not needed and then they made a lot of other statements about interactions with the FDA and this all gave a false and misleading impression that Acer is working close with the FDA and the FDA approved Acer's data.

And they didn't need to make these representations about their actions with the FDA because the FDA had said no

K1OAASKIC                         Conference

more trial, no additional trials necessary.  But they did and it was extremely misleading and now they're trying to argue, well, this is about submission instead of approval.  But that's very unpersuasive because that isn't worth touting to investors.  All you really need to look at is what happened to this case to know that.  Because when the drug application was rejected it was a disaster for Acer.  And the statements that the FDA made when the application was rejected that an adequate and well-controlled study was necessary.  It shows that the FDA view was directly contrary to the assurances from the FDA that they claim they got.

And the statements that they referenced about the risks were completely generic.  It's just anything that any drug company would just make general statements in their filings about how nothing can be assured of the FDA but they gave the specific assurance about what the FDA was telling them.

THE COURT:  Thank you.

Counsel, let me pause you previously.  Are you taking a position, counsel for plaintiffs, that the FDA did not say what the defendants disclosures say they said or that the statements omitted something that was needed in order to make the statement not misleading?

Counsel or plaintiffs.

MR. ALEXANDER:  I mean, we're definitely taking the

position that the way they presented the statements that they agreed that additional -- developments is not needed, doesn't portray accurately what the FDA could have said to them because the FDA came out and said in their letter the exact opposite.

THE COURT:  Thank you.

What is it what's omission from this statement?  What other information -- just help me think about it -- are you saying should have been included in order to make this statement, which I understand you are not to be contesting is factually inaccurate but rather that it's not complete.  What other information is necessary?

MR. ALEXANDER:  Well, I mean if it was that, if the FDA did make the statement that it was just not -- it was more conditional, that's omitted information.  Just how the statements portray is misleading because the FDA came out with the statement later that directly contradicted what they said.

THE COURT:  Thank you.

MR. LEVITT:  Your Honor, may I respond to just a couple of those points?

THE COURT:  Bear with us for just a moment.  I'll come back to you.

Go on counsel for plaintiffs.

MR. ALEXANDER:  Your Honor, to address scienter, defendants try to use the general argument that raising money is a motivation of all companies.  However, this situation is a

K1OAASKIC                        Conference

situation where courts have found scienter based on need.  Acer admitted in November 13, 2017, that there's substantial doubt about whether the company's ability to continue it's growing concern within year and then less than a month later, they made the statement about how the FDA had agreed that additional clinical development was not needed and the offering was entirely to raise money for TYVO.

So this is one of the special cases like in Radiant where the company was in serious trouble.  So they had serious motivation to make -- orientation as offering documents.  The cases they cited concerning Sabat actually said that plaintiffs did not allege that after reporting of a certain -- they would be able to complete the stock offering and that's exactly what we're alleging here.

Additionally, we also plead consciousness behavior and recklessness because as I discussed earlier, the FDA, even though the FDA didn't agree that clinical data, that additional clinical development was not needed, they said that in their filing and they knew were either recklessly disregarded, that that was not false.  And cases such as Area Pharmaceuticals have held that failing to disclose FDA concerns the company knew about is enough to plead scienter.

THE COURT:  Thank you.  Good.  That is helpful.  Let me turn back at counsel for defendants.

Counsel, please proceed.

K1OAASKIC                    Conference

MR. LEVITT:  Thank you, your Honor.  I will just respond briefly to a couple of those things which is I think we're hearing literally is again the fraud by hindsight, which is there must have been information we didn't reveal because the FDA ended up not approving.  That is just not sufficient under the case law, under the PFLRA which requires a pleading with particularity as to what omissions or misstatements were made which does not exist here.  Plaintiffs have not identified any missing information or any incorrect information.

I guess what I would also say is the case they rely on which I just want to note are the Zac and Shuman cases on scienter.  They don't cite to a Second Circuit case because there really is nothing to support it.  And those cases are cases in which there's very particular allegations of the Fourth Circuit and Ninth Circuit case that the defendants knew and didn't disclose very serious information.

In the Shuman case that there was rat study showing cancer results and it wasn't disclosed and yet the Court there still said it was a close call in scienter.

In the Zac case the FDA required to complete a test and none of that and other issues that weren't disclosed.

So I just want to note that there really is no allegation here of scienter.  There's also is no case law cited that supports it.  And again, the issue of the company being cash struck is the business model of a new biotech company

bringing a drug to market.  But since there's no misstatements here, there is just actually nothing that's alleged that's wrong with the statements or with the offering.

The last thing I would just add, your Honor, is that the statement that plaintiffs keep referring to which is that the FDA agreed to additional clinical trial is not likely needed.  The next phrases "and stated that we may submit an NDA for the treatment of this illness".  And so the two are entirely linked there and just I think it bears reading the entire statement.

I thank you, your Honor, for your time.

THE COURT:  Understood.  So the argument is that read that context is clearly not a reference to any additional information but rather just in connection with the NDA?

MR. LEVITT:  Correct.  And with the filing and again, the company was very clear not to make any statements about what the FDA would do on approval because it's of course unpredictable as the risk disclosures made clear.

THE COURT:  Thank you.  Good.

So counsel, thank you for those comments.  It's helpful for me.  Let me work with you now to schedule a briefing for the motion.

Counsel for defendants, when would you propose to file your motion?

MR. LEVITT:  Your Honor, we actually have a briefing

schedule we're happy to abide by.  Our brief is due on February 7th.  The opposition is March 6 and reply March 27 and happy to consider any other dates the Court would prefer.

THE COURT:  Thank you.

If the parties are happy with the current schedule, we'll keep it as is.  The one thing that I would ask for counsel for plaintiffs, assuming that that schedule remains acceptable for you is that you do one thing, one modification to a schedule, namely, that if you choose to amend the complaint in response to the motion, I'd ask that you do that within the 21 days required under the rules rather than by the date specified for filing an opposition to the motion.

So if you review the motion and determine that you wish to amend the complaint rather than filing opposition, I'll ask that the amended complaint be filed no later than 21 days following service of the motion, rather than on the state specified for your opposition.

Is that acceptable to you, counsel for plaintiff?

MR. ALEXANDER:  Yes.

THE COURT:  Good.  Thank you.

So with that simple modification, I endorse the schedule that is also in place.

Anything else that we need to take up during this conference; first counsel for plaintiffs?

MR. ALEXANDER:  No, your Honor.

K1OAASKIC                    Conference

THE COURT:  Counsel for defendants?

MR. LEVITT:  Nothing further, your Honor.

THE COURT:  Good.  Thank you, all.

(Adjourned)