UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICHOLAS SKIADAS, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

    -against-

ACER THERAPEUTICS INC., CHRIS SCHELLING, and HARRY PALMIN,

        Defendants.

Case No. 1:19-CV-6137-GHW

Oral Argument Requested

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

MORRISON & FOERSTER LLP

Jamie A. Levitt
Lauren M. Gambier
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  JLevitt@mofo.com
       LGambier@mofo.com

Jordan Eth (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com

*Attorneys for Defendants Acer Therapeutics Inc., Chris Schelling, and Harry Palmin*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

    I. Acer Invests in Development of a Treatment for a Serious Inherited Disorder ............. 4

    II. Acer Expands Its Team to Be Ready to Distribute EDSIVO ........................................ 5

    III. Acer Submits a New Drug Application to the FDA for EDSIVO ............................... 6

    IV. Defendants Are Surprised and Disappointed When the FDA Rejects the NDA ......... 7

ARGUMENT ....................................................................................................................... 8

I.    THE SAC FAILS TO ADEQUATELY PLEAD ANY FALSE OR
    MISLEADING STATEMENTS ................................................................................. 9

    A.    Plaintiff Misrepresents Defendants' Statements Regarding
        Communications with the FDA ................................................................. 10

    B.    Plaintiff Has Pled No Facts to Support His Contention that Defendants'
        Statements were False or Misleading ........................................................ 11

    C.    Allegations from Plaintiff's Purported Expert Are Improper and
        Insufficient to Plead a False Statement ..................................................... 12

II.    PLAINTIFF HAS NOT ADEQUATELY PLED SCIENTER ....................................... 16

    A.    Plaintiff Has Not Alleged any Motive to Commit Fraud .................................... 17

    B.    Plaintiff Has Not Alleged Conscious Misbehavior or Recklessness .................. 20

        1.    Plaintiff Does Not Identify Any Contrary Information to Support
            His Recklessness Allegations ................................................................. 21

        2.    Minor Wording Changes to Acer's Disclosures Do Not Give Rise
            to a Strong Inference of Fraudulent Intent ............................................... 22

III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY ............................ 23

CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012)....................................................................................................16

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
823 F.3d 51 (2d Cir. 2016)......................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)............................................................................................9, 12, 16

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)...................................................................................................20

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(THK), 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013).......................14

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) ...........................................................................................18, 20

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...................................................................................16, 17, 20, 23

*In re Elan Corp. Secs. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y 2008)......................................................................................18

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
308 F. Supp. 2d 249 (S.D.N.Y. 2004).....................................................................................21

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................19

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)...........................................................................................17, 18, 20

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013)................................................................................................9, 12

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991).....................................................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)...................................................................................................................8

i

*In re Merrill Lynch & Co. Research Reports Secs. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd in part & rev'd in part sub nom.,*
    *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)......................................................3

*In re N. Telecom Ltd. Secs. Litig.*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000)..............................................................................17

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................................15

*In re OmniVision Techs., Inc. Sec. Litig.*,
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) ...........................................................................15

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018)..........................................................................14, 15

*Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    No. 10 Civ. 2835 (NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ..............................21

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)................................................................................................20

*Schaeffer v. Nabriva Therapeutics PLC*,
    No. 19 Civ. 4183 (VM) (S.D.N.Y. Apr. 28, 2020) ..............................................................18

*Sgarlata v. PayPal Holdings, Inc.*,
    409 F. Supp. 3d 846 (N.D. Cal. 2019) .............................................................................16

*Smith v. Antares Pharma, Inc., et al.*,
    No. 17-8945 (MAS) (DEA) (D.N.J. Apr. 28, 2020)..............................................................17

*Tabak v. Canadian Solar, Inc.*,
    549 Fed. Appx. 24 (2d Cir. 2013)......................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................................8

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..............................................................................................14

*In re Wachovia Equity Secs. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)...............................................................................21

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)..............................................................................................23

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................................15

**PRELIMINARY STATEMENT**

Acer Therapeutics Inc. ("Acer," and together with individual defendants Chris Schelling and Harry Palmin, "Defendants") is a pharmaceutical company focused on the acquisition, development and commercialization of therapies for serious rare and life-threatening diseases with significant unmet medical needs. This case involves a medication Acer is hoping to develop and bring to market called celiprolol that is used in Europe to treat vascular Ehlers-Danlos syndrome ("vEDS"), a serious life-threatening disease. There is currently no approved pharmacological treatment for vEDS available.

In 2016, Acer acquired the rights to data from a clinical study conducted primarily in France on the use of celiprolol to treat vEDS, known as the Ong Trial. Defendants planned to validate the data from this study and then seek approval from the Food and Drug Administration ("FDA") to distribute celiprolol, under the tradename EDSIVO™, for treatment of vEDS in the United States.

In October 2018 Acer submitted a new drug application ("NDA") for EDSIVO to the FDA. Two months later, the FDA accepted Acer's NDA for filing and substantive review and granted the application priority review status. This acceptance represented a major step in the process, as the FDA can, and often does, refuse to accept applications for filing. With the application accepted for filing and substantive review, Defendants continued their work planning and building a team for a successful review process and preparing Acer to bring the drug to market. Unfortunately, in late June 2019, the FDA issued a Complete Response Letter ("CRL"), in effect rejecting the NDA application due to purported inadequacies in the data. Acer—whose profitability depends entirely on its ability to bring drugs like EDSIVO to market—announced the CRL, and saw its stock price drop significantly after this announcement.

