UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS SKIADAS, *individually and on behalf of all others similarly situated*,

Plaintiffs,

-against-

ACER THERAPEUTICS INC., CHRIS SCHELLING, and HARRY PALMIN,

Defendants.

Case No. 1:19-CV-6137-GHW

Oral Argument Requested

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

MORRISON & FOERSTER LLP

Jamie A. Levitt
Lauren M. Gambier
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  JLevitt@mofo.com
             LGambier@mofo.com

Jordan Eth (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com

*Attorneys for Defendants Acer Therapeutics
Inc., Chris Schelling, and Harry Palmin*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

I.     Plaintiff Has Not Adequately Pled Falsity .................................................................... 2

       A.     Plaintiffs' Interpretation of Defendants' Statements Ignores the Plain
              Words and Context of Defendants' Statements and Is Implausible ...................... 2

       B.     Plaintiff Has Not Met and Does Not Get a Pass on His Pleading Burden ............. 3

       C.     Plaintiff's Reliance on Expert Testimony at the Pleading Stage Is
              Improper ................................................................................................................ 6

II.    Plaintiff Has Not Adequately Pled Scienter ................................................................. 7

       A.     Plaintiff Has Not Pled Motive to Commit Fraud ................................................. 7

       B.     Plaintiff Has Not Pled Recklessness .................................................................... 9

CONCLUSION ...................................................................................................................... 11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................................3

*DeMarco v. DepoTech Corp.*,
149 F. Supp. 2d 1212 (S.D. Cal. 2001)......................................................................................6

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).......................................................................................................9

*In re Elan Corp. Secs. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008).......................................................................................7

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014) .......................................................................................7

*In re Ibis Tech. Sec. Litig.*,
422 F. Supp. 2d 294 (D. Mass. 2006) ....................................................................................7, 8

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
No. CV 17-341, 2020 WL 1479128 (E.D. Pa. Mar. 25, 2020).................................................3

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)..............................................................................................7, 9, 10

*In re Mannkind Secs. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ............................................................................ *passim*

*Mazzeo v. Nature's Bounty, Inc.*,
No. 14-60580-CIV., 2015 WL 1268271 (S.D. Fla. Mar. 19, 2015) .........................................6

*Nguyen v. Radient Pharm. Corp.,*
No. CV 11-0406, 2011 WL 5041959 (C.D. Cal. Oct. 20, 2011)..............................................7

*In re OmniVision Techs., Inc. Sec. Litig.*,
937 F. Supp. 2d 1090 (N.D. Cal. 2013) ....................................................................................6

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018).......................................................................................6

*Rombach v. Chang*,
355 F3d 164 (2d Cir. 2004)........................................................................................................3

*Schaeffer v. Nabriva Therapeutics PLC*,
    No. 19 Civ. 4183 (VM) (S.D.N.Y. Apr. 28, 2020). ................................................................7

*Schueneman v. Arena Pharm., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ..............................................................................................10

*Sgarlata v. PayPal Holdings, Inc.*,
    409 F. Supp. 3d 846 (N.D. Cal. 2019) ..................................................................................6

*Smith v. Antares Pharma, Inc.,*
    Civ. No. 17-8945 (D.N.J. Apr. 28, 2020) ..............................................................................8

*Tabak v. Canadian Solar, Inc.*,
    549 Fed. Appx. 24 (2d Cir. 2013) .........................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...................................................................................4

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) .................................................................................8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ...............................................................................................10

**Statutes and Rules**

15 U.S.C.A § 78u-4 ("PSLRA")..............................................................................1, 3, 4, 6

Fed. R. Civ. P. 9(b) ......................................................................................................................3

iii

## PRELIMINARY STATEMENT

Plaintiff does not address—let alone refute—the governing authority Defendants cited. Instead, he relies on non-binding cases with different facts, none of which cure Plaintiff's failure to meet the stringent requirements for pleading either falsity or scienter. Neither Plaintiff's speculation, nor the FDA's ultimate rejection of Acer's NDA, demonstrate falsity. Plaintiff has not identified *any* information that contradicts Defendants' statements about the FDA's agreement on submission of Acer's NDA. He concedes as much, complaining that he has not been able to identify any confidential witnesses or review Defendants' internal documents— asking that the Court apply a lower bar for pleading to allow him to proceed on a fishing expedition to find evidence to support his speculation. This is precisely what the PSLRA was intended to prevent.

