UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NICHOLAS SKIADAS, *individually and on behalf of all* :
*others similarly situated,*                                        :
                                                                          :
                                             Lead Plaintiff,:
                                                                          :
                   -against-                                        :
                                                                          :
ACER THERAPEUTICS INC., CHRIS                       :
SCHELLING, and HARRY PALMIN                       :
                                                                          :
                                             Defendants.   :
----------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  7/21/2020

1:19-cv-6137-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

In *Skiadas v. Acer Therapeutics Inc.* (*Skiadas I*), the Court denied Defendants' motion to dismiss the second amended complaint.  No. 1:19-cv-6137 (GHW), 2020 WL 3268495 (S.D.N.Y. June 16, 2020).  Defendants now seek reconsideration of that opinion.  Because Defendants have failed to carry their burden to show that the Court clearly erred in *Skiadas I*, their motion for reconsideration is DENIED.

## I. BACKGROUND

*Skiadas I* provides most of the relevant background.  That decision held that Skiadas had plausibly alleged securities fraud claims.  Defendants moved for reconsideration of *Skiadas I*, Dkt Nos. 58-59, and Skiadas opposed the motion, Dkt No. 61.

## II. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party must set forth "the matters or controlling decisions which counsel believes the Court has overlooked."  "Motions for reconsideration are . . . committed to the sound discretion of the district court."  *Immigrant Def. Project v. U.S. Immigration and Customs Enf't*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases).  "Reconsideration of a previous order by the

Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK),

2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F.

Supp. 2d 571, 572 (S.D.N.Y. 2011)).  "A motion for reconsideration should be granted only when

the [moving party] identifies 'an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil*

*of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd.*

*v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Gottlieb v. Tyler*, 795 F. App'x 82, 83

(2d Cir. 2020).

## III. DISCUSSION

### A. Falsity

The Court adheres to its conclusion that Skiadas has plausibly alleged that Defendants'

statements were false or misleading.  In *Skiadas I*, the Court noted that

> in the 2017 Offering Documents, Defendants stated that "the FDA agreed" at a
> September 2015 meeting that "additional clinical development is not needed and stated
> that we may submit a 505(b)(2) NDA for EDSIVO for the treatment of vEDS."
> Similarly, in its 2017 Form 10-K, Defendants stated that "the FDA agreed" at the
> September 2015 meeting "that an additional clinical trial is not likely needed and stated
> that we may submit a 505(b)(2) NDA for EDSIVO for the treatment of vEDS."  And
> in the 2018 Offering Documents, Defendants repeated the statement from the 2017
> Form 10-K.
>
> The parties disagree about whether these statements were false or misleading because
> they disagree what these statements represent the FDA "agreed to."  Skiadas argues
> that a reasonable investor would have understood these statements to represent that
> the FDA agreed that no additional clinical development was necessary for the FDA to
> *approve* the EDSIVO NDA.  Defendants argue that a reasonable investor would have
> understood these statements to concern only whether Acer could *submit* the EDSIVO
> NDA.

2020 WL 3268495, at *8 (citations omitted).  *Skiadas I* concluded that it was ambiguous whether the

challenged statements referred to submission or approval.  So, "because a court must draw all

reasonable inferences in the plaintiff's favor on a motion to dismiss[,]" it held that Skiadas had

adequately alleged that the statements were false.  *Id.* at *9.

To reiterate *Skiadas I*, the problem with Defendants' argument is that there is no logical connection between the first half of Defendants' sentence, which is ambiguous, and the second half, which unambiguously refers to EDSIVO approval. In the challenged statements, Defendants said that the FDA agreed that "additional clinical development is not needed *and* stated that we may submit a 505(b)(2) NDA for EDSIVO for the treatment of vEDS." *Id.* at *8 (emphasis added). Skiadas challenges the part of the sentence before the "and." He alleges that a reasonable investor could have read the statement that the FDA agreed that "additional clinical development is not needed" as being about EDSIVO approval, not submission. Defendants protest that the second half of the sentence refers to submission.

But "and" cannot carry the weight that Defendants need it to. The Court used an example to make this point in *Skiadas I*:

> Imagine that a friend tells you "John has arrived, and I need to go to the grocery store." Does the fact that John has arrived tell you anything about your friend's planned food-shopping trip? And conversely, does the fact that your friend needs to go to the grocery store tell you anything about John's arrival? The answer to both questions is no. Your friend just chose to express two unrelated ideas in the same sentence.

