K8HVSKIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NICHOLAS SKIADAS,

                Plaintiff,

        v.                              19 CV 6137 (GHW)

ACER THERAPEUTICS INC., *et al*,

                Defendants.             REMOTE TELECONFERENCE

------------------------------x
                                        New York, N.Y.
                                        August 17, 2020
                                        3:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                        District Judge

                        APPEARANCES

THE ROSEN LAW FIRM
        Attorneys for Plaintiff
BY:  LAURENCE M. ROSEN
        BRIAN B. ALEXANDER

MORRISON & FOERSTER
        Attorneys for Defendants
BY:  JAMIE A. LEVITT
        JORDAN ETH
        MICHAEL G. AHERN

K8HVSKIC

(Remote teleconference)

THE COURT:  This is Judge Woods.

Do I have a court reporter on the line?

THE COURT REPORTER:  Yes, your Honor.

Good afternoon.  Martha Martin.

THE COURT:  Good.  Thank you very much.

So let me first hear who's on the line for each of the parties.  I'm going to ask that the principal spokesperson for each party identify him or herself and members of her team, rather than having all of the members of each team identify themselves individually.

So first, who do I have on the line on behalf of plaintiffs?

MR. ALEXANDER:  Brian Alexander from The Rosen Law Firm.  Laurence Rosen is also on the line.

THE COURT:  Thank you.

And who's on the line on behalf of the defendants?

MS. LEVITT:  Good afternoon, your Honor.

This is Jamie Levitt from Morrison & Foerster, on behalf of the defendants.

I also have with me Jordan Eth and Michael Ahern.

THE COURT:  Good.  Thank you very much.

So let me just say a few brief words about the protocols that I'd like the parties to follow during this conference.

K8HVSKIC

First, let me just remind you all that this is a public proceeding.  Any member of the public or press is welcome to join us here.  And as you know, the dial-in information for the conference is available on the Court's public website.  I am not monitoring who joins the call.  So please just keep that in mind as we're proceeding.

Second, I'd like to ask each of you to please keep your phones on mute at all times during this conference. Please keep your phone on mute, again, at all times.  That will help us to eliminate any unnecessary background noise.  I can hear a little bit of background noise periodically.  If you put your phones on mute, we won't hear that; we'll be able to keep a clearer record of the conference.  Thank you.

The next thing that I'd like to do is to ask each of you to please state your name each time that you speak during the conference.  You should state your name each time that you speak here, regardless of whether or not you've spoken previously.

Next, I am inviting our court reporter to let us know if she has any difficulty in hearing or understanding anything that any of us says here today.  So if she asks you to do something that will make it easier for her to do her work, I ask you to please do it to the extent that you can.

And finally, because we have a court reporter on the line, I'm ordering that there be no recordings or rebroadcast

K8HVSKIC

of all or any portion of today's conference.

So with those introductory remarks out of the way, I'd like to turn to the substance of the conference.

I've scheduled this as an initial pretrial conference for this case.

I'm sorry, who is dialing in with the last four digits of 5336, if I can --

So let me say that I've scheduled this as an initial pretrial conference for this matter. I've reviewed the materials that the parties have submitted in connection with the conference.

What I'd like to do is to follow this agenda:

First, I hope to give each of the parties an opportunity to describe any legal or factual issues that you expect to be particularly pertinent here, with view to everything described on the docket to date. But I welcome any comments that the parties would like to make to highlight anything that you think is particularly worthy of note.

Second, I hope to discuss the process that we'll be using to litigate the case going forward. For that portion of the conference I expect to look to the parties' proposed case management plan and scheduling order to provide the framework for conversation.

And last, I hope to discuss what, if anything, I can do to facilitate an amicable resolution of the case, although

we may discuss that as we discuss the scheduling matters, given the parties' proposal to engage in early mediation.

So that is my agenda for the conference.

With that established, let me turn first to counsel for plaintiffs. What would you like to tell me about the case as a whole?

MR. ALEXANDER: In terms of the most important -- this is Brian Alexander from The Rosen Law Firm.

I mean the most important factual aspect of the case are, as in any securities litigation, whether the defendants made material misstatements and whether they did so with *scienter*. In this case, the most important documents will be the correspondence of the FDA, which will show whether they actually had an agreement with the FDA concerning whether the FDA would approve EDSIVO without any further clinical trial or clinical involvement, and also other comments that the FDA made about EDSIVO's new drug application.

THE COURT: Thank you.

Let me ask counsel for plaintiffs about this issue. It's referenced in your joint letter.

