**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
balexander@rosenlegal.com

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS SKIADAS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ACER THERAPEUTICS INC., CHRIS SCHELLING, and HARRY PALMIN,<br><br>        Defendants. | No.: 1:19-cv-06137-GHW |

## REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND TO MODIFY THE <u>SCHEDULING ORDER</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.     PLAINTIFF EXERCISED DILIGENCE. ....................................................... 3

    II.    GRANTING LEAVE TO AMEND WILL NOT PREJUDICE DEFENDANTS. .......... 6

    III.   PLAINTIFF WILL SUFFER PREJUDICE IF HIS MOTION IS DENIED. .................. 8

    IV.   GRANTING PLAINTIFF'S MOTION IS IN THE INTERESTS OF JUSTICE. ........... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993).................................................................................... 6

*City of Almaty, Kazakhstan v. Ablyazov*,
   No. 115CV05345AJNKHP, 2019 WL 2324587 (S.D.N.Y. May 29, 2019).............................. 3

*Gullo v. City of New York*,
   540 F. App'x 45 (2d Cir. 2013)................................................................................ 4, 5

*In re Allstate Life Ins. Co. Litig.*,
   No. CV-09-8162-PCT-GMS, 2012 WL 176497 (D. Ariz. Jan. 23, 2012)................................ 8

*In re Lernout & Hauspie Sec. Litig.*,
   214 F. Supp. 2d 100 (D. Mass. 2002) ........................................................................ 7

*In re Salomon Analyst Litig.*,
   373 F. Supp. 2d 252 (S.D.N.Y. 2005)......................................................................... 7

*Kassner v. 2nd Ave. Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007)...................................................................................... 8

*Morelli v. Alters*,
   No. 1:19-CV-10707-GHW, 2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020)........................... 4, 6

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
   299 F. Supp. 3d 395 (S.D.N.Y. 2017)......................................................................... 3

*Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*,
   215 F.R.D. 100 (S.D.N.Y. 2003) ............................................................................... 6

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007)...................................................................................... 8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 16(b).............................................................................. 8

**INTRODUCTION**

Defendants' opposition to Plaintiff's Motion to File a Third Amended Complaint and to Modify the Scheduling Order (the "Motion") strikes an accusatory tone. It implies that Plaintiff nefariously agreed to the Court's standard deadline for filing a motion to amend even though he always intended to move to amend after the deadline and claims the Court should say "enough is enough." Defendants' characterization could not be further from the truth. Plaintiff had no expectation that he would move to amend shortly after receiving Defendants pre-mediation document production. In fact Plaintiff's decision to move to amend has significant downsides for Plaintiff: Plaintiff had to expend significant time and resources drafting an amended pleading, will have to respond to another motion to dismiss, risks having the Court apply the PSLRA discovery stay, and has had to delay moving for class certification. Despite these drawbacks, Plaintiff still elected to move to amend because the documents that Defendants produced to Plaintiff show such egregious conduct by Defendants. As a representative for the entire class of investors in Acer's common stock, Plaintiff had an obligation to try to amend his complaint to encompass the full scope of Defendants' fraud despite the procedural downsides.

Defendants' Opposition also completely fails to show that Plaintiff did not act with diligence or that Defendant will be prejudiced if the Court grants Plaintiff's Motion, the two primary considerations in the determination of whether Plaintiff has good cause to move to amend. Plaintiff clearly exercised diligence — he filed a letter with the Court indicating his intention to amend less than two month after receiving new information in Defendants' 36,000 page document production. Courts in this District have consistently held that seeking leave to amend less than three months after receiving new information is sufficiently diligent and Defendants do not cite any cases holding otherwise.

Defendants also try to argue that Plaintiff's proposed amendment is not based on new information, but that argument is absurd on its face. Plaintiff did not have access to any communications between the FDA and Acer prior to receiving Defendants' pre-mediation production and Defendants argued repeatedly in earlier filings that the case should be dismissed because Plaintiff failed to identify any such communications.

Defendants also fail to make any credible argument that they will be prejudiced by Plaintiff's proposed amendment. Defendants argue that the case will be delayed because they intend to invoke the PSLRA's discovery stay provision and to expend resources moving to dismiss. In addition to the fact it is Defendants' decision to pursue these actions, their argument for prejudice would apply to any amendment to a securities class action complaint based on evidence a plaintiff received in discovery. Defendants also point out that Plaintiff's Motion has delayed class certification, but do not explain how that could possibly be prejudicial to Defendants since it does not affect any other deadlines.

