L1L1SKIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NICHOLAS SKIADAS,
Individually, and on behalf of
all others similarly situated,

                Plaintiff,

          v.                          19 Civ. 6137 (GHW)

ACER THERAPEUTICS INC., et
al.,

                Defendants.           Decision
                                      (Via Teleconference)
------------------------------x
                                      January 21, 2021
                                      3:04 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                      District Judge

                         APPEARANCES

THE ROSEN LAW FIRM, P.A.
     Attorneys for Plaintiff
BY:  LAURENCE M. ROSEN, ESQ.
     BRIAN B. ALEXANDER, ESQ.

MORRISON & FOERSTER LLP
     Attorneys for Defendants
BY:  JAMIE A. LEVITT, ESQ.
     JORDAN ETH, ESQ.
     MICHAEL G. AHERN, ESQ.

L1L1SKIC

THE COURT:  This is Judge Woods.  Do I have a court reporter on the line?

THE REPORTER:  Yes, Judge.  Good afternoon.  This is Khris Sellin.

THE COURT:  Good.  Thank you very much.

Let me first check to see who's on the line on behalf of each of the parties.  I'm going to ask that the principal spokesperson for each of the parties identify herself and the members of her team.

Who's on the line on behalf of plaintiff?

MR. ALEXANDER:  Brian Alexander and Laurence Rosen, your Honor.

THE COURT:  Thank you.

And who's on the line on behalf of defendant?

MS. LEVITT:  Good afternoon, your Honor.  This is Jamie Levitt from Morrison & Foerster on behalf of the defendants, along with my colleagues Jordan Eth and Michael Ahern.

THE COURT:  Good.  Thank you very much.

So counsel, let me just begin with a few brief comments on the rules that I'd like to ask the parties to follow during the course of this conference.

At the outset, please remember that this is a public proceeding.  Any member of the public or press is welcome to join the conversation at any time.  The dial-in information for

L1L1SKIC

the call is available on the Court's public website, and I am not monitoring whether there are others on the line, so I'd just ask you to be mindful of that.

Second, please keep your phones on mute at all times except when you are speaking to the Court or to one of the other parties.

Third, please state your name each time that you speak during this conference. I ask that you state your name each time that you speak during this conference regardless of whether or not you have spoken previously. That will help our court reporter identify who it is that's on the line and will help us keep a clearer transcript of the conference.

Fourth, I'm inviting our court reporter to let us know if she has any difficulty hearing or understanding anything that we say here today. If she asks you to do something to make it easier for her to do her job, please do it, to the extent that you can.

And finally, I'm ordering that there be no recording or rebroadcasting of all or any portion of today's conference.

So counsel, with that introduction out of the way, I scheduled this conference to take up the motion to amend the complaint that was filed by plaintiff in this matter.

I have reviewed the parties' submissions. I have a small number of questions for the parties based on those submissions. Before we turn to them, I'd like to ask if there

L1L1SKIC

is anything that either party would like to add to your written submissions.  First, counsel for plaintiff.

MR. ALEXANDER:  Brian Alexander, counsel for plaintiff.  There's nothing really that I would add to them other than to say that I think on the two primary issues here, the diligence and on the prejudice, that the defense has really been unable to come up with any cases that support their position on either of those areas, that the plaintiff hasn't been diligent or that they've been prejudiced in any significant way by this.

THE COURT:  Good.  Thank you very much.

Counsel for defendants, is there anything that you'd like to add to your written submission?

MS. LEVITT:  Your Honor, this is Jamie Levitt.  I had intended to say that it's all fully set out in the papers.  I'll just briefly respond that we believe that our papers do lay out that there was no diligence or good cause shown here.  The context, your Honor, of course, is that plaintiffs have not only waited two months since the time that the Court set for amendments, but they did so based on documents that they knew they were getting in a schedule they knew they were getting, and ignoring entirely the order and the management that this Court has put in place for this case in terms of setting a schedule, doing pretrial motions, pretrial letters, motions to dismiss, and scheduling.  And your Honor, we believe that going

L1L1SKIC

from two to 23 claims and recycling, or mostly recycling old claims plaintiff knew about and had previously withdrawn or were dismissed, we do believe, your Honor, shows a lack of diligence and not good cause. But we do rest on our papers. Thank you.