Plaintiff filed a Second Amended Complaint ("SAC") on behalf of himself and a putative class of investors who purchased Acer securities between December 12, 2017, the date on which Acer announced a secondary public offering of common stock (SAC ¶ 106), and June 24, 2019, the date of the CRL ("the Class Period") (*Id*. ¶ 11).  Plaintiff claims that during the Class Period, Acer's stock price was artificially inflated because Defendants allegedly misled the market about the likelihood that the FDA would approve EDSIVO, so they could raise cash to fund Acer's operations.  (*Id*. ¶¶ 7-12.)  According to Plaintiff, Defendants' statements that the FDA agreed that no further clinical trials of EDSIVO were needed were materially false or misleading because, Plaintiff speculates, the FDA had not so agreed and had communicated to Acer that the Ong Trial data was flawed.  (*Id*. ¶ 11.)

Plaintiff's allegations fail for multiple reasons:  (1) Defendants *never* said the FDA agreed that no further studies were required for approval—Plaintiff mischaracterizes Defendants' statements made in the context of *submission*, not *approval*, of the NDA; (2) Plaintiff has not identified a single communication that contradicts or undermines Defendants' statements; and (3) Plaintiff has alleged no intent to defraud.  Indeed, plaintiffs' claim is illogical; Defendants would not pour time, money, and their reputations into development and distribution of EDSIVO, if they believed that it would not be approved.

In short, Plaintiff has not remedied any of the deficiencies in the First Amended Complaint.  He has not adequately pled either a false statement or scienter, and continues to advance an entirely implausible theory of this case.  The main change between the SAC and the prior complaint is that Plaintiff has added extensive allegations from a purported expert, who hypothesizes about what the FDA "would have" told Defendants and "would have" believed about the Ong Trial.  (*Id*. ¶¶ 88-89.)  Reliance on expert testimony at the pleading stage is

improper, and in any event the expert's speculative allegations add nothing to the sufficiency of Plaintiff's pleading.  Plaintiff has simply substituted the expert's speculation for his own.

Investing in early-stage pharmaceutical companies is risky.  As Acer's experience with EDSIVO demonstrates, companies regularly devote huge sums of money over many years to developing pharmaceutical products that are ultimately not approved.  Plaintiff chose to invest in this uncertain business, and all the risks inherent to it were fully disclosed to him.  As if this were not already obvious to all investors, Acer's public filings made clear that the development and approval process for new drug candidates such as EDSIVO is risky and unpredictable, and that "[e]ven if [Acer] believe[s] the data collected from clinical trials of [its] current product candidates are promising, such data may not be sufficient to support approval by the FDA . . . ." (Acer Therapeutics Inc., Annual Report (Form 10-K) (Mar. 7, 2018), at 33, attached as Exhibit A to the Declaration of Jamie A. Levitt, dated May 1, 2020 ("Levitt Decl.").)[1]  "The FDA may not grant marketing approval on a timely basis, or at all."  (Acer Therapeutics Inc., Preliminary Prospectus Supplement (Rule 424(b)(3)) (Dec. 11, 2017), at 16, (Levitt Decl. Ex. B).)

Plaintiff is not a victim of a fraud, and despite the opportunity to amend his complaint he has not adequately pled falsity or scienter.  The Court should dismiss the Second Amended Complaint without further leave to amend.

**FACTUAL BACKGROUND**

Acer is a small pharmaceutical company focused on the acquisition, development, and commercialization of therapies for serious rare and life-threatening diseases with significant

---

[1] In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court may take judicial notice of public documents filed with the Securities and Exchange Commission.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Merrill Lynch & Co. Research Reports Secs. Litig.,* 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003), *aff'd in part & rev'd in part sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

3

unmet medical needs. (SAC ¶ 2.) Like many pre-commercial companies of this kind, Acer does not yet generate revenue from product sales. It instead relies on investor funding to finance research and development of drug candidates, in the hope that they will eventually be successfully developed, approved, and brought to market. (Acer Therapeutics Inc., Quarterly Report (Form 10-Q) (Nov. 13, 2017) at 17 (Levitt Decl. Ex. C).)

## I.        Acer Invests in Development of a Treatment for a Serious Inherited Disorder

vEDS causes abnormal fragility in blood vessels, which can lead to aneurysms, abnormal connections between blood vessels known as arteriovenous fistulas, arterial dissections, and spontaneous vascular ruptures, all of which can be fatal. There is currently no approved drug available to treat vEDS. (SAC ¶ 40.)

Nevertheless, EDSIVO (under the generic name celiprolol), is being successfully used to treat vEDS patients in Europe off label.[2] (*Id.*) In 2004, researchers at Assistance Publique— Hôpitaux de Paris, Hôpital Européen Georges Pompidou ("AP-HP") published data on vEDS patients that inspired a later clinical trial in France and Belgium. (*Id.* ¶ 44.) The clinical trial, known as the "Ong Trial," was funded by the French Ministry of Health and included fifty-three patients at nine treatment centers. (*Id.* ¶¶ 45, 54.) The clinical trial was set up for five years of treatment and five years of follow-up, but the physicians conducting and monitoring the trial stopped it early, after more than five years, because it had already shown statistically significant positive results.[3] (*Id.* ¶ 54.) The data showed that celiprolol reduced patients' risk of a cardiac

---

[2] The term "off label" refers to the use of a drug in a manner that is not approved by a government drug regulatory agency to treat a disease or medical condition. A drug's manufacturer cannot market a drug for off-label use, but doctors are not limited to writing prescriptions for approved indications. (*See* SAC ¶ 4 n.2.)

[3] Plaintiff now erroneously alleges that the Ong Trial was a retrospective study. (*Id.* ¶ 62.) The Ong Trial was a "prospective, randomized, open trial with blinded evaluation of clinical events." (Plaintiff's First Amended Compl. ¶ 36; SAC ¶ 45.)

or arterial event by 64% compared to the control group.  (*Id.*)  On October 30, 2010, the results of the Ong Trial were published in the prestigious medical journal *The Lancet*.  (*Id.* ¶ 45.)