On scienter, Plaintiff's theory of motive has been squarely rejected by this Circuit, and he ignores Defendants' argument that his scienter theory is implausible. According to Plaintiff, the FDA knew from the start—because it was "obvious"—that the Ong Trial data was deficient, but decided to permit the submission anyway and wasted its time and resources reviewing the NDA. Defendants also knew, Plaintiff claims, that rejection of the NDA was inevitable, but still poured money and time into their futile quest. And despite knowing that Acer's statements had "artificially inflated the stock price," according to Plaintiff, no Defendant sold even one share of stock. This purported scheme defies logic, and Plaintiff's failure to adequately plead intent to defraud is an independent ground for dismissal.[1]

Finally, Plaintiff maligns Acer by claiming it sought to use orphan-drug exclusivity to overcharge patients without having engaged in any scientific work. This false accusation is a

---

[1] As set forth in Defendants' memorandum in support of their motion to dismiss, Plaintiff's failure to plead a primary violation of the securities laws is also fatal to his Section 20(a) claim, which should be dismissed.

last-ditch attempt to elude courts' concerns that allowing frivolous securities class actions against

pharmaceutical companies will deter scientific innovation.  This smear attempt is not only

unfounded—Acer engaged in meaningful scientific inquiry to bring a life-saving drug to market, and

indeed continues to work on getting EDSIVO approved (and on other valuable scientific endeavors

like treatments for COVID-19[2])—it is also *irrelevant* to whether Defendants deceived investors.

## I.   Plaintiff Has Not Adequately Pled Falsity

### A.   Plaintiffs' Interpretation of Defendants' Statements Ignores the Plain Words and Context of Defendants' Statements and Is Implausible

Plaintiff is challenging a statement Defendants never made.  Plaintiff persistently

misrepresents Defendants' statements, claiming that Acer stated that the FDA agreed no further

clinical development was needed "for EDSIVO."  (*E.g.* Opp. at 2, 3, 5, 9.)  Yet, as the SAC

concedes, Defendants actually said that "the FDA agreed that additional clinical development is

not needed and stated that [Acer] may *submit* a 505(b)(2) NDA for EDSIVO . . . ."[3]  (SAC ¶ 106

(emphasis added).)  Despite the plain language and context of Defendants' statements, and with

no support for his interpretation, Plaintiff contends that "a reasonable investor would have

believed that they applied to approval instead of submission."  (Opp. at 11-12.)

Plaintiff first claims that because the word "submit" is in a separate clause of the sentence

and separated from the first clause by the word "and," the statement regarding agreement must

pertain to approval rather than submission.  (*Id.* at 11.)  It is implausible—indeed absurd—to

suggest that the presence of the word "and" would lead a reasonable investor to understand these

statements as referring to approval rather than submission, where the sentence specifically

---

[2] *See* Press Release, "Acer Therapeutics to Develop Emetine as Potential COVID-19 Treatment in Collaboration with National Center for Advancing Translational Sciences, One of the National Institutes of Health," May 11, 2020, *available at* https://www.globenewswire.com/news-release/2020/05/11/2031423/0/en/Acer-Therapeutics-to-Develop-Emetine-as-Potential-COVID-19-Treatment-in-Collaboration-with-National-Center-for-Advancing-Translational-Sciences-One-of-the-National-Institutes-of-He.html.