*Id.* The point is that English speakers sometimes use "and" to convey logically independent ideas in the same sentence. That is what Skiadas alleges a reasonable investor would have understood Defendants to be doing in the challenged statements. And because the Court cannot conclude that no reasonable investor could have read the statement as Skiadas proposes, the Court declines to reconsider its prior conclusion that Skiadas has adequately alleged that Defendants' statements were false.

Defendants have several counterarguments, but none are persuasive. Defendants first take aim at the Court's statement that "Defendants are correct that" the statement's "context weighs in favor of construing the statements to be about submission, not approval." Memorandum of Law in Support of Motion for Reconsideration ("Mem."), Dkt No. 59, at 4 (quoting *Skiadas I*, 2020 WL 3268495, at *8). Defendants argue that "the Second Circuit has held that statements are false or

misleading only when, 'taken together and in context, they would have misled a reasonable investor.'" *Id.* (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7) (2d Cir. 2004) (emphasis and brackets omitted).

That is a correct statement of law, but it does Defendants no good. That is because the Court held in *Skiadas I*, and now reaffirms, that the context of the challenged statements provides some support for Defendants' arguments—but not enough support to render implausible Skiadas' allegations that Defendants' statements were false or misleading. Indeed, all *Skiadas I* said was that Defendants' arguments would be *even weaker* if the sentences containing the challenged statements included no reference to submission. In other words, because the sentence containing the challenged statements also referred to submission, Defendants' argument was not completely without merit. But it does now follow that Skiadas failed to meet his burden to plead that Defendants statements were false or misleading "taken together and in context." *Rombach*, 355 F.3d at 172 n.7.

Defendants primary argument is that "ambiguity does not suffice to plead falsity." Mem. at 3. That argument misconstrues *Skiadas I*. *Skiadas I* explained:

> Because the challenged statements are ambiguous, the Court cannot dismiss Skiadas' claims based on those statements as a matter of law. At the motion to dismiss stage of a securities fraud action, "the court reads ambiguities" in challenged statements "in the plaintiff's favor." That is simply an application of the maxim that a court must draw all reasonable inferences in the plaintiff's favor on a motion to dismiss. Defendants' statements are ambiguous, so the Court must construe them as referring to EDSIVO approval, not submission, at this stage.

2020 WL 3268495, at *9 (quoting *Umbach v. Carrington Inv. Partners*, No. 3:08-cv-484 (EBB), 2009 WL 413346, at *6 (D. Conn. Feb. 18, 2009)) (brackets omitted).

Defendants seem to misunderstand the meaning of the phrase "the challenged statements are ambiguous." In *Skiadas I*, that statement meant that the challenged statements are "capable of being understood in two or more possible senses or ways." *Ambiguous*, Merriam Webster

Unabridged.[1]  The Second Circuit often uses the word "ambiguous" in this sense:  Statements, like contracts, are "ambiguous if [they are] reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 729 n.14 (2d Cir. 2010) (quoting *N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 808 N.Y.S.2d 70, 73 (1st Dep't 2006)); *see also Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 158 (2d Cir. 2017).

The challenged statements are susceptible of two different meanings.  A reasonable investor might have interpreted them to refer to either submission or approval.  The two readings are equally plausible.  On one reading, Skiadas has adequately alleged that Defendants' statements were false or misleading.  On the other, he has not.  So the question is:  Which of these equally plausible readings should the Court adopt at the motion to dismiss stage?  The answer is that a court reviewing a motion to dismiss must "'draw[] all reasonable inferences in the plaintiff's favor,'" even when "[a] complaint alleg[es] securities fraud" and so "must also satisfy the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), 15 U.S.C. § 78u-4(b)." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 107-08 (2d Cir. 2012) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010); *see also Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019).[2]  Skiadas has plausibly alleged that on one reading of Defendants' statements, their statements were false or misleading.  So the Court denied Defendants' motion to dismiss.