You say that among the discovery that you expect to seek information regarding meeting minutes, memorandum, notes of FDA meetings and other core FDA documents, you say that you're seeking those from defendants or, I should say, defendants say that they are going to provide those to the

extent they are in their possession, custody and control.  Can I ask counsel for plaintiffs to what extent you anticipate third-party discovery here, in particular third-party discovery from the FDA itself or its officers or representatives?

MR. ALEXANDER:  I definitely think it's possible that we could seek that discovery.  There's also third-party discovery from underwriters that we may seek.  But at least initially, as, you know, described in the letters, we were looking to get the particular files of Acer so we could conduct the mediation that we discussed in the letters.  But following that, we may seek discovery from the FDA.

THE COURT:  Good.  Thank you very much.

Good.  Let me turn to counsel for defendants.  Is there anything that you'd like to tell me about the case as a whole?

MS. LEVITT:  Thank you, your Honor.

Jamie Levitt from Morrison & Foerster.

I think part of what plaintiff's counsel said highlights the issue.  I think the Court is aware that in the public statements that Acer and the defendants made, our position is that they never made any statements with respect to the FDA's approval of the new drug application; but instead the statements had to do with an agreement with respect to whether additional clinical development was needed for submission.

We think that the FDA documents we will be producing

K8HVSKIC

will make that very clear, that there is no misstatement here; that our statements were about submission, what was needed for that process, and that the FDA core documents will support that entirely.

Your Honor will also be -- we will also show the Court that there was not any *scienter* here; that there were no knowing or reckless misstatements and no motive to mislead.  We would also put on evidence that the plaintiffs cannot prove causation or loss causation here, and that the loss is attributable to other market factors.

And so I think that it's very straightforward, and we will provide evidence, your Honor, we believe, to prove each of those claims.

THE COURT:  Good.  Thank you very much.

So, counsel, I understand that the parties anticipate pursuing mediation, and that the parties have suggested a relatively extended discovery schedule in order to permit you to focus on a potential mediated resolution of the case.

What I'd like to do is to talk now about the discovery that the parties anticipate taking, again, assuming for these purposes that the case is fully litigated.  What I'd like to hear from each of you about is what discovery you anticipate that you'd be taking in support of the claims or defenses, assuming, again, that the case is fully litigated.  I ask this in part so that I can evaluate the reasonableness of the

K8HVSKIC

deadlines that the parties have proposed in the case management plan and scheduling order.

Let me begin with counsel for plaintiffs. What can you tell me about your expectations for discovery here?

MR. ALEXANDER: we served our first document request today; so we have already started in that process of asking for documents. And so in that we've asked for a variety of documents all concerning EDSIVO, which was, of course, the primary drug of Acer.

And from our discussions with defense counsel, it sounds like it will take them a fair amount of time to respond to a large request for documents like that. And we will be doing that parallel with the smaller document production that we described in the letter before mediation.

And after that, you know, we may do third-party discovery as to the underwriter. For the underwriters there were multiple secondary offerings during the class period, and so they may have relevant information. And also obviously the FDA is very important concerning this.

And then after we get the documents, we'll take depositions of all the relevant parties here. And right now the parties haven't done their initial disclosures yet, and we obviously haven't had these documents to review. So we'll have to take a number of depositions of all the people who may have had communications, who are familiar with working on EDSIVO's

K8HVSKIC

NDA for the company.

THE COURT:  Good.  Thank you very much.

Let me hear from counsel for defendants.

What are your expectations for discovery here?

MS. LEVITT:  Thank you, your Honor.

Again, Jamie Levitt from Morrison & Foerster.

Your Honor, we anticipate taking the discovery of the plaintiff and class-related discovery.  We will probably also have third-party market participants such as analysts and other participants.  I think Mr. Alexander mentioned that as well.

There is also expert discovery here.  Yes, we will need to be doing experts, I think, obviously with respect to damages and with respect to the FDA process.  But there might be scientific and expert work that might be done as well with respect to statistics and drug discovery.  So I would say somewhere between two and four experts, which I believe is what plaintiffs have indicated as well.

And your Honor, just in terms of the comment about the timing, we are hoping to work as quickly as possible.  But Acer is a small company; it is, you know, struggling with limited resources both because of the process that it's in with respect to its drug development, but also with respect to COVID and how that has affected the company.  So we do hope with this early mediation to provide the core documentation and to get that assembled; but to, at the same time, try to conserve whatever

K8HVSKIC

resources we can in order to be able to settle this if a resolution is possible.