Defendants also argue that Plaintiff will not be prejudiced by the denial of their motion, which is not one of the primary factors in the good cause analysis. In any event, Plaintiff would be severely prejudiced by the denial of this Motion since he would lose the opportunity to plead that numerous additional statements were false and misleading now that he has sufficient evidence to do so. The Proposed Third Amended Complaint also pleads additional theories for why Defendants' statements concerning what the "FDA agreed" to were false and misleading.

Finally, it is clearly in the interests of the justice for the Court to allow Plaintiff to plead the full extent of Defendants' fraud instead of barring valid claims for procedural reasons. This is especially true given that Defendants repeatedly argued in earlier filings that it was "implausible" that Acer would go forward with its NDA for EDSIVO even after the FDA criticized the Ong

2

Trial. That "implausible" scenario is exactly what the new evidence showed.

**ARGUMENT**

## I.  PLAINTIFF EXERCISED DILIGENCE.

Defendants fail to identify a single case with similar facts to this one in which a court has held that a plaintiff did not act diligently. (*See* Defs.' MOL in Opp. to Pl's. Mot. for Leave to File a Third Amended Complaint, filed Dec. 14, 2020, ECF No. 90 ("Op."), at 10-13.)  Plaintiff filed a letter with that Court stating his intention to move to amend and provided Defendants with a draft Third Amended Complaint less than two months[1] after receiving Defendants' 36,000 page production containing the new information that he is using to amend the complaint. (Alexander Decl.[2] ¶¶ 3, 8-9; ECF No. 71-72.)  As discussed in Plaintiff's opening brief, courts in this District have consistently held that seeking leave to amend less than three months after receiving new information evidences the necessary diligence for a showing of good cause. (*See* MOL in Sup. of Pl's. Mot. for Leave to File a Third Amended Compl. and Modify the Scheduling Order, filed Dec. 3, 2020, ECF No. 85 ("Pl's. Br.") at 19, quoting *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345AJNKHP, 2019 WL 2324587, at *2 (S.D.N.Y. May 29, 2019) and *Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399 (S.D.N.Y. 2017)).

Defendants argue in their Opposition that "Courts in this District, including this Court,

---

[1] Defendants devote an entire section of their opposition to arguing that they did not cause delay by taking more than three weeks to provide Plaintiff with their position on redactions to the Third Amended Complaint. (Op.13-14.) The point that Defendants appear to be making is that they did not cause delay because Plaintiff began the process of moving to amend when he filed a letter with the Court on November 10, 2020. Plaintiff agrees with the position that, for the purposes of evaluating diligence, Plaintiff began the process of moving to amend when he filed that letter and Defendants did nothing to delay that letter's filing. Plaintiff included the discussion of Defendants delay in providing their position on redactions in his opening brief to make clear that Plaintiff would have been ready to file his formal motion to amend significantly earlier than December 3, 2020 if Defendants had provided their position on redactions in a more timely manner. Nevertheless, Plaintiff still filed his formal motion to amend less their three months after receiving the new information.

[2] The Declaration of Brian B. Alexander, dated December 3, 2020, was filed concurrently with Plaintiff's Motion to File a Third Amended Complaint and to Modify the Scheduling Order, ECF Nos. 86-87  ("Alexander Decl.").

3

have found that a movant was not diligent in bringing a motion to amend, despite moving within three months of learning new information…," citing *Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) (Woods, J.) and *Gullo v. City of New York*, 540 F. App'x 45 (2d Cir. 2013). (Op. at. 13.) Neither of those cases support that proposition.