THE COURT: Thank you.

Counsel for defendants, just briefly, can I ask you to respond to one of the assertions by Mr. Alexander in his affidavit. In his affidavit, he states that as of the date of that affidavit, the defendants had refused to produce discovery to plaintiff on the basis that the PSLRA stay was in effect. What can you tell me about that factual assertion by counsel for plaintiff?

MS. LEVITT: So your Honor, we did -- pursuant to the schedule that the parties had agreed on and the Court put into place, we did provide responses and objections to the requests for production. We have, of course, preserved all of our documents as the rules require, but rather than -- but then when we were in the process of doing that discovery, plaintiff did come forward, as the Court knows, and raised his intention to file a motion to amend, and then we began the process, your Honor, with the letters and the conferences and the briefing with the Court. Your Honor, it is our understanding that given that the way the Court structured this, the motion would be bifurcated into the Rule 16 procedural issues and then the

L1L1SKIC

futility/motion to dismiss; if plaintiffs were given leave to amend, that it did not make sense to go forward with production and collection and review of documents until there's an operative complaint.  And we believe the law, you know, both the mandatory stay law as well as some cases in which, in that interim motion to amend period, the stay has also been respected, we felt was following the law.

I'll also just note, your Honor, that for this company, which is a small company with a small market cap and few employees who are working forward on their drug development, you know, it is meaningful to have to do discovery twice, and that's why we were, your Honor, waiting for the operative complaint to be set.

THE COURT:  Thank you.

How does the deadline for your responses to plaintiff's discovery requests align with the timing of the motion?  Of course the motion to amend was the document in connection with which Mr. Alexander submitted his affidavit, so at that point the motion to amend had not yet been filed.  How long had defendants been taking the position that the PSLRA stay was in effect here?

MS. LEVITT:  Well, I mean, in terms of timing, your Honor, we did comply with the deadline to respond to discovery. We served discovery, which they've responded to as well, in terms of written responses.  Our production deadline for fact

L1L1SKIC

discovery is in June, and so we were moving forward and will, of course, honor the deadlines as the Court sets, either the ones that are existing now or that would be set if extensions were necessary.  So we're not doing anything, we think, your Honor, to delay other than waiting for an understanding of what the class period is, what the operative complaint is, whether we have two statements at issue or 23 statements at issue, so that we can do this process once and not twice for this company.  But, again, you know, we provided our responses on October 23rd, and the plaintiffs gave us the third amended complaint on November 6th, so this all was happening in realtime, really at the same time.  And, you know, at that point --

THE COURT:  Thank you.

Counsel, why were your actual documents not also due by the 23rd?  The written objections were served on that date.

MS. LEVITT:  Your Honor, my understanding is that we would provide our written responses as the plaintiffs did and then meet and confer on the process of search terms and objections and the rest, and that's how we always do it, and at that point then we move forward with the production so that the documents are produced in a timely manner and depositions can go forward prior to the end of the fact discovery cutoff.  So that's exactly what we were doing.  You know, plaintiffs also haven't produced their documents yet because I think all that

L1L1SKIC

at the very same time then moved into this concept of an amended complaint, both the premotion letter and then the briefing, and then the Court's conference.  But until we had the conference with your Honor, once we had that conference and the Court, you know, indicated that we would do briefing in this two-stage process, now we are waiting to see, your Honor, what the complaint would be and whether there will be an additional round of motions to dismiss briefing.

THE COURT:  Good.  Thank you very much.

So I'm going to rule on the motion orally.  I'm going to do so now.

For the reasons that follow, plaintiff's motion to amend the complaint is granted.  Plaintiff has shown adequate diligence in pursuing the amendment.  I do not believe that defendants will be unduly prejudiced by the amendment.  Among other things, I observe that they have not been producing discovery based on the expectation that the complaint might be amended.

Let me begin with a brief procedural history.  This case was originally filed on July 1, 2019.  Dkt. No. 1.  Since that first complaint, the complaint has been amended several times.  After the Court selected a lead plaintiff and counsel, plaintiff filed an amended complaint on December 3, 2019.  Dkt. No. 28.  The second amended complaint was filed on February 28, 2020, in response to the first motion to dismiss filed by

defendants in the case.  Dkt. No. 43.