In August 2016, Acer acquired an exclusive license to the Ong Trial data from AP-HP, with the intention of using the data to support an application to the FDA to approve EDSIVO for vEDS in the United States.  From December 2013 to December 2018, Acer spent approximately $23.6 million on research and development directly related to EDSIVO.  (*Id.* ¶ 37.)  These research and development costs included validation of the Ong Trial data, reconciliation of the data to identify any missing or incomplete data, and completion of a retrospective, source-verified analysis of that data, including the Ong Trial's primary and secondary endpoints.  On September 25, 2017, Acer announced that it had successfully verified and confirmed the Ong Trial source data.  (*Id.* ¶ 54.)

## II.    Acer Expands Its Team to Be Ready to Distribute EDSIVO

Defendants made plans to distribute EDSIVO if and when it was approved and took steps to ensure that the drug would be successful, including hiring additional personnel to build out Acer's commercial team.  (*Id.* ¶¶ 95-98.)  In February 2018, Acer announced that it had expanded its management team by hiring three new executives, as well as a senior marketing director.  (*Id.* ¶ 95.)  In May 2018, Acer informed the market that it had hired another three executives, as well as a chief legal officer, and that it was planning to make further commercial and medical affairs hires and to expand its commercial and core personnel teams throughout the year.  (*Id.* ¶ 97.)  In August 2018, Acer announced the hiring of two additional senior executives "[a]s part of [its] pre-commercial preparation," and reiterated its commitment to hiring more senior level personnel and expanding its commercial team.  (*Id.* ¶ 98.)

### III.    Acer Submits a New Drug Application to the FDA for EDSIVO

Acer engaged with the FDA for years in preparation for submission of its NDA.  In September 2015, several years before submission, Defendants met with the FDA to discuss the existing clinical data for EDSIVO.  (*Id.* ¶ 84.)  Defendants met with the FDA again in May 2017 to discuss non-clinical and manufacturing data, and to identify whether there were any gaps to address in advance of submitting the NDA.  (*Id.* ¶ 85.)  On September 25, 2017, Acer announced positive results from its analysis of the Ong Trial data, which would later be used to support the EDSIVO NDA.  (*Id.* ¶ 54.)  In June 2018, Acer and the FDA held a Type C clinical meeting and a Type B (pre-NDA) meeting for EDSIVO.  (*Id.* ¶ 87.)  Several months later, on October 29, 2018, Acer announced that it had submitted an NDA for EDSIVO and requested priority review.  (*Id.* ¶ 99.)  Shortly thereafter, on December 26, 2018, Acer announced that the FDA had accepted the EDSIVO NDA for substantive review *and* granted priority review.  (*Id.* ¶ 100.)

After an applicant submits an NDA, the FDA has sixty days to conduct a preliminary review of the NDA and notify the applicant whether it will accept the NDA for filing, refuse to file the NDA until the applicant rectifies certain deficiencies (in which case the NDA is filed upon resolution of the deficiencies), or refuse to file the NDA ("RTF").  (*Id.* ¶ 74.)  The purpose of the preliminary review process is to preserve FDA resources by avoiding substantive reviews of facially deficient applications.  During the preliminary review, the FDA staff assesses the completeness of the NDA and identifies "[c]omplex significant deficiencies that cannot be corrected before filing and that may result in a refusal to file" as well as "easily" correctable deficiencies (*e.g.* missing pages).  (FDA Draft Guidance, "Refuse to File: NDA and BLA

Submissions to CDER," dated December 2017 at 4, (Levitt Decl. Ex. D).)[4]  In its Draft Guidance on the preliminary review process, the FDA discusses one "complex" deficiency scenario that may result in an RTF:

> An application that relies on a single adequate and well-controlled trial for a demonstration of effectiveness if prior communication between the FDA and the applicant (i.e., end-of-phase 2 meeting) determined the need for more than one trial to demonstrate effectiveness and if the submitted justification for reliance on a single trial is inadequate . . . .

(*Id.* at 4-5.)

The EDSIVO NDA was based on a single trial and Plaintiff alleges the FDA would have communicated to Acer "the need for further clinical development to obtain FDA approval" before the submission of the NDA.  (SAC ¶¶ 107, 109, 111, 113, 115.)  Thus, it is significant that the FDA: (1) has a review process for the express purpose of avoiding substantive reviews of deficient NDAs and (2) could have—***but did not***—refuse to file the EDSIVO NDA for that reason.  The fact is, despite the FDA's authority to refuse to file the NDA, the FDA accepted it for filing and substantive priority review.[5]

## IV.    Defendants Are Surprised and Disappointed When the FDA Rejects the NDA

On June 25, 2019, Acer announced that it had received a Complete Response Letter ("CRL") from the FDA in response to the EDSIVO NDA.  (*Id.* ¶ 104.)  The FDA issues a CRL when it determines that it will not approve an application in its present form.  To Acer's surprise, the CRL stated that it would be necessary to conduct an "adequate and well-controlled" trial to

---

[4] In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court may take judicial notice of FDA Guidance because this document is publicly available and its accuracy cannot reasonably be questioned. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59-60 (2d Cir. 2016).

[5] The FDA grants "priority review" for drugs that, if approved, would be significant improvements in the safety or effectiveness of the treatment, diagnosis, or prevention of serious conditions when compared to standard applications.  The standard review process ordinarily takes 10 months to complete, but under priority review, the FDA provides a decision within 6 months.  (SAC ¶ 77.)

determine whether celiprolol reduces the risk of clinical events in patients with vEDS.  (*Id.*) Although the CRL was a major setback, it is not the end of the road for EDSIVO.  Acer has been in contact with the FDA and other experts regarding the potential path forward for EDSIVO and submitted a Formal Dispute Resolution Request to the FDA Office of New Drugs ("OND") to appeal the rejection of the NDA on December 30, 2019.  (*See* Acer Therapeutics Inc., Current Report (Form 8-K) (Jan. 2, 2020), (Levitt Decl. Ex. E).)  On March 18, 2020, the OND denied Acer's appeal of the CRL, but described possible paths forward for Acer that could support resubmission of the EDSIVO NDA.  Defendants remain hopeful that they can bring this life-saving drug to the vEDS patients who need it, and they continue to devote time, effort, and money toward this goal.