[3] *See also* SAC ¶¶ 108, 112 ("At that meeting, the FDA agreed that an additional clinical trial is not likely needed and stated that [Acer] may *submit* a 505(b)(2) NDA for EDSIVO for the treatment of vEDS.") (emphasis added).

discusses submission, and there is *no mention of approval*.  Moreover, Plaintiff's interpretation is similarly implausible when read in the context of Defendants' risk disclosures, which expressly caution investors that the FDA *may not approve* the NDA.[4]  *See Rombach v. Chang*, 355 F3d 164, 172 n.7 (2d Cir. 2004) ("The test for whether a statement is materially misleading under Section 10(b) . . . is 'whether the defendants' representations, *taken together and in context*, would have misled a reasonable investor.'") (emphasis added).  Yet Plaintiff nevertheless claims that investors would understand these statements as referring to approval because "approval of an NDA is what matters."  (Opp. at 12.)  But approval is not the only thing that matters.  The FDA can, and does, refuse to accept NDAs for filing, and Acer's stock price would have also dropped if it had announced that the FDA had issued a Refuse to File ("RTF").  Investors know that the acceptance of an NDA for filing is itself a vital step and a prerequisite to approval.

### B.       Plaintiff Has Not Met and Does Not Get a Pass on His Pleading Burden

Plaintiff also asks the Court to ignore that Rule 9(b) and the PSLRA require Plaintiff to plead with particularity facts sufficient to support his belief that Defendants' statements were false.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").  Plaintiff has pled *no* facts to support his claim that Defendants' statements regarding agreement with the FDA were false, but has simply asserted—based on speculation about what the FDA "would have" done and hindsight based on the FDA's subsequent rejection of the NDA—that the FDA never entered into any such agreement.  Plaintiff argues that the rules requiring particularity should be loosened because he has had difficulty locating confidential witnesses and Acer has not released

---

[4] Plaintiff relies on *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. CV 17-341, 2020 WL 1479128 (E.D. Pa. Mar. 25, 2020), but it is not to the contrary.  There, defendants mischaracterized the product in the NDA and did not disclose the risk that the NDA would be rejected due to improper product classification.  Here, Defendants disclosed the very risk that occurred.  And unlike *Innocoll*, the issue is not whether Defendants' risk disclosures identified the specific reason why the FDA might reject the EDSIVO NDA.  The issue is what is the more plausible reading of the allegedly misleading statements, and the risk disclosures help show the implausibility of Plaintiff's interpretation.

3

the CRL (Opp. at 2), but there is no exception to the PSLRA for suits against small companies or companies that do not voluntarily release confidential internal documents.[5]  Indeed, the PSLRA exists to protect innovators from stock-drop suits like this.

Plaintiff claims that he need not plead facts demonstrating the falsity of Defendants' statements because Defendants allegedly "concede" that there was no agreement with the FDA regarding approval.  (Opp. at 13.)  But Defendants conceded no such thing.  In an *Alice in Wonderland* way, Plaintiff in effect argues that Defendants' failure to assert the truth of a statement Defendants *never made* amounts to a concession that the unmade statement is false.  Defendants' motion addressed the statements Defendants *actually* made.  The fact that Defendants did not attack Plaintiff's straw man concedes nothing.

Finding no support in the Second Circuit for failure to meet the governing pleading standards, Plaintiff relies heavily on *In re Mannkind Securities Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011), for the argument that because the FDA rejected the NDA, Defendants' statements regarding agreement with the FDA *must have been* false.  Plaintiffs' reliance on *Mannkind* is misplaced.  In that case, Mannkind submitted an NDA for an inhaler that it touted as a "super blockbuster," and made multiple forceful and affirmative statements to investors "that the FDA had 'bless[ed],' 'vetted,' 'approved,' 'accepted,' and 'agree[d]' to" the methodology for the clinical study underlying the NDA.  *Id.* at 800, 809.  The FDA rejected Mannkind's NDA on the grounds that the study methodology was inadequate, after which Mannkind backtracked, claiming that the FDA had merely provided "advice" on the