As best the Court can tell, Defendants think *Skiadas I* used a different definition of ambiguous.  Ambiguous can also mean "doubtful or uncertain especially from obscurity or indistinctness; inexplicable." *Ambiguous*, Merriam Webster Unabridged.  Defendants seem to argue that if a statement is ambiguous in this sense—in other words, that the statement is unclear—it

---

[1] https://www.merriam-webster.com/dictionary/ambiguous.
[2] There is a partial exception to this rule for allegations of scienter, which the Court addresses below.

cannot serve as a predicate for securities fraud liability.  *See* Mem. at 5 (citing, among others, *Kelly v. Elec. Arts, Inc.*, No. 13-cv-05837 (SI), 2015 WL 1967233, at *7-8 (N.D. Cal. Apr. 30, 2015) (declining to find falsity where the plaintiff's "allegations [did] not demonstrate that the [challenged statement] has any precise meaning")).  *Skiadas I* took no position on that question, and the Court need not do so now.  That is because the challenged statements are not obscure.  They have one of two "precise meaning[s]." *Kelly*, 2015 WL 1967233, at *8.  Either they are about approval, or they are about submission.  As explained, both interpretations are equally plausible, so the Court must adopt the more Skiadas-friendly reading.  Defendants have thus failed to show that there was any error—much less clear error—in *Skiadas I* on this point.

**B. Scienter**

Defendants also argue that the Court should reconsider its ruling on scienter.  Their arguments are unavailing.  *Skiadas I* explained that the legal standard "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter[.]"  2020 WL 3268495, at *9 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)).  "In the Second Circuit, a plaintiff may plead scienter either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Id.* (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001)).  But "[a] plaintiff need not rely exclusively on one of these theories.  Indeed, *Kalnit* held that absent allegations of motive, 'the strength of the circumstantial [evidence] must be correspondingly greater.'"  *Id.*  (quoting *Kalnit*, 264 F.3d at 142).  That is in line with the Supreme Court instruction "to consider 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter.'"  *Id.* (quoting *Tellabs*, 551 U.S. at 313).

In *Skiadas I*, the Court held that Skiadas had adequately alleged scienter for four reasons.  First, "Defendants' statements concerning 'approval' by the FDA 'necessarily implied that there would be no serious impediments to timely FDA approval.'"  *Id.* at *10 (quoting *In re MannKind Sec.*

*Actions*, 835 F. Supp. 2d 797, 811 (C.D. Cal. 2011)) (ellipsis omitted).  Second, Defendants themselves "revised their representation of what the FDA 'agreed to.'"  *Id.*

Third, the Court held that "inference of scienter is also bolstered by [Defendants' admission] in their SEC filings that they needed to raise funds for Acer to remain viable."  *Id.* at *11.  The Court acknowledged that "as a general matter, 'the absence of stock sales by insiders, or any other evidence of pecuniary gain by company insiders at shareholders' expense, is inconsistent with an intent to defraud shareholders.'"  *Id.* (quoting *In re N. Telecom Ltd. Secs. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000)).  "That is because allegations that defendants had 'motives that are generally possessed by most corporate directors and officers do not suffice' to support a strong inference of scienter."  *Id.* (quoting *Kalnit*, 264 F.3d at 139).  "But courts have found allegations of motive adequate where the company[] needed to fundraise to survive."  *Id.* (citing *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014)).  Fourth, the Court held that Skiadas had alleged that "Defendants had access to information that contradicted the challenged statements.*"  Id.* (citing *Kalnit*, 264 F.3d at 142).

Defendants first complain about the Court's statement that the "inference of scienter is also bolstered by [Defendants' admission] in their SEC filings that they needed to raise funds for Acer to remain viable."  *Id.*  Defendants argue that "allegations that Defendants were motivated by a desire to continue operating as a going concern or to avoid bankruptcy" are insufficient to support scienter.  Mem. at 6.

That argument is off the mark for a few reasons.  To begin with, Defendants cite only district court cases to support their arguments.  *Id.* at 7.  But "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of *controlling* law."  *Kolel Beth*, 729 F.3d at 104 (quotation omitted and emphasis added).  The cases cited by Defendants are not controlling.  The only controlling law Defendants cite is *Kalnit*, for the proposition that "[a]llegations of motives 'generally possessed by most corporate directors and officers,' are

insufficient as a matter of law to plead scienter." Mem. at 8 (quoting *Kalnit*, 264 F.3d at 139). But the Court quoted the very same language in *Skiadas I*. *See* 2020 WL 3268495, at *11 (quoting *Kalnit*, 264 F.3d at 139).