THE COURT:  Good.  Thank you very much.  That's helpful.

So let me just say a few brief words about the proposed case management plan and scheduling order.  Just a couple of brief notes.

First, I think that the deadlines here are reasonable; that I appreciate that the parties want to focus on a potential, early, and amicable resolution of the case.  I think that these deadlines are particularly reasonable in light of the parties' expectation or hope that you'll be able to focus on negotiating an early resolution of the case.  So I'm very happy that the parties have proposed a schedule that will allow them to do that.

What I want to highlight nonetheless is that these deadlines, once I've established them, will be real deadlines.  So as the parties have anticipated here, the deadlines will be lengthy in order to permit the parties to focus on resolving the case without expending too much money.  And my hope is that the parties will focus on resolving the case at the outset.

But please remember that throughout these deadlines for completion of fact and expert discovery will be deadlines for completion of fact and expert discovery; and that my expectation is that the parties will be doing whatever work you

K8HVSKIC

think is necessary in order to fully litigate the case, in parallel with any efforts to resolve it. So I appreciate the early focus on settlement; and that please be mindful that the deadlines that I'll establish will be real deadlines.

Now, two just brief notes: First, counsel for defendants noted that they would be doing discovery on the class. I am not bifurcating discovery here. This discovery period is for all purposes. I am not bifurcating a class from merits discovery. It is a unitary period for completion of discovery.

The other thing I just wanted to mention is that this is a reasonable period of time; but I remind you, counsel, of the fact that particularly now it may be time-consuming to obtain records from third parties, particularly the United States Government and the FDA. So I remind you that that can be time-consuming. I ask you to make appropriate plans in order to ensure that steps you take to complete discovery will permit you to complete discovery by the deadlines that I am establishing here.

Again, all of that is because these are real deadlines. And you'll note that they are stated as deadlines for the completion of fact and expert discovery. For example, paragraph 7A of the discovery deadline -- the case management plan establish the fact discovery deadline and states that: "All fact discovery shall be completed no later than June 4,

2021."  The language for the end of expert discovery is similar.  Both use the word "completed."  And that is an intentional word choice.  It reflects my expectation that discovery will be completed by that date; that means that it will be done by that date; there will be no more after that date.  So that's the general rule.

From that rule there are a number of corollaries that can be derived.  You can extrapolate them yourselves.  But I want to highlight just a couple of them now:

First, you should bring to my attention any issues related to discovery that you need me to resolve promptly.  This, again, is the deadline for completion of fact discovery in the case management plan and scheduling order; it's not the date for commencement of litigation about discovery.  You should not expect that I will be adding additional time to the fact discovery period to permit you to litigate disputes about discovery issues.

So if you hoard a discovery issue or sit on it for an extended period of time until late in the discovery period --much less after -- should not expect that I will compel production of the responsive materials from your adversary or third party.  That's because this is a deadline, again, for completion of discovery; and you should litigate the case with the expectation that you will bring disputes to my attention promptly, so that you can get and use any responsive materials

K8HVSKIC

during the discovery period.

The second corollary that I want to highlight is relatively straightforward, but is (unintelligible) brief note. And it's a very simple fact that because these are deadlines for completion of discovery, you should take that fact into account as you're requesting information and scheduling depositions.

Let me give you a very concrete example of the ways in which that can affect the way that you proceed here.

In the proposed case management plan and scheduling order, the parties can take depositions up through and including the last day of fact discovery. So under the case management plan, you're permitted to take a deposition on the last day of fact discovery. Please be mindful, however, that if you choose to do that, you're giving yourself zero time to conduct follow-up discovery. So if you choose to wait to make a request for information or to schedule a deposition until late in the fact discovery period, you should understand that you're making that decision with the corollary that you are leaving yourself little time to conduct follow-up discovery with respect to any information that you may have gleaned as a result of your request.

So, again, very simply, keep the fact that these are real deadlines, and that they are deadlines for completion of discovery, in mind as you are scheduling your discovery, in

K8HVSKIC

particular as you are framing requests for third parties such as the government.  Just be mindful of the fact that these are real deadlines.

Now, with respect to the deadlines for expert discovery, I think that the deadlines in paragraph 8C are worthy of particular note.  That paragraph requires parties to provide all of the disclosures required by Rule 26(a)(2) by the dates specified in that paragraph.  I just want to highlight that the paragraph requires you to provide all of -- that is, 100 percent of -- the disclosures required under Rule 26(a)(2) by the dates that are specified in that paragraph.