In *Morelli*, 2020 WL 6508858, at *2, the plaintiff did not amend his complaint by using "new facts" learned from discovery. Instead, he admitted that the facts were publicly available. *Id.* Accordingly, the two and half month delay that the Court mentioned in *Morelli* did not concern new information. Instead, it was the amount of time it took the plaintiff to seek leave to amend after the Court *denied his motion to compel arbitration*. *Id.* at *3. In this case, Plaintiff sent a draft Third Amended Complaint to Defendants and informed the Court of his intent to amend *approximately one month after the mediation between the parties failed.* (Alexander Decl. ¶¶ 2,8-9.) The Court's decision in *Morelli*, 2020 WL 6508858, at *2, also relied on the fact that the parties proposed a revised case management plan that extended the deadlines to complete discovery more than two months after the motion to amend deadline had passed and that proposal did not include a new deadline to amend. The situation here is not at all analogous. Plaintiff agreed to the motion to amend deadline from the Court's *model scheduling order*. Additionally, since *Morelli* did not concern new information, that party should have known he was going to seek leave to amend. Here, Plaintiff did not expect to move to amend, but was compelled to do so by the egregious conduct revealed by Defendants' document production.

In *Gullo*, 540 F. App'x at 47 (emphasis added), the plaintiff waited "***over*** three months" after they received the new information to seek leave to amend. Additionally, the circumstances were very different from this case. The plaintiffs in *Gullo*, 540 F. App'x at 46, filed a 42 U.S.C. § 1983 case against New York City and unnamed John Doe police officers. Those plaintiffs then,

4

inexplicably, waited over three month after the City provided the names of the officers to add them as defendants. *Id.* at 46–47. In contrast, Plaintiff had to review a 36,000 page production of highly technical documents concerning Acer's interactions with the FDA. (Alexander Decl. ¶¶ 3-6.) Defendants gripe that Plaintiff described the evidence that he added to the Proposed Third Amended Complaint in his opening brief, but that description shows the complexity of the documents and the amount of work that Plaintiff did to prepare the Proposed Third Amended Complaint. (*See* Pl's. Br. at 7-15; Op. at 8.)

Defendants also argue that Plaintiff's proposed amendment is not based on newly available information, but that position is absurd. As Defendants stated repeatedly in their own filings, there was no publicly available information that the FDA had made critical comments to Acer about the Ong Trial prior to its rejection of EDSIVO's NDA. In response to Plaintiff's filing of his Amended Complaint (ECF No. 28, filed Dec. 3, 2019), Defendants filed a pre-motion to dismiss letter on January 15, 2020 that stated:

> ***Plaintiff does not identify any communications from the FDA that were allegedly not disclosed***, nor any other specific "potentially adverse information" known to Defendants.

(ECF No. 31 at 2 (emphasis added).) When Defendants moved to dismiss the Amended Complaint on February 7, 2020, they continued to emphasize the fact that there was no evidence that the FDA had communicated anything negative about the Ong Trial to Acer:

> Plaintiff's contention that Defendants omitted supposed communications from the FDA indicating that the FDA shared Plaintiff's negative view of the Ong Trial data fails because Plaintiff has identified *no* such communications….

(ECF No. 39 at 14 (emphasis in original).)

Based on these arguments, when Plaintiff elected to file the Second Amended Complaint, he narrowed it to focus on Defendants' affirmative statements that the "FDA agreed" to approve EDSIVO without any additional clinical development or another clinical trial and eliminated some

5

statements that he determined were unlikely to be sustained by the Court given that the FDA's communications with Acer were not available to Plaintiff. Now, however, Plaintiff has evidence that the FDA criticized the Ong Trial to Defendants for years and Defendants told investors the opposite of what the FDA was telling them. Defendants also do not provide any legal support for their bizarre claim the FDA/Acer communications are not new evidence — in the only case they cite, *Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003), there was no new evidence that was not previously available to the party seeking to amend. Furthermore, if the Court adopts Defendants' position, it would greatly discourage plaintiffs from ever narrowing their complaints, which would waste judicial resources.

## II.  GRANTING LEAVE TO AMEND WILL NOT PREJUDICE DEFENDANTS.

It is well established in this District that allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute undue prejudice. (*See* Pl's. Br. at 20-21.); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (expenditure of "time, effort and money" did not establish prejudice). Defendants concede that delay does not provide a basis to deny the right to amend, but claim that their desire to file another motion to dismiss and the need to file another answer prejudices them. The only case they cite to support that position is *Morelli*, but it is inapposite. In *Morelli*, 2020 WL 6508858, at *3, the Court held that, standing alone, the prejudice at issue was likely only sufficient to deny a motion to amend because the movant did not exercise diligence. As explained above in Point I, Plaintiff exercised far more diligence in this case than the movant in *Morelli*. The parties in *Morelli*, 2020 WL 6508858, at *2, were also much further along in discovery — there, the motion to amend came almost two months *after* the parties had moved to extend the original discovery deadlines. In contrast, here Plaintiff informed the Court of his intention to move to amend almost seven months prior to the fact discovery deadline in the Scheduling Order. (ECF No. 67, filed Aug. 8, 2020.)