Defendants moved to dismiss that complaint on May 1, 2020.  Dkt. No. 49.  Among the arguments presented by defendants in their motion was that the complaint did not contain sufficient facts regarding the content of communications by the FDA with the company, and the asserted conjecture that "it was near certain that FDA officials would have discussed" certain concerns about the Ong trial.  Dkt. No. 50 at 12-13.  Defendants' counsel wrote:  "Had the FDA indeed shared Plaintiff's negative views of the Ong trial data and communicated to Defendants that it viewed the data as insufficient, as Plaintiff and his expert theorize, the FDA could have issued an [Refuse to File].  But it did not.  The very fact that the FDA, after allegedly 'discuss[ing] [with Defendants] all the portions of EDSIVO's NDA... prior to the Company's submission of the NDA' ([SAC] ¶ 92), chose to accept the NDA for filing and substantive review, renders Plaintiff's theory of falsity untenable."  *Id.* at 16.  In defendants' view, plaintiff's theory of falsity was "implausible to the point of absurdity."

The Court denied that motion to dismiss on June 16, 2020, permitting the case to go forward on the basis of the facts plaintiff had pleaded in the operative complaint.  Dkt. No. 54.  Later, on July 21, 2020, I had the opportunity to respond to a motion to reconsider my decision to deny the

L1L1SKIC

motion to dismiss.  Dkt. No. 63.  Only after that decision, over a year after the case was originally filed, was an answer filed in this case.  Dkt. No. 64.

I held an initial pretrial conference with the parties on August 17, 2020.  After the conference, I entered a case management plan and scheduling order pursuant to F.R.C.P. 16. Dkt. No. 67.  What is of particular relevance here is the fact that the order required that any motion to amend the complaint or to join additional parties must be filed within 30 days of the date of that August 17, 2020 order.  *Id.*

The parties scheduled a mediation session. Declaration of Brian B. Alexander ("Alexander Decl."), Dkt. No. 86, ¶ 2.  In connection with that mediation, plaintiff received approximately 36,000 pages of discovery materials from defendants on September 14, 2020 -- just two days before the deadline to file a motion to amend the complaint.  *Id.* ¶ 3. Plaintiff's counsel began to review the materials together with their expert, Dr. Lavin.  *Id.* ¶ 3.  In parallel with the mediation initiative, plaintiff served his first request for production of documents on defendants on August 17, 2020.  *Id.* ¶ 7.  Defendants deferred producing responsive materials until after the mediation, which took place on October 7, 2020.  *Id.* ¶¶ 2, 7.  As a result, defendants did not serve their responses and objections until October 23, 2020.  As of the date of the Alexander declaration, defendants had not produced any

L1L1SKIC

documents in response to Defendant's First Set of Requests for Production and "have refused Plaintiff's requests to meet and confer about their responses and objections on the basis that the PSLRA discovery" stay was in effect.  *Id.* ¶ 7.

Just as a brief aside, it's not apparent to me how the PSLRA stay would be in effect at the time that the motion to amend was filed, and the text of the statute is fairly clear that the stay remains in effect during the pendency of any motion to dismiss.  But I'm not taking up that issue at this time.

Plaintiff's counsel sent defendants' counsel a draft of the proposed third amended complaint on November 6, 2020. *Id.* ¶ 8.  Plaintiff requested defendants' view regarding the proposed amendment, but defendants did not respond substantively.  *Id.* ¶ 10.  Plaintiff filed a letter with the Court on November 10, 2020, seeking a premotion conference with respect to a potential amendment to the complaint.  Dkt. Nos. 71, 72.  Defendants filed a responsive letter on November 16, 2020.  Dkt. No. 74.  I held a conference with respect to the motion on November 25, 2020, at which I scheduled the briefing of this motion.  Plaintiff's motion was filed on December 3, 2020.  Dkt. No. 84.  Defendants' opposition was filed on December 14, 2020.  Dkt. No. 90.  And the motion was fully briefed when plaintiff filed his reply, after December 18, 2020.  Dkt. No. 91.