## ARGUMENT

To state a claim for securities fraud, Plaintiff must adequately plead: "(1) a material misrepresentation or omission by the defendant; and (2) scienter . . . ."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).  Under Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C.A. § 78u-4, imposes further "[e]xacting pleading requirements."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007).  Plaintiff has not met these exacting standards.

First, Plaintiff has not adequately pled any false or misleading statements.  He has not alleged any facts to suggest that Defendants' public statements about communications with the FDA were untrue; indeed he has not identified anything the FDA allegedly said to anyone at Acer at any time.  Plaintiff's claims of falsity are based instead on a mischaracterization of Defendants' statements and on his bare speculation that there must exist communications with

8

the FDA that contradict Defendants' public statements.  Such mischaracterization and speculation are insufficient to plead securities fraud.

Plaintiff has also not adequately pled scienter.  He has alleged no stock sales by or other financial benefits to Defendants, nor any inference—let alone the required "strong" inference—that Defendants were acting with intent to defraud.  Indeed, the facts alleged support the opposite conclusion:  that based on their considerable (and ongoing) investment of time and money into the development of EDSIVO and their interactions with the FDA, Defendants sincerely believed that the NDA for EDSIVO would be approved, and were expanding their operations, at no small risk of time and capital, in anticipation of that approval.  Plaintiff has failed to state a claim for securities fraud and the SAC should be dismissed with prejudice.

## I.     THE SAC FAILS TO ADEQUATELY PLEAD ANY FALSE OR MISLEADING STATEMENTS

A securities fraud complaint based on misstatements must, among other things, "explain why the statements were fraudulent.  Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  To plead a misleading omission, the complaint must identify "the omitted facts that are necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading.  The reason or reasons why the statement is misleading must also be pleaded." *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (citation and internal quotation marks omitted).

Plaintiff alleges that Defendants made false and misleading statements regarding their communications with the FDA.  Specifically, Plaintiff alleges that Defendants (1) falsely represented that they had an agreement with the FDA that no further clinical trial would be necessary for FDA approval of the NDA for EDSIVO, and (2) misled investors about the

adequacy of the Ong Trial data by omitting communications from the FDA regarding the need for further clinical trials.  (SAC ¶¶ 106-115.)  Plaintiff has not adequately pled any such false or misleading statements.

### A. Plaintiff Misrepresents Defendants' Statements Regarding Communications with the FDA

Plaintiff asserts that it was false to state that the FDA agreed that an additional clinical study was "not needed" or "not likely needed" for Acer to submit its NDA for EDSIVO.  (SAC ¶¶ 106-109, 112-113.)  According to Plaintiff's rewriting of Defendants' disclosures, these statements were false and misleading because Defendants "knew or recklessly disregarded that the FDA did not enter into any such agreement with Defendants that no further clinical development would be required for Acer to obtain FDA *approval* for EDSIVO."  (*Id*. ¶¶ 107, 109, 113 (emphasis added).)  Plaintiff also alleges that Defendants made false and misleading statements about meetings with the FDA regarding the Ong Trial data and that these statements "led investors to believe that the Ong Trial data were sufficient to support FDA *approval*." (*Id.* ¶¶ 111, 115 (emphasis added).)

But Defendants did not make these statements.  Plaintiff's mischaracterization of Defendants' public statements does not render those statements false.  Contrary to Plaintiff's assertion, Defendants *never represented* that the FDA agreed that additional clinical trials were not needed for FDA *approval* of EDSIVO.  Instead, Defendants' disclosure about the FDA agreement appears in a sentence that speaks to *submission*, not *approval*, of the NDA:  At the September 2015 meeting, "the FDA agreed that additional clinical development is not needed and stated that [Acer] may *submit* a 505(b)(2) NDA for EDSIVO for the treatment of vEDS." (*Id*. ¶ 106 (emphasis added); *see also id.* ¶¶ 108, 112 ("At that meeting the FDA agreed that an

10

additional clinical trial is not likely needed and stated that [Acer] may *submit* a 505(b)(2) NDA for EDSIVO for the treatment of vEDS.").).)

Likewise, Defendants stated that at the May 2017 meeting the FDA had provided guidance on *filing,* not approval, of the NDA:  At that meeting, "the FDA provided [Defendants] with additional guidance on the expected presentation of the existing clinical data for EDSIVO$^{TM}$ to support the NDA *filing*."  (*Id.* ¶¶ 110, 114 (emphasis added).)  In both cases the disclosures go on to discuss matters relevant to *submission* of the NDA.  Plaintiff ignores the fundamental distinction between submission of an NDA for filing and review, and actual approval of that NDA following review.  Here, the FDA agreed that Acer could submit an NDA for EDSIVO; once submitted, that NDA was accepted by the FDA for filing and granted priority review.  That acceptance for review in no way constitutes an assurance of approval.  Indeed, as Acer had cautioned, it "cannot be certain that any submissions will be accepted for filing and reviewed by the FDA, or ultimately be approved" and "approval is never guaranteed."  (2017 Form 10-K at 31 (Levitt Decl. Ex. A).)

### B.    Plaintiff Has Pled No Facts to Support His Contention that Defendants' Statements were False or Misleading

In addition to mischaracterizing Acer's disclosures—which itself should put an end to these claims—Plaintiff also has not pled any facts demonstrating that Defendants' statements regarding communications with the FDA were false or misleading.  Plaintiff never alleges that the described FDA meetings did not in fact take place or that the FDA did not in fact provide the "guidance" described in Defendants' statements.  Nor does he allege any facts or identify any internal documents, communications, confidential witness statements, or literally any other piece of evidence indicating that Defendants' statements regarding Acer's meetings and agreement with the FDA are untrue.