---

[5] Plaintiff contends that because Acer did not release the CRL, he should be allowed to rely on expert testimony at the pleading stage, despite the Second Circuit's clear rule that this is improper.  And Plaintiff's failure to find facts to support his claim does not relieve him of his pleading burden.  Further, Plaintiff never raised the CRL contents in the SAC nor alleged there may be information in the CRL that would bolster his claims.  Plaintiff only now raises the contents of the CRL in a bid to have the Court permit his improper use of an expert or to give him license to conduct a fishing expedition.  *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (purpose of the PSLRA was to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope . . . that the plaintiff will find during discovery some sustainable claim not alleged in the complaint").

methodology. *Id.* at 809. Mannkind made no effort to explain these inconsistencies in the briefing on its motion to dismiss, and proffered an entirely new theory of the FDA's reason for rejecting the NDA at the hearing on the motion. *Id.* at 823. Given these facts, the *Mannkind* court found that the FDA's rejection of the NDA based on inadequate methodology was evidence that Mannkind's statements that the FDA "agreed to," "vetted" or "blessed" the study methodology were false.[6]

None of the *Mannkind* facts are present here. Where the *Mannkind* plaintiffs alleged Mannkind's repeated, affirmative statements, Plaintiff here asserts a tortured and implausible reading of Defendants' statements. Where the Mannkind defendants later admitted that "blessed" only meant "advice" and further changed their explanations during litigation, Defendants here have never veered from the meaning of their statement—that the statements refer to *submission*, and not *approval*, of the NDA. In *Mannkind,* the FDA's justification for rejecting the NDA directly contradicted Mannkind's statements; here, the FDA's reason for issuing the CRL *does not contradict Defendants' statements*, because Defendants never said the FDA agreed to approve the NDA. And unlike in *Mannkind*, the fact that the FDA accepted Acer's NDA for submission with priority review rather than issuing an RTF specifically confirms the truth of Defendants' statements that the FDA agreed that Defendants could *submit* the NDA with no further study (*see* Opp. at 18).[7]

---

[6] Mannkind had also been sued by a former executive for alleged fraud and scientific misconduct that tainted the data Mannkind submitted to the FDA, and Mannkind concealed this information from investors for over a year. The court found probative of falsity the fact that Mannkind had a "pattern of being less than forthright with its investors concerning . . . the FDA approval process." 835 F. Supp. 2d at 818-19. There are no such allegations here.

[7] As discussed in Defendants' opening memorandum, the fact that the FDA accepted submission of the EDSIVO NDA and granted priority review illustrates the FDA's willingness to expend its limited resources to address Acer's NDA in the substantive review process. Had the FDA viewed the Ong Trial data as insufficient, as Plaintiff insists it "would have," the FDA could instead have issued an RTF pursuant to its Draft Guidance.

### C.      Plaintiff's Reliance on Expert Testimony at the Pleading Stage Is Improper

Plaintiff again relies on the non-binding *Mannkind* case, as well as mischaracterization of his own allegations, to try to circumvent the Second Circuit's rule that a plaintiff cannot satisfy his pleading burden through expert opinion. *See Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018) ("[O]pinions cannot substitute for facts under the [PSLRA]"). And he ignores the *Chipotle* court's concerns about the complex evidentiary issues that would be raised by allowing expert testimony at the pleading stage. Contrary to Plaintiff's contention, he is not merely "informing the Court of the basis for his allegations" via expert testimony (Opp. at 14-15), but instead is using the expert to assert the foundation of his claim, *i.e.*, that the FDA "would not have" made an agreement with Defendants. (*See* SAC ¶¶ 88-89.) Even in *Mannkind*, the court was clear that it did not rely on the expert's opinion in finding that the plaintiffs had met their pleading burden, as the plaintiffs "ha[d] other evidence demonstrating falsity . . . ." *Mannkind*, 835 F. Supp. 2d at 821. Here, Plaintiff has none. And while Plaintiff concedes that in *Chipotle* the court held that it would not consider "conclusory" expert allegations (Opp. at 15), he ignores that his own expert allegations about what the FDA "would have" believed or done are nothing more than conclusions.[8]