*Skiadas I* accords with *Kalnit*. If a company is on the verge of bankruptcy, corporate insiders have a motive that is not "generally possessed by most corporate directors and officers." *Kalnit*, 264 F.3d at 139. As *Skiadas I* explained:

> An executive at a company that will go belly up if it fails to fundraise has different incentives from a generic corporate insider. One salient difference is that the former executive has a stronger incentive to bet the farm in a reckless gamble because the alternative is certain failure. And Skiadas has alleged that Defendants had that incentive in this case.

2020 WL 3268495, at *11.

More fundamentally, Defendants ignore the other allegations supporting an inference of scienter in *Skiadas I*. If the *only* allegation Skiadas made supporting an inference of scienter was that Defendants needed to raise money, the Court may have decided the motion to dismiss differently. But the allegation that Defendants needed to fundraise to avoid bankruptcy was only one factor supporting an inference of scienter. None of the cases cited by Defendants, including *Kalnit*, stand for the proposition that a court cannot consider company's financial position as one factor, among others, supporting an inference of scienter. To the contrary, the argument that a company's financial position is irrelevant to the scienter inquiry deviates from *Tellabs*, which held that a court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter[.]" *Tellabs*, 551 U.S. at 310.

Defendants next argue that the Court used the wrong legal standard to evaluate Skiadas' allegations of scienter. That is nonsense. Defendants cherrypick a few statements in which the Court held that Skiadas had "plausibly alleged" scienter. Mem. at 8. Defendants note that the Supreme Court has held that "an inference of scienter must be ***more than merely plausible or reasonable***—it must be cogent and at least as compelling as any opposing inference of

nonfraudulent intent." Mem. at 9 (quoting *Tellabs*, 551 U.S. at 314) (bold and italics in the original). But *Skiadas I* quoted this very language. *Skiadas I*, 2020 WL 3268495, at *10 (quoting *Tellabs*, 551 U.S at 314). And the Court concluded its discussion of Skiadas' allegations of scienter with the statement "[v]iewing the totality of Skiadas' allegations, the inference that Defendants had an intent to defraud is at least as compelling as any alternative inference." *Skiadas I*, 2020 WL 3268495, at *12.

Thus, contrary to Defendants' argument, *Skiadas I* did not "rel[y] on a 'plausibility' standard for pleading scienter[.]" Mem. at 9. Defendants' counterargument reflects an interpretation of *Skiadas I* that is so implausible that it slides perilously close to "frivolous" territory. *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]").

From their decidedly implausible argument about "plausibility," Defendants pivot to attacking *Skiadas I*'s citation to *In re Mannkind Secs. Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011). *Skiadas I* cited *Mannkind* in one paragraph. Here is the Court's entire discussion of *Mannkind*:

> "[C]ase law addressing misstatements relating to FDA approval lends support to Plaintiffs' use of these statements to demonstrate scienter." As in *Mannkind*, "Defendants' statements concerning 'approval' by the FDA 'necessarily implied that there would be no serious impediments to timely FDA approval.'" "The natural effect of these statements would be to create the impression for investors that 'it was in the bag[,]' that is, . . . that there was a minimal chance of failure because the studies had been specifically approved or agreed to by the very agency that would be reviewing them." Because "FDA approval was the *sin[e] qua non*" for Acer's "success," statements "pertaining to the chances of such approval and the speed with which it would be secured were absolutely essential to the company's prospects." So "Defendants' statements concerning 'approval' by or an 'agreement'" themselves are probative evidence of "a strong inference of scienter."

*Skiadas I*, 2020 WL 3268495, at *10 (quoting *Mannkind*, 835 F. Supp. 2d at 811-12) (citations omitted).

Defendants do not attack any of these statements directly. They instead point out that the challenged statements here are different from the statements in *Mannkind*. And indeed, no two cases have precisely the same facts. But Defendants do not explain why the quoted portion of *Mannkind* is wrong. Defendants also decline to mention that *Mannkind* itself quoted *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1130 (C.D. Cal. 2005). Defendants' motion for reconsideration does not even mention *Yanek*, let alone try to distinguish it.