If you fail to provide 100 percent of the requisite disclosures by the date specified there, you should not expect that your expert will be permitted to provide testimony or other evidence in the case.  I don't think I need to tell you all this, but it's obviously insufficient for you to simply provide the name of your expert.  It's insufficient for you to provide her name and her report; you have to provide all of the information required under the rule in order to feel confident that you've satisfied the obligations imposed by both the rule and this order.

I also briefly draw your attention to the fact that there are disclosure obligations for experts who are not providing reports.  I don't know to what extent any person who might otherwise be testifying here may qualify as an expert,

K8HVSKIC

and whether that person's testimony would fit within the category of testimony that is described as expert testimony under the rules.

But I just remind you that if you have some witness who you hope to testify as an expert, that is, with respect to the types of things that experts testify about, but if you conclude that that person need not provide a report, don't forget that that person still has -- you still have to provide the requisite disclosures for that person as required for a nonreport-giving expert. And if you fail to provide the disclosures for such a nonreport-giving expert by the date specified in paragraph 8C, you should again expect that your expert will not be permitted to provide testimony or other evidence in the case.

And be mindful too that an expert who does not provide a report is limited in the scope of the testimony that she can give. And you should expect that if you fail to provide a report for a given expert, that her testimony will be confined in that way, unless you provide a report on or prior to the deadline provided for in Section 8C. In other words, you should not expect that I will permit you to fix your failure to disclose a report by allowing you to disclose a report after the fact for someone who is designated as a nonreport-giving expert previously.

Good. So I'll grant extensions of these deadlines,

but I'll do so only for good cause shown.  And I'll only do so if the request is made timely, that is, no less than two business days prior to the date sought to be extended.  You should not expect that I'll grant a request that's made late.

I do scrutinize requests to make sure that there actually is good cause for an extension of the deadlines; so you should not expect that I'll find good cause simply because the parties have agreed to an extension of the deadlines. That's not good cause.  Instead, I'll be looking for good cause, good justification for the extension of time.

You should understand that my expectation is that the parties will make professional judgments about the amount of time and resources that you want to invest in this case.  If you choose not to invest a substantial or sufficient amount of resources in the case, you should not expect that I'll view that as good cause for extension of the deadlines.  Instead, you may find that I'll simply ask you to live with the consequences of your professional decision about how much you wanted to invest in this case.  This case management plan provides the parties with a resource.  You should use it in the way that you see fit; you should not expect that I'll extend it because you have failed to act diligently in your work on the case.

Similarly, as I said earlier, my expectation is that the parties will do all that you need to do in order to

K8HVSKIC

litigate the case in parallel with your efforts to resolve the case.  The principal point that I'm trying to communicate is that while I'm happy that you're going to focus on resolving the case in the early stages, you should not expect that I'll grant an extension of these deadlines, which are already quite lengthy -- because the parties hoped or expected that the case would ultimately settle.  You should do the work necessary to fully litigate the case.

If you choose not to do the work necessary to fully litigate the case because you hope that the case would settle, but it doesn't, you should not expect that I'll find that to be good cause for an extension of these deadlines which have been structured to permit the parties to focus on an early resolution of the case and are quite lengthy.

So I think that's all that I wanted to tell you about the case management plan and scheduling order.  I expect to enter it later today or tomorrow, and it will govern the parties' conduct going forward.

Let me just ask briefly about the parties' proposal regarding the class certification motion.  Again, as I said, there's no bifurcation of discovery in this case.  But I'm curious about the suggestion that, plaintiffs, you would move prior to completion of discovery and prior, in particular, to completion of expert discovery here.

Is that your expectation, counsel for plaintiffs?

K8HVSKIC

MR. ALEXANDER:  That we would move -- this is Brian Alexander from The Rosen Law Firm.  That we would move for certification prior to the end of discovery?

THE COURT:  Yes.

MR. ALEXANDER:  Yes, that's our expectation.  And that's standard practice in a number of other cases.

THE COURT:  Thank you.  Fine.  Good.

So I take no position on that.  You should comply with my individual rules.  With respect to any motion that you wish to file in that regard, I expect that you'll file a premotion conference request letter with respect to any proposed motion for class certification here.

Good.  Anything else that we need to take up here?

First, counsel for plaintiffs.

MR. ALEXANDER:  Nothing else from us.

THE COURT:  Good.  Thank you.

Counsel for defendants?

MS. LEVITT:  Your Honor, Jamie Levitt.

Nothing further from us for this conference.

THE COURT:  Good.  Thank you, all.

This proceeding is adjourned.

                    *    *    *