6

Defendants' argument that they will be prejudiced is especially weak because, as Plaintiff argued in his opening brief, it would apply to **any securities class action**. It is virtually guaranteed that any time a securities plaintiff amends the complaint after the start of discovery, the defendants will move to dismiss and argue that the PSLRA discovery stay[3] applies in the hope that, at minimum, they can delay the case. Defendants also points out that Plaintiff's motion to amend has delayed Plaintiff's class certification motion, but it is unclear how Defendants will be prejudiced by that since the briefing on class certification is scheduled to occur concurrently with the rest of the discovery schedule and, therefore, does not affect any other deadlines. Defendants also make a perfunctory argument that Plaintiff's Proposed Third Amended Complaint has "unsettled" discovery. (Op. at 15-16.) As Plaintiff argued in their opening brief, the Proposed Third Amended Complaint will change the scope of the discovery little, if at all. (Pl's. Br. at 20.) If Defendants had a credible explanation for why this is not true, they would have included it in their Opposition, but they did not. It is also notable that Plaintiff moved to amend based on documents produced by Defendants as early in the case as they possibly could have — shortly after they received Defendants' first document production. Accordingly, if the Court rules that Plaintiff's amendment would prejudice Defendants, the Court would be, in effect, ruling that all amendments to securities class action complaints based on documents produced by the defendants are prejudicial.

---

[3] Given that Defendants admit that delay — let at alone a delay caused by *Defendants' decision* to invoke a statutory provision — is not sufficient for prejudice, the Court decision about whether to apply the PSLRA's discovery stay should not factor in the Court decision on this Motion. Plaintiff notes, however, that he continues to take the position that the Court has the discretion not to apply the PSLRA discovery stay to a motion to dismiss filed after it has already held a version of the complaint legally sufficient. As Judge Lynch held in *In re Salomon Analyst Litig.*, 373 F. Supp. 2d 252, 254–255 (S.D.N.Y. 2005) (emphasis in original), automatic application of the PSLRA stay to successive motions to dismiss with no judicial discretion "has troubling implications. The purpose of the statutory stay is to prevent abusive, expensive discovery in frivolous lawsuits by postponing discovery until 'after the Court has sustained the legal sufficiency of the complaint.' S.Rep. No. 104–98 at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693. In a case where the court already *has* sustained the legal sufficiency of the complaint, this purpose has been served. …Some judicial discretion to evaluate the desirability of a renewed stay appears to be necessary." *See also In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002) (holding that "once the PSLRA has been satisfied [by the court holding that the complaint is legally sufficient], the general presumption for liberal discovery provides the backstop").

## III. PLAINTIFF WILL SUFFER PREJUDICE IF HIS MOTION IS DENIED.

Whether a plaintiff moving to amend will suffer prejudice if his motion is denied is not an important factor in determining whether there is good cause under Federal Rule of Civil Procedure 16(b). *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that the "primary [Rule 16(b)] consideration is…diligence" and that "the district court…also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will ***prejudice defendants***.") (emphasis added). It is understandable, however, that Defendants would make this argument (Op. at 16-17) given the weakness of their other arguments. Defendants' arguments on this issue are, however, also meritless.

Defendants start by arguing that Plaintiff will not be prejudiced because he "should not be permitted to revive claims already withdrawn or dismissed." (*Id.* at 16.) This assertion is completely false. Plaintiff would be severely prejudiced by the inability to pursue the misstatements he added to the Proposed Third Amended Complaint now that he has powerful new evidence that they were false and misleading. Furthermore, as Defendants admit, Plaintiff included many statements in the Proposed Third Amended Complaint that were not included in any previous versions of the complaint. (*Id.* 3, 11-12.) To the extent that Defendants are arguing that Plaintiff is procedurally barred from adding the new statements, that is a futility argument that the Court directed the Parties not to address in the briefing for this motion.[4]