L1L1SKIC

The information that was produced to plaintiff contains facts that are relevant to the action as currently pleaded. I am not going to attempt to summarize them all here. But among the discovery were documents showing that the FDA had, indeed, advised the company of several flaws in the Ong trial. The minutes of meetings between the company and the FDA, as proffered by plaintiff, also show that the company asked whether the FDA agreed that the Ong trial provided sufficient support for the approval of the drug -- not submission of an application as counsel for defendants argued was the only proper construction of the statements in the company's public disclosures. But for these purposes, all I need to highlight is that the discovery provided by defendants was substantial, and that it provided relevant factual detail for the claims that plaintiff was pursuing already in this case.

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). After that point, absent written consent from the opposing party, a party must obtain leave to amend from the

L1L1SKIC

district court.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides that courts "should freely give leave when justice so requires."  "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also id.*  ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

The burden on a party seeking to amend the pleadings is heavier where the court, as here, has entered a case management order.  *See* Dkt. No. 44.  At that point, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("Several circuits have ruled that the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings... We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in

L1L1SKIC

the scheduling order where the moving party has failed to establish good cause.").

In determining whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "[T]he moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Lee v. Kylin Management LLC*, 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019) (citation and quotation marks omitted). "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F.Supp.3d 610, 626 (S.D.N.Y. 2018) (citing *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F.Supp.2d 453, 457 (S.D.N.Y. 2012)). But diligence is not the only consideration. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the opposing party]." Kassner, 496 F.3d at 244.

The futility of a proposed amendment is a reason to deny a motion to amend a complaint. *See AEP Energy Servs. Gas*

L1L1SKIC

*Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir. 2010). However, the Court is not evaluating the sufficiency of the allegations in the proposed amended complaint in connection with this motion. As we discussed at the premotion conference in connection with this motion, defendants have reserved their right to challenge the sufficiency of the amended complaint in a motion to dismiss.

ANALYSIS

A.   Plaintiff Has Shown Good Cause to Permit Amendment

Plaintiff has made a sufficient showing of good cause to permit him to amend the complaint on the basis of the premediation production provided to him by defendants. Plaintiff has shown sufficient diligence in pursuing the amendment. Plaintiff proposed the amendment less than two months after receiving approximately 36,000 pages of documents from defendants, many of which were highly technical. The application to amend the complaint was brought to the attention of the Court less than two months after the deadline established in the Rule 16 order. Plaintiff has shown sufficient diligence to satisfy the good cause standard.

Defendants forward some arguments in this area that are most generously described as misdirection. For example, defendants argue that plaintiff was not sufficiently diligent because plaintiff has included "'new' claims that he had knowledge of when he filed previous versions of the Complaint,

L1L1SKIC

almost all of which were already dismissed or withdrawn..." Dkt. No. 90 at 2.  But the withdrawn claims were withdrawn in the face of defendants' counsels' arguments that insufficient evidence existed to support them -- which led plaintiff to focus his complaint on other aspects of the case.  Dkt. No. 91 at 5.  As I understand it, plaintiff believes that the facts provided to him provide support to pursue claims that he previously voluntarily withdrew in response to defendants' brush-back pitches -- which, as we know, were based in part on defendants' assertions regarding the lack of factual support for positions taken by plaintiff in the complaint.  Plaintiff may have been aware of the potential claims, but he asserts that he was not aware of the facts that supported them and withdrew them as a result.  If plaintiff withdrew claims based on arguable representations by defendants about the factual support for aspects of his claims, I do not think that there is a lack of good cause to renew those claims now that the additional factual support for the claim has been provided.

Similarly, the argument reiterated here that the clock should start running not based on the time when the documents were in fact delivered to and reviewed by him but rather based on the timing by which he would expect to get the documents is not persuasive.