11

Instead, just as he did in the First Amended Complaint, Plaintiff relies on speculation with nothing to support his allegations.  He repeatedly claims that Defendants either misrepresented or omitted "the FDA's communications to Acer regarding the need for further clinical development to obtain FDA approval." (*Id.* ¶¶ 107, 109, 111, 113, 115.)  But Plaintiff never identifies any such communication, let alone who made the communication, to whom it was made, when it was made, how it was made, or its contents.[6]  Bare speculation of this kind is plainly insufficient to plead a false statement or actionable omission under Rule 9(b) or the PSLRA.  *See ATSI*, 493 F.3d at 99 ("Allegations [of misstatements] that are conclusory or unsupported by factual assertions are insufficient."); *Kleinman*, 706 F.3d at 152 ("[O]mitted facts that are necessary in order to make the statements made … not misleading" must be identified) (citation and internal quotation marks omitted).

## C.    Allegations from Plaintiff's Purported Expert Are Improper and Insufficient to Plead a False Statement

Plaintiff attempts to remedy the complete lack of evidence in support of his falsity claim by adding the opinions of Dr. Phillip Lavin, a purported "expert in the area of biostatistics and in the FDA drug approval process."  (SAC ¶ 24.)  Dr. Lavin's statements add nothing to the sufficiency of Plaintiff's pleading, as Plaintiff has merely substituted a putative expert's speculation for his own.  Dr. Lavin has no personal knowledge of any facts relevant to the truth or falsity of Defendants' statements regarding their communications with the FDA, and thus merely opines on what he *believes* "would have" taken place.

---

[6] With respect to his omission allegations, not only does Plaintiff not identify any omitted communications, he also never explains how Defendants' statement that the FDA provided "guidance on the expected presentation of the existing clinical data for EDSIVO" would have "led investors to believe that the Ong Trial data were sufficient to support FDA approval." (*Id.* ¶¶ 111, 115.)

12

The SAC is rife with Dr. Lavin's speculation about what the FDA "would have" believed about the Ong Trial data, or "would have" told Defendants regarding the NDA for EDSIVO. (*E.g.*, *id.* ¶ 56 ("Expert Lavin identified several red flags about the [Ong Trial] that the FDA *would have* immediately recognized") (emphasis added); *id.* ¶ 59 ("Expert Lavin opined that the observation of an imbalance between the treatment group and the control group *would* generally lead the FDA to conclude that a study was not 'well-controlled'….") (emphasis added); *id.* ¶ 61 ("In Dr. Lavin's experience, any ineligibility rate in excess of 10% *would not* have met these standards and *would* concern the FDA.") (emphasis added).)

Indeed, the whole of Plaintiff's case essentially rests on a single allegation of pure conjecture by Dr. Lavin: "According to Expert Lavin… it is *near certain* that FDA officials *would have* discussed the following concerns about the Ong Trial … In Expert Lavin's opinion, these problems with the Ong Trial *would be* known to the FDA, so the FDA *would not have* 'agreed' that additional clinical development was not needed for EDSIVO and the FDA's lack of agreement *would have* been clear to Acer long before Acer submitted its NDA for EDSIVO." (SAC ¶¶ 88-89 (emphasis added).)  In the absence of actual facts demonstrating the falsity of Defendants' statements, no amount of speculation about what the FDA "would have" or "would not have" done is sufficient to plead falsity under Rule 9(b) and the PSLRA, regardless of whether it is Plaintiff or an expert who is doing the speculating.[7]

---

[7] Plaintiff alleges that "additional sources agree with Expert Lavin's assessment that the Ong Trial had numerous red flags that made FDA approval unlikely."  (SAC ¶ 63.)  These allegations add nothing to the sufficiency of Plaintiff's pleading.  None of the alleged "sources" have any actual knowledge of the FDA's views of the Ong Trial or the FDA's communications with Defendants at the time Defendants' statements were made.  Indeed, several of the statements from these sources were made *after* Acer's receipt of the CRL, and thus cannot have any bearing on whether Defendants' statements were false at the time they were made.  (*See id.* ¶ 66 (referring to statements by the Ehlers-Danlos Society published on August 9, 2019, more than a month after the FDA issued the CRL); *id.* ¶ 67 (referring to a statement of the Marfan Foundation published on June 25, 2019, the same date the CRL was issued).)  To the extent that individuals affiliated with *Pharmaceutical Technology*, the Marfan Foundation or the DEFY Foundation symposium expressed skepticism about the Ong Trial data (*see id.* ¶¶ 64, 68-70), their disagreement

This court has found that inclusion of or reliance on expert testimony at the pleading stage is inappropriate to meet Plaintiff's burden, regardless of the manner in which it is presented. In *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018) ("*Chipotle*"), plaintiffs in a securities fraud class action attached to their complaint a declaration from an expert witness, and the court granted the defendant's motion to strike the declaration for multiple reasons. The court held that the expert declaration was not a "written instrument" under Federal Rule 10(c), and noted that "[e]ven if *non-opinion* portions of an expert's affidavit constitute an instrument pursuant to Rule 10, opinions cannot substitute for facts under the [PSLRA]." *Id.* at 223 (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006)). The court also declined to consider the expert declaration incorporated into the complaint by reference, both because the defendant challenged its accuracy and because doing so would require the court to "consider the [expert declaration] for the truth of the opinion it contains," which is not permissible on a motion to dismiss. *Id.* at 224. Finally, the Court noted that "[a]llowing plaintiffs to rely on an expert's opinion in order to state securities claims requires a court to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage and might require ruling on the expert's qualifications." *Id.* (internal citations omitted).