Despite his reliance on *Mannkind*, Plaintiff does not even comply with the Ninth Circuit's standards for reliance on expert testimony at the pleading stage. Courts in the Ninth Circuit will not credit the speculative statements of an expert who lacks personal knowledge of the matters on which he is opining. *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1107-08 (N.D. Cal. 2013); *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 861 (N.D. Cal. 2019).

---

[8] Plaintiff's other out-of-Circuit cases echo this rule, holding that while factual support from experts may be permissible, speculative or conclusory statements from an expert are impermissible. *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001) ("Conclusory allegations and speculation carry no additional weight merely because a plaintiff placed them within the affidavit of a retained expert."); *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV., 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015) (the court "only consider[ed] the expert's factual statements that are incorporated in the SAC" and did not consider the expert's opinions).

Plaintiff's claim that his expert's statements are not speculative (Opp. at 15) is disingenuous at best.  The SAC contains *no* allegations that Plaintiff's expert has any personal knowledge of the communications between Defendants and the FDA, so the expert is *ipso facto* speculating when he opines on what the FDA "would have" believed about the Ong Trial or "would have" communicated to Defendants.  Under governing Second Circuit, or even Ninth Circuit, law, Plaintiff cannot avoid his pleading burden by substituting an expert's speculation for his own.

## II.    Plaintiff Has Not Adequately Pled Scienter

### A.    Plaintiff Has Not Pled Motive to Commit Fraud

Plaintiff does not cite a single Second Circuit case to support his theory that desire to raise capital can constitute a motive to commit fraud, and ignores clear Second Circuit authority holding that goals generally possessed by all corporate executives are not sufficient to plead motive.[9]  The out-of-circuit cases on which Plaintiff relies highlight what is missing here.  Plaintiff has alleged no red flags regarding Acer's financial condition,[10] there are no allegations that individual defendants have "personal [financial] incentives . . . that depart[] from executives' typical compensation incentives" or that Acer needed funds it otherwise lacked in order to meet the FDA's requirements,[11] and no allegations of a unique financing arrangement giving Defendants a specific incentive to inflate Acer's stock price.[12]  And unlike *In re Ibis Technology*

---

[9] *E.g. Tabak v. Canadian Solar, Inc*., 549 Fed. Appx. 24, 28 (2d Cir. 2013); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001); *Schaeffer v. Nabriva Therapeutics PLC*, No. 19 Civ. 4183 (VM), at *38 (S.D.N.Y. Apr. 28, 2020) (Levitt Decl. Ex. G, ECF No. 51.7); *In re Elan Corp. Secs. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008).

[10] In *Nguyen v. Radient Pharmaceuticals Corp.*, the court found a desire to raise funds sufficient for scienter *when combined with red flags* regarding the company's financial condition, including the fact that the company was failing after decades of attempting to sell their product and was in litigation with its noteholders for breach of its financing obligations to increase the number of shares covered by warrants due to declines in the company's stock price, such that the company had specific incentive to prevent further drops in its stock price, which would require it to issue even more shares.  No. CV 11-0406, 2011 WL 5041959, at *9 (C.D. Cal. Oct. 20, 2011).

[11] *Frater v. Hemispherx Biopharma, Inc.*, unlike here, included allegations that individual defendants had "*personal incentives* relating to a stock sale in a way that departs from executives' typical compensation incentives," and that the company needed to raise cash specifically to finance an additional clinical trial that the FDA recommended, which it lacked sufficient funds to do otherwise.  996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) (emphasis added).