Defendants then jump back to arguing that *Skiadas I*'s holding on ambiguity saves their bacon. Yet again, it doesn't. True, "ambiguities count against inferring scienter." Mem. at 10 (quoting *Tellabs*, 551 U.S. at 326) (emphasis omitted). So Defendants are correct that the inference of scienter would be stronger if the challenged statements were unambiguously about approval.

But despite the ambiguity in the challenged statement, Skiadas has raised a cogent and compelling inference of fraudulent intent. Remember that *Skiadas I* gave four reasons that Skiadas has adequately alleged such an inference. One such reason is that Defendants revised the challenged statements. Here is what *Skiadas I* said about that issue:

> Recall that in the 2017 Offering Documents, Skiadas alleges that Defendants wrote that "the FDA agreed that additional clinical development is not needed and stated that we may submit a 505(b)(2) NDA for EDSIVO™ for the treatment of vEDS." Later, Defendants allegedly wrote that "the FDA agreed that an additional clinical trial is not likely needed and stated that we may submit a 505(b)(2) NDA for EDSIVO™ for the treatment of vEDS." Defendants are wrong that the two statements are "substantively identical." The first is unqualified; the second is hedged. Any competent speaker of the English language could tell you that a statement that something is "not needed" is different from a statement that it is "not *likely* needed." Defendants' decision to alter the wording of their public statements suggests that the first statement was inaccurate. The altered wording thus supports an inference that in the 2017 Offering Documents, Defendants misstated, either consciously or recklessly, what the FDA "agreed to" in its September 2015 meeting with Defendants.

*Skiadas I*, 2020 WL 3268495, at *10 (citations omitted). No reasonable investor would agree that both versions of the challenged statements were "substantively identical," as Defendants previously

argued.  Defendants chose not to renew that argument in their motion for reconsideration.  Indeed, Defendants do not mention that allegation at all in their motion for reconsideration, even though the Court relied on it in *Skiadas I*.

The change supports a compelling inference of scienter.  The challenged statements were not forward-looking statements about what the FDA *might* agree to; they were about what the FDA *had* agreed to at a meeting with Acer management.  The change in the challenged statements supports a compelling inference that Defendants knew that—contrary to the first version of the challenged statements—the FDA had not, in fact, agreed that additional clinical work was not needed for EDSIVO.

To see why the change matters, consider a hypothetical.  Imagine a start-up company, Little Co., in the midst of a funding round.  Little Co.'s management meets with a partner at a venture capital firm, VC LP.  The partner tells Little Co. management that VC LP will likely fund Little Co.  Then imagine that in Little Co.'s public disclosures, it said that VC LP had agreed to fund Little Co.  Would a reasonable investor think that Little Co.'s disclosure was accurate?  No, she wouldn't.  That is because Little Co.'s disclosures represent that VC LP has firmly committed to funding Little Co when it has made no such commitment.

The same is true here.  A reasonable investor would've interpreted Defendants' statement that the FDA agreed that additional clinical work was "not needed" as a commitment.  So if the FDA said that additional clinical work was "not likely needed," then Defendants' statement was false or misleading.  The omission of the hedging language from the first version of the statement supports an inference that Defendants intentionally or recklessly misled investors.  And by the same token, the second version of the challenged statements suggests that Defendants realized that their first statement was false and tried to fix their mistake.

Defendants also made these disclosures when they were trying to raise money from investors.  That supports an inference of scienter.  Again, that Defendants were trying to raise

11

money is not necessarily sufficient to support an inference of scienter.  But the circumstances in which Defendants made the challenged statements are relevant to whether Skiadas has alleged a plausible inference of scienter.

The Court need not rehash all *Skiadas I*'s scienter analysis here.  The bottom line is that the Court's holding that Skiadas had adequately alleged scienter did not rest on its holding that the challenged statements were ambiguous.  Rather, *Skiadas I* held that "[v]iewing the totality of Skiadas' allegations, the inference that Defendants had an intent to defraud is at least as compelling as any alternative inference."  2020 WL 3268495, at *12.  That holding was not clearly erroneous.

Defendants' last gasp is to recycle an argument it made on the motion to dismiss. Defendants argue that "the Court is asked to accept the theory that Defendants promised FDA approval for a drug they knew would not be approved, in order to raise capital in the short term and face the inevitable fallout once it became apparent that the FDA had never agreed to approve the NDA."  Mem. at 11.