Furthermore, the additional allegations in the Proposed Third Amended Complaint

---

[4] In any event, courts routinely allow securities plaintiffs to plead claims that were dismissed or that there was previously insufficient evidence for after receiving discovery. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("If a private securities case proceeds past the pleadings stage…and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants."); *In re Allstate Life Ins. Co. Litig.*, No. CV-09-8162-PCT-GMS, 2012 WL 176497, at *1-*2, *6 (D. Ariz. Jan. 23, 2012) (allowing securities class action plaintiff to replead dismissed claims based on discovery).

concerning Defendants' statements about what the "FDA Agreed" to are certainly not limited to "proof." (Op. at 16.) As explained in Plaintiff's opening brief, the Proposed Third Amended Complaint pleads that those statements were false and misleading for the additional reason that Defendants failed to disclose that the FDA told Acer that approval based on a single trial was "rare" and it was concerned about flaws in the Ong Trial. (Pl's. Br. 15-16.) This new information establishes that Defendants' statements about what the "FDA agreed" to were misleading ***regardless of whether they concerned approval or submission***. *See, e.g. Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 609 (4th Cir. 2015) (holding that "even assuming that [Defendants'] statement truthfully represented an FDA communication that [defendants'] new drug application *could* be submitted," the statement was misleading because of Defendants' failure to disclose to investors "the FDA's continuing expectation that two successful efficacy studies would be required for approval" (emphasis in original)). Given that Plaintiff expects that Defendants will continue to lean heavily on their (erroneous) argument that a reasonable investor would have interpreted their "FDA Agreed" statements as concerning submission instead of approval, if the Court does not allow Plaintiff to amend the complaint, Defendants may argue that this omission theory was not properly pled in the Second Amended Complaint. Accordingly, this is yet another reason why denying Plaintiff's Motion would be prejudicial to Plaintiff.

## IV. GRANTING PLAINTIFF'S MOTION IS IN THE INTERESTS OF JUSTICE.

It is clearly in the interests of justice for the Court to allow Plaintiff to plead the full extent of Defendants' fraud and for those claims to be evaluated on their merits instead of barred for purely procedural reasons. That is especially true here since the Defendants dismissed the idea that Acer would have moved forward with its NDA in the face of significant FDA criticism of the Ong Trial as "implausible" and "untenable" in their motion to dismiss briefing. (*See* Pl's. Br. at 4; Reply MOL in Further Sup. of Defs.' Mot. to Dismiss the SAC, filed May 29, 2020, ECF No. 53, at 8-9;

Defs.' Mot. for Reconsideration, filed July 1, 2020, ECF No. 59, at 12.) The documents that Defendants produced show that this "implausible" scenario is exactly what occurred. (*See* Pl's. Br. at 7-15.) In their opposition to this Motion, Defendants claim that they only argued "that Plaintiff's theory—that the FDA had told Acer that it could not submit the NDA or that the FDA would not approve EDSIVO without an additional clinical trial—was untenable and implausible." (Op. at 18.) But Plaintiff never pressed the theory that the FDA explicitly told Acer that it would not approve EDSIVO without an additional clinical trial. For example, in Plaintiff's Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, he explained that "[t]he SAC does not…allege that Defendants knew, or the FDA explicitly told them, that the FDA would reject EDSIVO or that an additional clinical trial was required…" and stated that "Plaintiff's theory" was that the FDA would have "never affirmatively 'agreed' that additional clinical development was not needed for EDSIVO" because, among other things, the FDA would have had concerns about Ong Trial and expressed them to Acer. (ECF. No. 52, filed May 22, 2020, at 16-17, 24-25.) The Court's June 16, 2020 Opinion and Order on Defendants' motion to dismiss stated that Plaintiff's allegations support the inference that "Defendants rationally (though recklessly) gambled that the FDA would ultimately approve EDSIVO, even though the FDA had never 'agreed' that it would approve EDSIVO without additional clinical development." (ECF No. 54 at 22.)  Accordingly, by referring to Plaintiff's theory of the case as untenable and implausible, Defendants went far beyond simply arguing that it was implausible Acer would have moved forward after being explicitly told its NDA would fail.

## CONCLUSION

Plaintiff respectfully requests that the Court modify the scheduling order and grant Plaintiff leave to file a Third Amended Complaint.

Dated: December 18, 2020                Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**
By: /s/*Laurence Rosen*

Laurence Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
       pkim@rosenlegal.com
       balexander@rosenlegal.com

*Counsel for Plaintiff and the Class*

11