Plaintiff has shown sufficient diligence for me to grant leave to file the amended complaint.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

L1L1SKIC

B.    The Amendment Will Not Result in Undue Prejudice

Defendants will not be unduly prejudiced if plaintiff is granted leave to add factual allegations and additional claims to his complaint at this stage of the litigation. "Although prejudice to the opposing party has been described as the most important reason for denying a motion to amend, only undue prejudice warrants denial of leave to amend." *Agerbrink v. Model Serv., LLC*, 155 F.Supp.3d 448, 454 (S.D.N.Y. 2016) (emphasis in original) (citations and internal quotation marks omitted); *see also A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 87 F.Supp.2d 281, 299 (S.D.N.Y. 2000) ("[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'") (emphasis in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "To determine whether the proposed amendment will cause undue prejudice, courts 'generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, 2020 WL 5089444, at *3 (S.D.N.Y. Aug. 28, 2020) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).  "Central to this

L1L1SKIC

analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of the new claim." *Id.*

This proposed amendment will not unduly prejudice defendants.  First, the Court understands that it may result in the need for us to engage in another round of motion practice with respect to a motion to dismiss.  But the expenditure of resources on briefing a motion to dismiss, while time-consuming for the parties -- that is, the lawyers -- does not result in prejudice that is undue.  *See Cmty. Ass'n Underwriters of Am.*, 2020 WL 5089444, at *4 ("The need for additional motion practice and trial preparation is not sufficient to constitute undue prejudice.").  The motion for class certification has been delayed, but the labor associated with the motion has not been increased; it has merely been deferred.

Second, any incremental discovery associated with the motion will not result in undue prejudice for a number of reasons.  At the outset, it is not clear that the additional facts and claims added to the complaint here will substantially expand the scope of discovery in this case.  The case already focused on the company's statements regarding its interactions with the FDA -- the proposed amended complaint adds detail regarding those allegations and asserts that additional statements were false on the basis of those interactions.

In addition, my understanding, confirmed here, is that

L1L1SKIC

defendants have been taking the position that the PSLRA's stay was still in place at some point after the Court's resolution of the motion to dismiss in this case.  As a result, discovery is not as progressed as the Court would have expected at this stage.  It is against that backdrop that I don't believe that the incremental discovery will result in undue prejudice. Counsel for defendants has just said that they've delayed deep work on the discovery process here because of the possibility of this expansion, so the prejudice is lesser.

Moreover, there is a very good chance that in the event of further motion practice with respect to the proposed amended complaint that the automatic stay will again snap into place when a new motion to dismiss is filed.  That prospective stay also mitigates any prejudice defendants might experience as a result of the proposed amendment, with respect to incremental discovery.

Finally, I do not agree with defendants' arguments that the "interests of justice" would not be served by allowing the amendment.  In this argument, defendants appear to have confused the "interests of justice" with the interests of defendants.  The reason why justice would not be served, defendants argue, is that the costs of incremental motion practice weigh against amendment because Acer is "a small pharmaceutical company" that "has only 20 employees and a total market capitalization of $30 million and is still working to

L1L1SKIC

develop four separate drugs assessing serious unmet medical needs." Dkt. No. 90 at 17. I recognize that the cost of pursuing this litigation is relatively greater for a small company than a large one, but that does not lead me to believe that I should prohibit plaintiff from pursuing potentially viable claims to spare defendants the incremental cost and risk.

So in conclusion, for the foregoing reasons, plaintiff's motion to amend the complaint is granted. I will enter a separate order granting the motion, referring to the transcript of today's conference as the basis for my decision.

So that concludes my opinion with respect to the motion itself.

Now I've granted leave to amend, and I'm not taking a position now on the sufficiency of the new proposed claims. But I think it might be helpful for us to spend a few moments talking about the amended complaint and the proposed amended claims, some of which I expect are likely to be tested by a motion to dismiss. The basic question that I want to talk about is whether all of these incremental claims, I'll call it, are worth it, given the effective potential stay and increased cost for the litigation as a whole. As I said earlier, I don't think that arguments about the relative financial means of the defendants or a resolution that's favorable to them are the same thing as the "interests of justice," but I do think it's

L1L1SKIC

important to focus on what I'll describe as the incremental value of pursuing this incremental set of claims and the effect of the motion to dismiss that we can anticipate on how the case will be litigated.  I do this in part leading toward a suggestion that I'd like to ask if the parties are interested in talking about settlement some more.  And I also want to talk about whether or not plaintiff wants to pursue the complaint in exactly the form that it's been proposed here in the event that a skinnier version of the complaint would not spark a case-delaying motion to dismiss and would help us move this case along more efficiently.  I wanted to have an open conversation about that rather than using that as a subtext to deny the motion, but I still think that it's an issue that I want to talk about, just to make sure that basically, at this point, there's not another conversation that we should be having about settlement and there's not a useful conversation that plaintiff and defendants could be talking about that might result in the filing of an amended complaint that would not raise claims that defendants might have reasonable arguments are not viable as a matter of law.