There is no meaningful difference between attaching an expert declaration to a complaint, which the *Chipotle* court struck as improper, and including statements from the expert directly in the body of the complaint, as Plaintiff has done here.[8] Plaintiff's inclusion of Dr. Lavin's

---

over the "proper interpretation of data" does not demonstrate that Defendants' statements were false. *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016).

[8] *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(THK), 2013 WL 1197755, at *20 n.2 (S.D.N.Y. Mar. 25, 2013) (on a motion to dismiss a securities fraud class action, noting that "[t]he Court did not consider any of the 'expert testimony' that was included—inappropriately, in the Court's view—in the pleading").

14

statements in the SAC—the accuracy of which Defendants dispute—raises the same concerns the *Chipotle* court identified.  At bottom, the expert allegations are an attempt to substitute Dr. Lavin's speculative opinions for facts, which the *Chipotle* court acknowledged is insufficient under the PSLRA and inappropriate from an evidentiary standpoint.  The Court considering these statements in connection with Defendants' motion to dismiss would require the Court to accept them as true, but without the requisite procedures for assessing an expert's credibility, qualifications, and methodology, and the accuracy of his opinions—precisely the kind of "complex evidentiary issues"  that cannot be resolved at the pleading stage.

If the Court nevertheless considers Dr. Lavin's statements in the SAC, it should adopt the position established in the Ninth Circuit that the speculative statements of an expert will not suffice to plead securities fraud.  In the Ninth Circuit, factual allegations of an expert are "subject to the same standard applied to evaluate facts alleged to have originated with any confidential informant." *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1107 (N.D. Cal. 2013).  In this Circuit as in the Ninth, a plaintiff relying on a confidential witness must plead with particularity facts showing that the witness has personal knowledge of the information alleged.  *See Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

Unsurprisingly, given the purely speculative nature of Dr. Lavin's statements, Plaintiff has alleged no facts indicating that Dr. Lavin has personal knowledge of communications between Defendants and the FDA, or of the FDA's view of the Ong Trial data.[9]  Instead, all of Dr. Lavin's allegations are about what the FDA "'would have' done, i.e., expectations and predictions, not facts about what [the FDA] actually did." *In re OmniVision Techs., Inc. Sec.*

---

[9] Indeed Plaintiff admits that Dr. Lavin's opinions are based entirely on publicly available materials.  (SAC ¶ 30.)

*Litig.*, 937 F. Supp. 2d at 1108.  *See also Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 861 (N.D. Cal. 2019) (rejecting expert allegations that amount to "inferring what likely would have happened").  These speculative allegations cannot support an inference of falsity.

Even if Dr. Lavin's speculation were acceptable as support for Plaintiff's allegations, his theory is undermined by the facts of this case.  Plaintiff's theory of falsity is that Defendants must have misrepresented their communications with the FDA because the FDA "would have" thought the Ong Trial data was insufficient to support Acer's NDA, and so "would not have" agreed that no further clinical study was necessary for Acer to submit the NDA.  (SAC ¶ 88-89.)  But the fact is that the FDA *did* allow Acer to submit the NDA.  (*Id.* ¶ 99.)  Had the FDA indeed shared Plaintiff's negative views of the Ong Trial data and communicated to Defendants that it viewed the data as insufficient, as Plaintiff and his expert theorize, the FDA could have issued an RTF.  But it did not.  The very fact that the FDA, after allegedly "discuss[ing] [with Defendants] all the portions of EDSIVO's NDA . . . prior to the Company's submission of the NDA" (*Id.* ¶ 92), chose to accept the NDA for filing and substantive review, renders Plaintiff's theory of falsity untenable.

## II.    PLAINTIFF HAS NOT ADEQUATELY PLED SCIENTER

Plaintiff has also failed to plead scienter.  To prevail on a claim for securities fraud, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citation omitted); *see also ATSI*, 493 F.3d at 99.  To qualify as a "strong inference," "the inference of scienter must be 'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citing *Tellabs*, 551 U.S. at 314).

16

This obligation requires Plaintiff to allege, as he has failed to do here, particular facts showing "(1) that defendants had [both] motive and opportunity to commit [the] fraud or (2) [constituting] strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 198. In the absence of allegations of motive, "the strength of the circumstantial [evidence] must be correspondingly greater." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted).

## A.    Plaintiff Has Not Alleged any Motive to Commit Fraud

Plaintiff has not adequately pled a single fact demonstrating that any of the Defendants had a motive to commit fraud. There are no allegations that any corporate insiders sold stock or otherwise received any financial benefit as a result of the purported fraud. *See In re N. Telecom Ltd. Secs. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders, or any other evidence of pecuniary gain by company insiders at shareholders' expense, is inconsistent with an intent to defraud shareholders.").[10] Indeed, Plaintiff concedes that Defendants have never made *any* money from their efforts to develop EDSIVO, and only *would* make money if EDSIVO were successfully brought to market. (SAC ¶¶ 36-37.)

Without any evidence of financial gain by Defendants, Plaintiff resorts to alleging an implausible scheme under which Defendants were motivated to mislead investors about EDSIVO's prospects in order to raise cash to fund Acer's operations. (*Id*. ¶¶ 119-136.) Plaintiff theorizes that Defendants were specifically motivated to falsely claim that the FDA had agreed to

---

[10] In a recently issued decision, the District of New Jersey dismissed a securities fraud class action alleging that defendant pharmaceutical company misled investors regarding FDA approval of an NDA for defendant's lead product. Despite one of the individual defendants having sold 230,000 shares of stock during the class period, the court held that plaintiff had not adequately pled motive, as allegations of Defendants 'significant financial motives, including [] possible NASDAQ delisting," did not support a strong inference of scienter. *Smith v. Antares Pharma, Inc., et al.*, Civil Action No. 17-8945 (MAS) (DEA), at 17 (D.N.J. Apr. 28, 2020) (ECF No. 64) (Levitt Decl. Ex. F).

approve EDSIVO to entice investors who would otherwise be deterred by negative public information about EDSIVO and the Ong Trial.  (*Id*. ¶¶ 55, 64, 69-71.)  This amounts to no more than an allegation that Defendants were motivated to commit fraud because they wanted to raise money.