[12] In *Mannkind*, Mannkind entered into a "unique financing arrangement" with a private investment partner, in which the partner agreed to engage in biweekly purchases of Mannkind's stock for a year if the company's stock

*Securities Litigation*, 422 F. Supp. 2d 294 (D. Mass. 2006), Defendants were transparent with investors regarding Acer's financial condition, and were in fact *hiring* employees during the class period, consistent with their belief that the NDA would be approved.[13]

Plaintiff claims Defendants argued that "because [Defendants] disclosed that their business model was risky, they warned investors that they might be motivated to commit fraud." (Opp. at 23.)  To the contrary, Defendants argued that the nature of Acer's business model— which was disclosed to Plaintiff—is reliance on investor financing to fund its operations until it is able to bring its products to market to generate revenue.  If, as Plaintiff argues, the mere fact that Acer would make money only if EDSIVO was successfully brought to market means that Defendants were motivated to commit fraud (*id*. at 23-24), then *every* pharmaceutical company that relies on investors to finance its research and development is also motivated to commit fraud.  Not surprisingly, Plaintiff cites no case in support of this argument.

And Plaintiff did not even attempt to address Defendants' argument that Plaintiff's theory of motive is implausible.  Plaintiff incorrectly claims that "[i]t does not matter if Defendants believed EDSIVO would be approved."[14]  (*Id*. at 24.)  But it does matter that Defendants believed EDSIVO would be approved and were acting accordingly, because this is far more plausible than Plaintiff's theory that Defendants knowingly misled investors about EDSIVO's approval prospects to raise money to fund Acer's operations (*id.* at 22-23), only to pour all of

---

was trading above $6.50 per share.  835 F. Supp. 2d at 803.  In *Smith v. Antares Pharma, Inc.*, the court, in holding that the plaintiff had failed to plead motive despite allegations of defendants "significant financial motives, including [] possible NASDAQ delisting," expressly distinguished *Mannkind* on this ground.  Civil Action No. 17-8945, at *17 (D.N.J. Apr. 28, 2020) (Levitt Decl. Ex. F, ECF No. 51.6).

[13] In *In re Ibis*, the court found that the defendant company had been left in a cash crunch after missing its sales targets and was laying off employees, which further impaired the company's ability to meet demand, and then misstated its financial health in order to raise needed cash.  422 F. Supp. 2d 294, 316-17 (D. Mass. 2006).

[14] *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110 (C.D. Cal. 2005) is both non-binding and irrelevant.  Defendants did not argue that Plaintiff must prove Defendants believed that the NDA would be rejected, but rather that Plaintiff's theory of scienter is less plausible than the competing theory that Defendants' actions show they believed that the NDA for EDSIVO would be approved.

that money into continuing to develop, *at no gain to themselves*, a drug *they knew would not be approved* and whose rejection would *inevitably reveal their alleged fraud.*[15]  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007) ("To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct . . . ."); *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("[T]he inference of scienter must be . . . 'at least as compelling as any opposing inference of nonfraudulent intent.'")

### B.     Plaintiff Has Not Pled Recklessness

In the absence of any well-pled allegations of motive, "the strength of the circumstantial [evidence] must be correspondingly greater." *Kalnit*, 264 F.3d at 142.  Plaintiff tellingly does not mention *Kalnit* once in his brief.  Plaintiff's theory of recklessness hinges on his claim that Defendants have "concede[d]" that any statements regarding agreement with the FDA must be false.  (Opp. at 13, 19.)  As discussed above, Defendants have conceded no such thing.  Plaintiff cannot allege recklessness when the only plausible reading of Defendants' statements is that they pertain to filing the NDA—the word approval does not appear in the statements, Defendant's conduct comports with that inference, and there is no showing that Defendants thought or knew otherwise.  Plaintiff also claims that Acer senior executives must have been aware of the communications with the FDA.  (*Id.* at 19-20.)  Defendants do not suggest otherwise.  But Plaintiff has not adequately pled that Defendants knew the statements they actually made were false.  Plaintiff's allegations that Defendants knew statements regarding the FDA approval