> *Skiadas I* addressed this argument:
>
> True, "courts often refuse to infer scienter, even on a recklessness theory, when confronted with illogical allegations."  But Skiadas' allegations are not wholly illogical.[3] Skiadas' allegations support the inference that Defendants rationally (though recklessly) gambled that the FDA would ultimately approve [EDSIVO, even though the FDA had never "agreed" that it would approve EDSIVO without additional clinical development.  As Judge Posner has explained,
>
> the fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble.  It is like embezzling in the hope that winning at the track will enable the embezzled funds to be replaced before they are discovered to be missing.
>
> Skiadas has plausibly alleged that Defendants deliberately or recklessly misrepresented that the FDA agreed that it would approve EDSIVO to keep the company afloat.

---

[3] Defendants protest that whether a plaintiff's allegations are "wholly illogical" is not the legal standard for scienter. Mem. at 11-12.  Agreed.  But the Court made that statement in response to *Defendants'* argument that Skiadas's theory "defie[d] logic[.]"  Memorandum in Support of Motion to Dismiss ("MTD Mem."), Dkt No. 50, at 19.

*Skiadas I*, 2020 WL 3268495, at *11-12 (first quoting *In re GeoPharma, Inc.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006) and then quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)) (alterations omitted); *see also Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (holding that a defendant's "argument confuses expected with realized benefits" and that even if defendants took a risk by making misrepresentations, "the benefits of concealment might have exceeded the costs") (quoting *Tellabs*, 513 F.3d at 710).

Here is another way to think about it. Imagine that Acer would have gone bankrupt but for Defendants' alleged misrepresentations. Then imagine that the FDA had approved EDSIVO. Defendants' gamble would've paid off: By lying and saying that the FDA had agreed to approve EDSIVO when the FDA had not so agreed, Defendants would've avoided bankruptcy. Indeed, in this hypothetical, the only way Acer managed to stay alive long enough to make it to the point that it secured FDA approval was because Defendants lied.

In short, Skiadas alleges that Defendants gambled and lost. Skiadas is not arguing—no matter how many times Defendants say the opposite, *see* Mem. at 11—that Defendants knew that the FDA would not approve EDSIVO. Skiadas' theory is that Defendants knew that the FDA had not *agreed* to approve EDSIVO but that they chose to say the opposite. That allegation distinguishes this case from *Shields v. Citytrust Bancorp, Inc. See* Mem. at 12 (citing 25 F.3d 1124 (2d Cir. 1994)). There, the Circuit wrote that "[i]t is hard to see what benefits accrue from a short respite from an *inevitable* day of reckoning." *Shields*, 25 F.3d at 1130 (emphasis added). Here, Skiadas has not alleged that the "day of reckoning" was "inevitable" because the FDA might have approved EDSIVO. *Id.* But that does not mean that it was not false or misleading for Defendants to say that the FDA had approved EDSIVO when it had not, or that Defendants' statements were not reckless.

Defendants also argue that the Court should adopt the reasoning of the Ninth Circuit's recent decision in *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020). But Defendants' argument about *Nguyen* is just old wine in a new bottle. In *Nguyen*, the Ninth Circuit rejected a plaintiff's

"theory that defendants were promising FDA approval for a medical device application they *knew* was 'unapprovable[.]'" *Id.* at 415 (emphasis added).  At the risk of repetition, however, Skiadas's theory of scienter is not that Defendants knew that the FDA would not approve EDSIVO.  So *Nguyen* is inapposite.[4]

Lest there be any residual doubt, Skiadas's allegations raise an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 309.  Defendants have thus failed to carry their heavy burden to show that the Court clearly erred in *Skiadas I*.

## IV. CONCLUSION

Defendants motion for reconsideration is DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt No. 58.

SO ORDERED.

Dated:  July 21, 2020

_____
GREGORY H. WOODS
United States District Judge

---

[4] Defendants cited *Gillis v. QRX Pharma Ltd.* to make virtually the same argument in their briefing on the motion to dismiss.  MTD Mem. at 19-20 (citing 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (holding that allegations of scienter were "implausible" when a defendant pleaded that defendants "continued to invest substantial time and resources in clinical studies and NDA submissions that it *knew* were doomed to fail, all the while misrepresenting to the public that approval was likely" (emphasis added)).  *Gillis*, too, is inapposite.