So again, I want to raise this now outside of the context of the decision.  My opinion is what it is.  But I do want to talk about this, and I think the first place to start is with you, counsel for plaintiff.  You're about to engage in a bunch more work in this case and probably another round of

L1L1SKIC

motion to dismiss briefing here, and I just want to see if there's an opportunity to try to keep this case moving along or to give the parties the chance to talk about settling it again. So counsel for plaintiff, let me just get your reaction, if I can.  I'm not going to proscribe anything, as you may infer from the way that I'm making these comments, but I do want to see if there's an opportunity here and ultimately something that will be the fruit of the parties' conversation, but at least I wanted to open the door to a conversation.

Counsel for plaintiff, any reaction?

MR. ALEXANDER:  This is Brian Alexander for plaintiffs, your Honor.

In terms of -- we're happy to continue to discuss settlement based on the new complaint, and we're certainly open to that.  In terms of the new statements, I think that all the new statements are valuable additions and provide, you know, different theories that could be significant on a summary judgment motion, in terms of the current, you know -- "the FDA agreed" statements, the defendants have made some arguments about how it knows the proper interpretation of those statements, and now we're confident that we'll be able to show that they wouldn't be able to prove their interpretation factually, but at the same time we think the new group of statements -- the statements that it's significant, the statements about phenotype characteristics and the D risk

L1L1SKIC

profile, among other -- are significant additions just because they are things that the FDA was very specifically telling, warning them about while they were telling investors the opposite, and I think that provides an important kind of different angle to the case that we couldn't plead before and we can plead now.

THE COURT: Fine. So let me just do this then. I strongly encourage you parties to talk some more about a potential resolution of the case. I don't know, and I don't want to know, what happened in the mediation previously. I think that defendants' concerns about the relative means of this company are less important for the motion than they are for the parties to keep in mind as you're working to potentially resolve the case, and I just am concerned about the parties using resources in litigating the case to a potential summary judgment motion and a motion to dismiss -- again, an incremental motion to dismiss here. I'm just worried that the costs are just going to get greater if the parties don't spend a little bit more time talking about potential resolution. You'll just incur the extra costs, and there we have it. So again, I strongly encourage you to engage in that kind of a conversation.

Counsel for defendants, I've just heard counsel for plaintiff's position. Is there anything that I can do at this point that might help the parties make more progress toward a

L1L1SKIC

potential resolution of the case?  Again, any discussions about settlement doesn't mean that you're going to settle the case; it just means that you think that there may be a route to begin a meaningful conversation.  Any reactions, counsel for defendants, that you can share at this point?  I'm particularly interested if there's anything I can do that might help the parties, encourage the parties, to talk more about the prospect of a resolution.

MS. LEVITT:  Yes, your Honor.  This is Jamie Levitt from Morrison & Foerster on behalf of the defendants.  Thank you for the opportunity to respond.

We agree with the Court entirely that this is going to -- we're always open to discussions and to continuing settlement talks, but as the Court noted, this is a substantial new, you know, complaint kind of bringing us back to square one.  At the time of the original complaint even the new claims, I just will note, that will require a substantial motion to dismiss, whether it's futility for amendment or a motion to dismiss, if granted, we will brief that, your Honor, but I will say that the new statements, as I mentioned earlier, go from two claims, two statements left in the case now to approximately 23 or 25.  The vast majority of them, as we set forth in our papers, do have to do, as Mr. Alexander said, with complaints or concerns about the Ong trial.

I will note, your Honor -- because the Court will see

L1L1SKIC

this and I'll note for plaintiff's purposes -- that what we will argue, among other things, is that Acer never represented that there were no FDA concerns with the Ong trial.  In fact, those concerns were very well known in the market, and there was ample criticism in the market and public disclosure of those concerns.  We think this is not a matter of insufficient evidence but nonactionable statements, because even the 37,000 pages produced don't in any way change that factual scenario, putting aside other arguments we'll have on the motion to dismiss with respect to opinions or corporate optimism or the like.  So this will require a substantial motion to dismiss.