But the desire to raise capital is "a goal possessed by virtually all corporate insiders" and does not constitute motive to commit fraud.  *Tabak v. Canadian Solar, Inc.*, 549 Fed. Appx. 24, 28 (2d Cir. 2013) (citation and internal quotation marks omitted); *see also Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) ("[A] strong inference of fraud does not arise merely from seeking capital to support a risky venture."); *Schaeffer v. Nabriva Therapeutics PLC*, No. 19 Civ. 4183 (VM), at *38 (S.D.N.Y. Apr. 28, 2020) (Levitt Decl. Ex. G) (dismissing securities fraud class action for lack of scienter and finding that motives "such as the desire to maintain the appearance of profitability … [are] shared by virtually all corporate speakers" and do not constitute motive to commit fraud).  Case law in the Second Circuit is unequivocal on this point: "Motives that are generally possessed by most corporate directors and officers do not suffice" to support a strong inference of scienter.  *Kalnit v. Eichler*, 264 F.3d at 139.  "Any corporation would be motivated to make a profit, to avoid bankruptcy, or to finance the successful launch of a promising product. . . . These allegations do not support an inference of scienter."  *In re Elan Corp. Secs. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y 2008).

Moreover, what Plaintiff attempts to characterize as motive to commit fraud—that Acer needed to raise cash to continue as a going concern—is a basic feature of the business model in the industry in which Plaintiff chose to invest.  Small-cap pharmaceutical companies, like Acer, research and develop biopharmaceuticals—a risky, expensive, and complex endeavor—and rely on investor funding to finance these endeavors, in the hope that the drugs under development

18

will eventually be approved and brought to market. Defendants plainly disclosed this reality to investors: in the same Form 10-Q that Plaintiff contends demonstrates Defendants' motive to commit fraud, Defendants informed investors that Acer "ha[s] not generated any revenue from product sales," "do[es] not know when, or if, [it] will generate any revenue from product sales," and "do[es] not expect to generate any revenue from product sales unless and until [it] obtain[s] regulatory approval for and commercialize[s] any of [its] product candidates." (Form 10-Q, at 17 (Levitt Decl. Ex. C); SAC ¶¶ 119-123.) Acer needed to raise cash from investors to continue operating and to bring EDSIVO to market because *that is its stated business model*, not fraud.

At bottom, the "scheme" to defraud investors that Plaintiff alleges is implausible to the point of absurdity. Plaintiff alleges, via his expert, that "statements by the FDA prior to filing an NDA would have focused on whether the NDA would be approved, not on whether the sponsor of a drug could submit the NDA." (SAC ¶ 90.) By this Plaintiff suggests that the FDA would have told Defendants that it would *not* approve the NDA for EDSIVO without further clinical study. Plaintiff further alleges that the Ong Trial "suffered obvious fatal flaws," which were readily apparent from publicly available documents. (*Id.* ¶ 55.)

Plaintiff's theory, then, is that to raise money, Defendants *spent* money preparing an NDA based on data with "obvious fatal flaws," which the FDA had already said it would not approve, and then lied to the market and said that the FDA agreed the NDA *would* be approved—a lie that would inevitably be revealed when the NDA was inevitably rejected. Defendants told this lie in order to raise money from investors, all of which Defendants then poured into developing, and hiring personnel to support, a drug Defendants knew would never be approved and whose rejection would certainly reveal their alleged fraud. This theory defies logic and law. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (finding

19

"implausible" an alleged scheme in which defendant pharmaceutical company "continued to invest substantial time and resources in clinical studies and NDA submissions that it knew were doomed to fail, all the while misrepresenting to the public that approval was likely"); *City of Edinburgh Council v. Pfizer, Inc*., 754 F.3d 159, 170 (3d Cir. 2014) (finding it improbable that the company would proceed with trials "if they thought the drug a complete failure"); *Cozzarelli*, 549 F.3d at 627 (inferring fraudulent intent in optimistic statements by a pharmaceutical company trying to raise funds "would choke off the lifeblood of innovation in medicine by fueling frivolous litigation—exactly what Congress sought to avoid by enacting the PSLRA.").

The far more plausible theory, supported by the facts alleged in the SAC, is that Defendants sincerely believed that the NDA for EDSIVO would be approved and that the drug would eventually be made available to patients in need of this life-saving treatment. (SAC ¶¶ 37, 94-99.) *See ECA & Local 134 IBEW Joint Pension*, 553 F.3d at 198 ("[T]he inference of scienter must be . . . at least as compelling as any opposing inference of nonfraudulent intent." (citation and internal quotation marks omitted)). Defendants would not have invested their time, careers, and millions of dollars into developing EDSIVO, licensing and validating the data, meeting with the FDA, hiring personnel, committing to timely manufacture of the product, and preparing to bring the drug to market if they believed it would not ultimately be approved. (*Id.*)

### B. Plaintiff Has Not Alleged Conscious Misbehavior or Recklessness

Plaintiff also fails to plead conscious misbehavior or reckless disregard for the truth. Recklessness in the context of securities fraud actions is a high bar, "a state of mind approximating actual intent . . . ." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted); *Kalnit v. Eichler,* 264 F.3d at 142 (in the absence of motive, the "strength of the circumstantial [evidence] must be correspondingly greater." (citation omitted)).