---

[15] Plaintiff claims he does not "allege that Defendants knew, or the FDA explicitly told them, that the FDA would reject EDSIVO or that an additional clinical trial was required . . . ." (Opp. at 25.)  But this is exactly what Plaintiff alleges.  He alleges, via his expert, that "the FDA would not have 'agreed' that additional clinical development was not needed for EDSIVO . . . [and] statements by the FDA prior to filing an NDA would have focused on whether the NDA would be approved" (SAC ¶¶ 89-90), and further claims that Defendants omitted "the FDA's communications to Acer regarding the need for further clinical development to obtain FDA approval . . . ." (*Id.* ¶ 111.)

9

process were material to investors fail for the same reason.  (*Id.* at 21-22.)  That investors find such statements important says nothing about whether Defendants knew they were false or were otherwise acting with intent to "deceive, manipulate or defraud."  *Kalnit*, 264 F.3d at 138.[16]

Plaintiff also claims the Court should "infer scienter" based on Defendants' minor wording changes to their disclosures.  (Opp. at 20-21.)  But Plaintiff's proffered theory is illogical.  Plaintiff contends that Defendants made the first, allegedly more definitive, statement before their first public offering to raise money, and then modified the statement once the offering was successfully completed.  But this modification was made *before* Defendants' second offering.  If Defendants were intentionally relying on a misleading first statement to raise capital, it does not make sense that they would change the statement before their second capital raise.  Also illogical is Plaintiff's attempt to contest that the two versions of Defendants' statements are substantively identical.  Plaintiff insists that a statement that the FDA agreed to approve EDSIVO would be highly material to investors, but cites no one else who interpreted the first statement to pertain to approval, and then argues that the changed language in Defendants' disclosures conveys an utterly different impression.  (*Id*. at 20.)  If this were the case, surely investors would have reacted accordingly.  Yet Plaintiff has pled no market reaction to this wording change—neither the SAC nor Plaintiff's opposition contain any allegations of changes to Acer's stock price, difficulty in raising cash in the second offering, or other facts suggesting that the market saw the revised language as materially different from the prior statement.

---

[16] Plaintiff's citations to *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698 (9th Cir. 2016), and *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), are inapposite.  In *Schueneman*, the court found scienter where defendants claimed that preclinical animal studies showed the "long-term safety and efficacy" of the drug and "everything that [they had] compiled so far" was "favorable," when defendants knew for years that a preclinical study indicated the drug caused cancer in rats.  840 F.3d at 708.  In *Zak,* the court found a strong inference of scienter because the FDA repeatedly told defendant that two successful efficacy studies were required for NDA approval and despite these instructions, which plaintiff substantiated with FDA documents and statements from confidential informants, defendants never disclosed this to investors and submitted the NDA based on a single one-week study.  780 F. 3d at 609-10.  Furthermore, defendants misrepresented an FDA briefing document stating the document raised "several lines of inquiry" when, in fact, it recommended *against* approval for the drug.  *Id.* at 610.

10

**CONCLUSION**

Defendants respectfully submit that the Court should dismiss the Second Amended

Complaint for failure to state a claim, and should not grant further leave to amend.


Dated: New York, New York
    May 29, 2020

MORRISON & FOERSTER LLP

By: */s/ Jamie A. Levitt*

    Jamie A. Levitt
    Lauren M. Gambier
    250 West 55th Street
    New York, New York 10019
    Telephone: (212) 468-8000
    Facsimile:  (212) 468-7900
    Email:  JLevitt@mofo.com
            LGambier@mofo.com

    Jordan Eth (admitted *pro hac vice*)
    425 Market Street
    San Francisco, California 94105
    Telephone: (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JEth@mofo.com

    *Attorneys for Defendants Acer Therapeutics*
    *Inc., Chris Schelling, and Harry Palmin*

11