Your Honor, I'll also note that we believe the other large category of changes in the third amended complaint are to amplify the existing claims.  Your Honor knows that there's a disagreement among the parties as to whether this case and these statements are about approval or submission of the new drug's application.  I will note that the quote that the plaintiffs do spend a lot of time focused on has to do with the fact that the FDA said it was rare to approve on one study.  Your Honor, that's entirely known to the market in a public statement, and publicly known, and of course our position is Acer never said that the FDA promised approval.  So we think that these are not actionable claims.  We will set that all out.  That being said, we would be happy to talk to plaintiff after we talk to our clients, but I did want to note all of

L1L1SKIC

that.

Your Honor, I just wanted as well, if the Court will indulge me, to note -- and I don't want the Court to believe that we were somehow sitting on our hands or ignoring discovery obligations.  We did respond timely.  We were doing what we needed to do in the background to be prepared for discovery and to preserve documents, and I will also note we produced 37,000 pages of documents.  So we believe a large bulk of that had been done, and we are now -- we believe that since the plaintiffs were intending to amend with respect to the rest of the stages of production, we were waiting for the Court's ruling.  So I just wanted to note that so the Court did not think otherwise.

THE COURT:  Thank you.  So noted.

So counsel, I do really strongly want to encourage you to talk again about the possibility of resolving this case.  I understand the reasons why counsel for plaintiff asserted that these additional claims have valid value in terms of I'll call it adding additional potential paths toward a recovery in the event that these claims are found by the Court to be viable.  I don't take a position on whether or not it's likely that they actually will increase the settlement value of the case or the economic recovery associated with this at any point.  That is a question.

My other concern, as you've heard, is that this is

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

L1L1SKIC

going to result in a substantial motion to dismiss which will cost money and delay the parties' ability to resolve the case substantially.  My hope would be that rather than engaging in that additional incremental work, the parties would spend the time and, frankly, the money involved in doing that, talking about a resolution.  We know at this point that some of the claims have survived; you know at this point that there's going to be some discovery as a result, and so there's a substantial opportunity for the parties to work toward a resolution now that you have a sense of where the case may be developing.

So what I'd like to do, in terms of the briefing of this motion, is to ask you to do the following:  First, I will ask, counsel for defendants, that you write me a premotion conference letter with respect to the proposed motion to dismiss.  I frankly don't think I'm likely to actually host a conference with respect to those.  I've read the complaint.  I can envision what your arguments are going to be.  I'll hold a conference only if I think that one is necessary.  I would ask that you include in your letter a proposed briefing schedule with respect to the motion.  If there's any question regarding the applicability of the PSLRA stay pending this anticipated motion, please let me know.  The text of the statute is relatively clear.  As I believe we talked about in our prior conference, there is some case law with respect to this question as well, but barring an application to the Court

L1L1SKIC

asserting that the PSLRA stay does not apply when a second or subsequent motion to dismiss is filed, notwithstanding the text of the statute, my understanding will be, as the default rule, that it does.  But again, I look forward to seeing any submissions on this point.  I'm just establishing a default rule.  In the event that no party seeks other relief from me, my default premise is that the statute applies automatically.  If either party believes differently, you should absolutely feel free to write me.  I have not held this.  I'm just establishing a default rule in the event that neither party seeks to obtain a specific ruling from the Court on the issue.

So counsel, what I'd like for you to do before you send in the premotion conference letter is to confer with counsel for plaintiff again just to see if there's any grounds for a further conversation about a resolution of the case.  If you think that there may be grounds for the parties to engage in further conversation before you engage in the briefing process for this motion, please don't hesitate to let me know.  I'm happy to consider an application to give you a briefing schedule that will allow you to focus on those conversations, which I think would be appropriate here, particularly in light of the nature of the case and the size and nature of the defendants' business.

So counsel, I would ask that you send me a premotion conference letter within the time period established under the

L1L1SKIC

rules by which you would otherwise file an answer or other response to the amended complaint.  I'm ordering that the amended complaint be filed no later than two weeks from today. Counsel, if you, during the course of your conversations, decide that it makes sense to defer filing the amended complaint or otherwise, please feel free to work within those parameters.  My order will state that you have leave to file the amended complaint up through and including a date that is two weeks from today.