20

Plaintiff has not come anywhere close to this high bar.  He does not point to a single fact to support his allegation that Defendants had information contrary to their public statements.  And his failure to adequately plead a false or misleading statement makes it impossible for him to do so.  *See In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 308 F. Supp. 2d 249, 259 (S.D.N.Y. 2004) ("[I]f there is no indication that [] statements were false, the plaintiff cannot show that the defendants knew the statements were false.").

### 1.      Plaintiff Does Not Identify Any Contrary Information to Support His Recklessness Allegations

Plaintiff contends that Defendants knew or recklessly disregarded that their statements that the FDA agreed that "additional clinical development is not needed" or that "an additional clinical trial is not likely needed" were false and misleading, based on alleged communications from the FDA "regarding the need for further clinical development to obtain FDA approval." (*Id.* ¶¶ 106-109, 112-113.)  Plaintiff similarly contends that Defendants knew of, but omitted, alleged communications from the FDA "regarding the need for further clinical development to obtain FDA approval" which rendered false and misleading Defendants' statements regarding "guidance [from the FDA] on the expected presentation of the existing clinical data for EDSIVO to support the NDA filing."  (*Id.* ¶¶ 110-111, 114-115.)

This theory of scienter fails for the same reason that Plaintiff's falsity allegations fail:  Plaintiff simply has not identified any of the purported communications that would demonstrate that Defendants knew their statements were untrue.  To plead scienter based on access to contrary information, Plaintiff "must specifically identify the contradictory information available at the time of the alleged misstatement." *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 359 (S.D.N.Y. 2011).  Plaintiff has not done that here.  Indeed, "unlike many securities class actions, [P]laintiff[] do[es] not rely on a single confidential witness or internal document in

21

order to support [his] allegations." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10 Civ. 2835 (NRB), 2011 WL 4357368, at *1 (S.D.N.Y. Sept. 19, 2011).  Instead, Plaintiff simply guesses, via his expert, that the FDA "would not" have made the purported agreement with Defendants, and thus must have told Defendants that it considered the Ong Trial data flawed.  (SAC ¶¶ 88-89.)  But Plaintiff has no evidence to support this speculation and the FDA's approval of the NDA filing, with priority review, belies Plaintiff's theory.

### 2.   Minor Wording Changes to Acer's Disclosures Do Not Give Rise to a Strong Inference of Fraudulent Intent

In the absence of any viable evidence that Defendants acted with scienter, Plaintiff posits an implausible theory that a minor wording change in Acer's disclosures constitutes evidence that Defendants knew the statements therein were false.  In December 2017, Defendants stated that the FDA agreed "additional clinical development is not needed and [Acer] may submit a 505(b)(2) NDA for EDSIVO™ for the treatment of vEDS."  (*Id.* ¶ 49.)  In March 2018 and July 2018 statements Defendants said that the FDA agreed "an additional clinical trial is not likely needed and [Acer] may submit a 505(b)(2) NDA for EDSIVO™ for the treatment of vEDS." (*Id.* ¶¶ 50-52.)  Plaintiff claims that this minor wording change constitutes evidence that Defendants knew *both* versions of this statement were false.  (*Id.* ¶ 53.)

Plaintiff alleges no facts showing *any* intent underlying this wording change, let alone facts that would give rise to a strong inference of intent to defraud.  Instead, Plaintiff posits, illogically, that Defendants knew the first statement was false, and modified it to a less definitive, *but still knowingly false*, statement to provide "a little more leeway if investors ever found out" that Defendants had no such agreement with the FDA.  (*Id.* ¶ 53.)  In Plaintiff's imagining, Defendants were concerned about a possible future securities fraud suit, and so revised their fraudulent statement to another, *still fraudulent*, statement, to provide some

22

protection in this potential litigation. Leaving aside the overarching illogic of this idea, it is belied by Plaintiff's own theory of this case. Plaintiff's theory is that the FDA must have informed Defendants that the Ong Trial data was insufficient, in which case investors were *certain* to find out about the alleged fraud once the FDA denied the NDA. This theory is particularly absurd given Defendants' request for priority review of the NDA, which would only expedite the inevitable revelation of Defendants' alleged fraud.

The far more plausible theory is that there was simply no intent at all underlying this minor wording change, as the two versions of the statements are substantively identical. Both plainly convey that, based on their communications with the FDA, Defendants believed that no additional clinical trial was needed to submit the NDA for EDSIVO. Plaintiff has alleged no facts giving rise to a strong inference—or indeed any inference—that Defendants believed, or should have believed, otherwise. *See ECA & Local 134 IBEW Joint Pension*, 553 F.3d at 198 ("[T]he inference of scienter must be . . . at least as compelling as any opposing inference of nonfraudulent intent.") (citation and internal quotation marks omitted).

## III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY

As discussed above, Plaintiff has failed to adequately plead a primary violation of Section 10(b) or Rule 10b-5. This failure to plead a primary violation likewise warrants dismissal of Plaintiff's Section 20(a) claim. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011) (affirming dismissal of Section 20(a) claim on the grounds that plaintiff "failed to state a claim for any primary violation of the securities laws").

### CONCLUSION

Despite having an opportunity to amend the complaint, Plaintiff has failed to state a claim for a violation of Section 10(b), Rule 10b-5, or Section 20(a). Accordingly, Defendants

respectfully submit that this Court should dismiss the Second Amended Complaint without

further leave to amend.

Dated: New York, New York                MORRISON & FOERSTER LLP
       May 1, 2020

By: */s/ Jamie A. Levitt*

Jamie A. Levitt
Lauren M. Gambier
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile:  (212) 468-7900
Email:  JLevitt@mofo.com
          LGambier@mofo.com

Jordan Eth (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
Email:  JEth@mofo.com

*Attorneys for Defendants Acer Therapeutics Inc., Chris Schelling, and Harry Palmin*

24