Any questions or other issues that we should talk about before we adjourn?  First, counsel for plaintiff?

MR. ALEXANDER:  Your Honor, Brian Alexander again from plaintiff.

I just wanted to add that we had actually been preparing a letter about the PSLRA stay between the parties, the joint letter that your rules call for and were actually probably going to file it earlier this week if not for you setting this conference, so we held off.  So if you would like to get that submission, then we'll file that shortly.

THE COURT:  Good.  Thank you.  Yes, I'm happy to look at that.  I will consider each of the parties' positions with respect to the question.  I'm happy to consider your letter and any analysis or arguments that you'd like to present in support of each of your respective positions.  Thank you.

MS. LEVITT:  Your Honor, this is Jamie Levitt.  Just a

L1L1SKIC

point of clarification on that last point with respect to the stay.

Are you asking for a separate letter briefing on the question of whether the PSLRA stay is mandatory once we file the premotion letter for a motion to dismiss, or is there some other question on that issue? Because I do believe the statute is clearly stated.

THE COURT: Thank you. I don't know what the letter is that counsel is referring to. I don't know what the content of that is.

Counsel for plaintiff, can you clarify?

MR. ALEXANDER: The letter, it's about whether it would apply at all for a second -- sorry, this is Brian Alexander for the plaintiff again -- for a second successive motion to dismiss. It relies on -- we discussed before the Court before *In re Salomon Analyst Litigation* and argued that the Court should interpret the statute based on the clear purpose of it, based on the legislative history, and the fact that it creates an absurd result to stay the case when the complaint has already been found to not be frivolous, which is what the PSLRA stay is clearly directed at -- cases that are frivolous, that are just fishing expeditions.

THE COURT: Thank you. If you want to present that argument to the Court, counsel, a letter won't do it. You're asking the Court to rule that the statute means something that

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

L1L1SKIC

arguably does not appear in the face of the statute, based on the legislative history.  If I recall, it's a single opinion by Judge Rakoff on which you would rely for that purpose.  I'm happy to write on this topic, counsel, and add to the case law addressing the issue.  But if you're seeking some ruling from the Court on this issue, I'll ask that you submit a motion.  I believe that the defendant has shown good cause for a stay, however, pending briefing and resolution of that anticipated motion.  There are a number of factors that the Court considers in considering such an application for a stay -- among them, the anticipated merits of the argument; whether or not there's prejudice associated with the stay; and the cost and expense of the discovery.  Here, the cost and expense of discovery is high, proportionate to the assets and operations of the company, as proffered by counsel for defendants in their letter.  While I'm not taking a position regarding the ultimate merits of the question itself, I observe that counsel for plaintiff's position is based on a single district court decision which takes a position that seems to be at odds with the text of the statute itself, based on an assessment of the judge's personal opinion of the purpose of the statute based on his review of the legislative history.  And I believe that there would not be undue prejudice here.  As counsel for defendants has asserted, they've provided something like 37,000 pages of discovery at this point.  The case has been pending

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

L1L1SKIC

for a substantial amount of time.  The amount of time that it will take for me to review this motion and for defendants to submit a premotion conference letter with respect to their anticipated motion is very small.  So I'm staying discovery pending, first, briefing and resolution of the motion that plaintiff wants to put in front of me, telling me that the following language, "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss..."  That should be read not to mean any motion to dismiss but just a first motion to dismiss.

So I will ask you, counsel for plaintiff, when do you anticipate submitting that motion?

MR. ROSEN:  Your Honor, this is Larry Rosen.  I think after the Court has given us sort of a preview of your view of the case law, I don't think it's productive for us to file a motion to lift the stay.  I understand your position and, you know, the text is the text, and so if the stay would begin now, prior to their filing a motion to dismiss, I think that's, you know -- we will file our amended complaint in the next two weeks and leave it at that.

THE COURT:  Fine.  Thank you very much.  I take no position with respect to the issue.  I only do so after filing a motion.  I simply read the statute.

Good.  Counsel for defendants, anything else that

L1L1SKIC

you'd like to raise before we adjourn?

MS. LEVITT:  No, your Honor.  Thank you.

THE COURT:  Good.  Thank you, all.

o0o