L2QAASKIC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SKIADAS,

                Plaintiff,

          v.                          19 CV 6137 (GHW)

THERAPEUTICS INC., ET AL.,

                Defendants.

------------------------------x
                                      New York, N.Y.
                                      February 26, 2021
                                      3:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                      District Judge

                          APPEARANCES

THE ROSEN LAW FIRM, P.A.
     Attorneys for Plaintiff
BY:  LAURENCE M. ROSEN BRIAN B. ALEXANDER

MORRISON & FOERSTER, LLP
     Attorneys for Defendants
BY:  VANSHIKA VIJ
MICHAEL AHERN
MORRISON & FOERSTER

L2QAASKIC                    Conference

(Case called)

THE COURT:  Who is on the line for plaintiffs?

Who is on the line for defendants?

Let's give them a moment.

MS LEVITT:  Good afternoon.  This is Jamie Levitt, from Morrison & Foerster.

THE COURT:  Thank you.

This is Judge Woods.  I apologize for the mistake. We'll wait for the other parties to appear.

MR. ROSEN:  This is Lawrence Rosen, for the plaintiffs.

MR. ALEXANDER:  Brian Alexander.

THE COURT:  First let me ask, who's on line for plaintiffs counsel?  Please identify yourselves.  If I can, I'd like to ask the principal spokesperson for each party to identify him or herself and the members of their team.

MR. ALEXANDER:  Your Honor, Brian Alexander and Larry Rosen, from the Rosen Law Firm, for plaintiff.

THE COURT:  Good.  Thank you.

Who is on the line on behalf of defendant?

MS LEVITT:  This is Jamie Levitt, for Morrison & Foerster, and on with me are Michael Ahern, Vanshika Vij of Morrison & Foerster, as well, on behalf of the defendants.

THE COURT:  Good.  Thank you very much.

Let me just say a few brief words about the protocol

that I'd like the parties to follow here.

At the outset, please remember that this is a public proceeding.  Any member of the public or press is welcome to join this conference so, please, just keep that in mind.  I am not monitoring what members of the public or press are doing.

Second, please, keep your phones on "mute" at all times except when you are addressing the Court or your adversary.

Third, please, state your name each time that you speak during this conference and, please, do that even if you've spoken previously.  It will help us keep a clearer record of today's proceedings.

I am inviting our court reporter to let us know if she has any difficulty hearing or understanding anything we say. If she ask you to do something that will make it easier for her to do her job, please, do it to the extent that you can.

And finally, I am ordering that there be no recording or rebroadcast of all or any portion of today's conference.

So, counsel, with that out of the way, I'd like to turn to the substance of today's conference.

Counsel, this is a pre-motion conference with respect to defendant's proposed motion to dismiss the amended complaints.  I've reviewed each of the letters submitted by the parties.  Thank you for those.

I'd like to take just a few moments to hear from each

of the parties regarding or anticipated motions and the bases for them.  This is not oral arguments on the motion itself but it can be helpful to engage in brief discussion about the proposed motion in order to frame the briefing schedule and the issues to be presented.

So, let me begin with counsel for defendants.

Counsel, I invite you to make any comments regarding the bases of the proposed motion.  Counsel for plaintiff has submitted their responses letter which say refocuses their claims or focused them in a way different than that which is presented in your promotion letter.  I invite you in particular to respond to those contentions to the extent you wish to do so now.

Let me turn to you, counsel for defendants.

Counsel.

MS LEVITT:  Yes.  Thank you, your Honor.

Your Honor, Jamie Levitt on behalf of the defendant.

THE COURT:  Your Honor, thank you for giving us this opportunity, and I do think we laid out the arguments and understand the Court doesn't want full argument here.  We would, your Honor, bring a motion to dismiss the third amended complaint which has added these 18 statements in the three additional categories that we set forth because, your Honor, we don't believe that there are any actionable misstatements, as well as a lack of scienter as we've set forth.

I think it breaks into three areas and I don't think that plaintiff's letter changes any of what we are saying here. The categories are guidance on presentation of data and the statistical significance. Those are the two sort of main issues with respect to the on-trial data.

Your Honor, we think at the end of the day this all comes down to a non-actionable disagreement about interpretation of data, data that itself and its limitations within the public domain, and nothing that is in the documents it has produced changes any of those facts.

One thing I'll note is we thought was of note was that a large argument that the plaintiffs have made is that there is some guidance given. We had a statement there is guidance given on presentation of data in 2017. The plaintiff -- the minutes make it very clear that that guidance actually was given. There's no misstatements. And what plaintiffs sort of hung was that there was some how an allegations that those issues with respect to the on-trial could not be remedied after the fact.

One that's not what the documents show in fact was there was a years' long back and forth between Acer and the FDA with respect to issues that were raised on that data. But curiously in their responses letter, the plaintiffs are now arguing that those issues could not easily be remedied after the fact and that's a change that we were unstruck by. But in

any event, it doesn't change the fact that the Court dismissed this claim because it's not a claim in any way or statement in any way guaranteeing approval.  It is a statement of facts that the FDA did give guidance on presentation.

With respect, your Honor, to the issue of statistical significance, again, as we noted, the issues were in the public domain but the case law in the Second Circuit is also very clear.  The Sanapy case, the Ezap case, and the Second Circuit in the Southern District, that as long as we were reasonably believe our methodology and making a meaningful inquiry and believing that as we were negotiating with the FDA, we did not need to disclose all of that back and forth.  So, what we were disclosing with respect to statistical significance is either opinion or in any event, is not belied by anything in the record because that -- negotiations is ongoing.

Your Honor, I don't think anything that the plaintiffs have said belies any of that and none of the documentation in none of the cases change it.  I will note, your Honor, that the plaintiffs do rely not on Second Circuit cases but on two cases from California.  And I do, if the Court would allow me, want to note why we do believe those are in addition to being not binding on this Court, are entirely distinguishable.

Most particularly, the Shulamit case, in that case there was an allegation that the defendant didn't disclose, the defendants made a statement that all of the animal studies that

L2QAASKIC                        Conference

it had completed supported their case for approval of their drug. Instead, what they didn't disclose was there was a rat study that showed high rates of cancer. That's entirely different here. In that case the plaintiffs, the defendants made a very bold statement that all studies supported approval when they knew there was a study that in fact did not.

And then the plaintiffs cite the Amlin case which is a Southern District of California case. But that case is also distinguishable. There the defendants had said that they met the standards of the FDA standards of approval and they talked about significant, statistical significance in that approval, the stated disclosure. Here, we did not ever say that we met the FDA standards for approval. That was not a statement made in statistical significance in any event are in different disclosures here. And as I noted earlier, your Honor, we were continuing to work in good faith with the FDA to resolve any issues that they had. So, I think those are sort of the important notes that we saw with respect to the letter, but of course, your Honor, we would also fill out of this out in a motion to dismiss.

But I would also just want to touch on scienter. And just to make clear, your Honor, we are not challenging the Court's prior findings but these are new statements that require new findings and analysis with respect to scienter. We submit, your Honor, that there are different, that there are

L2QAASKIC                    Conference

four factors the Court looked at in its last ruling.  Three of those don't apply here.  And what we are left with is the motive based on the need to raise money which is clearly in the Second Circuit not sufficient.

With respect to references here, your Honor, again, the inferences are different.  The statements are different. We think it is not a compelling inference to argue that somehow since 2017 we were told by the FDA that this drug would not be approved but yet continued to work with them for two years spending time and money and submissions on all to know the inevitable end that it would not be approved.  In the Citi Trust case that we cited, the Court said there is no benefit from a short respite of the inevitable day of reckoning and we think that's what the inferences -- excuse me -- that the plaintiffs are trying to make here.

With all that, your Honor, if you have questions, I would, of course, to be happy to answer those.  But as I noted, we would fill out of this out in our motion to dismiss

THE COURT:  Thank you.  I look forward to that.

Can I can ask you, counsel for defendants, to just say a few more words about your view of plaintiff's arguments that are premised on the fact that defendants spoke in this area. As I understand from their letter and essence, they're arguing that because something was said, defendants were obligated to -- that is positive statements -- that you were also

required, your clients were also required to disclose FDAs, arguably more negative comments.

what's your view of plaintiff's mission or half-truths theory here?

MS LEVITT:  So, your Honor, I think the Sanapy and the Ezap cases are instructive here.  So, I think if we're talking about the question of, when it comes to the guidance question, I don't think that's where the Court is directing me.  But in that one, the FDA did, in fact, provide guidance on presentation of data.  So, I don't think that's what the Court is asking me about.

With respect to the statistical significance, the defendant did make arguments that it believed to be on trial was statistically significant.  That is something that the defendants believe.  I think the documents make that very clear and we're working with the FDA on methodology to try to come to a meeting of the minds on that.

But in the Sanapy, Ezap and Mailla cases, what the Court has explained is that there is not a requirement to disclose all of the back and forth with the FDA on procedural or methodological commentary.  We didn't say in any of our statements that the FDA has blessed our findings of statistical significance.  That would be different.  Instead, what we said is we believe statistically significance data and results existed -- it's also not untrue in any way.  We didn't guaranty

approval and we didn't say that the FDA had approved whether we said.

In the Sanapy case, for example, was a case of whether there could be a single blind versus a double blind study.  The defendants there had made positive statements about the results and published in the lancet.  The FDA has concerns about the difference between a double or single blind studies that were not, that is disclosed by the defendants.  And there the Court again said, you're not required to do that.  The public was aware of the FDA's views on single versus double blinds and the market was aware of the results that had been published.

The Second Circuit affirms that decision finding that the FDA's disagreement with the conclusion renders -- that the defendants had conducted a meaningful inquiry and in fact, held the views that we all we were making.  And so, we think that is analogous, your Honor, to the situation here.  Similarly, in the Mailla case again was a disagreement over data that the court found not to be actionable.  And so that's where we think we lie with respect to these cases as well.  There was not a foregone conclusion that the FDA would not come to an agreement with to us with respect to the issues of statistical significance.

I don't know, your Honor, if I am answering your question or going beyond what you were looking for but that I'm hopeful it was responsive to your request.

L2QAASKIC                    Conference

THE COURT:  Thank you very much.  That was very helpful.

Let me turn to counsel for plaintiff.

Counsel, again, this is oral argument with respect to the -- that said, is there anything that you'd like to tell me regarding plaintiff's position with respect to these issues?

MR. ALEXANDER:  Yes, your Honor.  This is Brian Alexander, for the plaintiff.

So, I just want to know in starting that, of course, they're only moving to partially dismiss the third amended complaint.  They are not moving to dismiss the FDA green statements that you've already sustained in your last order. They're moving to dismiss the other two -- which are the position of standing and importance of specific characteristics statements and the guidance statement, which you evaluate before, which we believe are misleading based on the new information.

Now, in terms of the central significance and the importance of characteristic statements, they're trying to obviously put these statements in this box.  Well, you don't have to disclose every agreement you have with the FDA or every back and forth you have, and we agree with that general principle.  But we think here it's a clear case where they just basically continue to tout the same things over and over again while the FDA is saying the exact opposite.  And that's what

Shulamit stands for.  It says that they could have remained silent about the dispute or they could have addressed -- they couldn't represent there was no controversy.  And that's exactly what the plaintiff did here.  Where there, throughout entire class period repeated -- in the study a significance with no qualifiers that there's an important -- characteristics were equally balanced between the -- and the control group while the FDA is simultaneously telling them that they're concerned about the opposite in their -- escalates and escalates and escalates and plaintiffs are continuing to make a representation that's contradicted by that.

The Sanapy case which they brought up, in that case you know the Court actually took great pains to say that the plaintiff had qualifies and there was a high bar for the FDA and actually found the statement more material -- the defendants had made in that case.  And also I should note that in that case the drug was actually approved without them, the defendants ever conducting any additional study.

On the FDA guidance statement, just to address what they said that we had somehow changed our position, you know, it's this argument they made throughout this case where they argued that we say that something will definitely be rejected or definitely can't be changed, but here, I want to try to capture the nuance of what we're saying a little bit which is basically that it's very different for them to just say that

we're getting information about how to present the information and the FDA actually stating that we're concerned about the underlying data. And what we are saying in our preview in the letter is simply that you can't change the underlying data after the fact after the trial's already been finished. So, we weren't saying that they knew for sure at that moment there was no way we could organize the underlying data to potentially have approval. But it's a much more serious problem because the FDA was singling that there were problems in the underlying data and it was actually creating a great risk. They wouldn't be able to fix it. Whereas, when they're just representing that they're getting information that they haven't presented, it seems like a much less serious problem.

And finally on scienter, we think the scienter case is now even stronger than before because before the Court had to infer scienter because there was a risk because -- information in the second amended complaint based on the fact that Ensevo was rejected. Whereas, here, we know that defendant Shaline attended all the meetings. We know exactly what the FDA said and we know that Acer had all of this information in writing. So, in terms of knowingly making these statements or recklessly we think that's clear.

Thank you, your Honor.

THE COURT: Thank you.

Counsel for defendant, anything that you'd like to say

L2QAASKIC                        Conference

in response to before we talk about briefing schedule for the motion?

MS LEVITT:  Your Honor, I hesitate to.  It's hard for me to hold off on saying anything.  So, I just wanted to note a couple of things which is as I noted earlier, we think scienter is actually much harder in this case with respect to the statements in addition to the lack of motive.  There is no contrary information in this very voluminous record that the plaintiff has been given.  Instead it's clear there is a continual back and forth and a belief by the defendants that they are going to overcome issues that have been raised and believe in their methodology.

I think that it's important to note, as I said earlier, with respect to the issue of misrepresentation and, counsel, I appreciate did recognize that there is no necessary necessity to disclose all back and forth.  We never went beyond what they believed to be a true statement which was -- other statistical significance or that the FDA had provided guidance on the presentation of data.  We were continuing to work with the FDA like the parties in the Sanapy case and the Ezap case and the Mailla case with respect to the issues that were raised.  But we never, ever -- stated that the FDA blessed our methodology.  In fact, we just didn't go that far in our statements and stuck to what we believed and what we had the basis to say.

L2QAASKIC                    Conference

I think that's probably all, your Honor, that I need to address with respect to those statements.  I would just ask the Court to look carefully at the Sanapy case.  The Court was clear there that defendant's statements are not misleading simply because the FDA disagreed with their interpretation of the data.  And -- is not liable merely because it notes that they failed to disclosed some facts cutting the other way.  And that, your Honor, we think is merely squarely on point here.

But, your Honor, we are happy to answer any questions or speak with the Court about scheduling.

THE COURT:  Good.  Thank you very much.

So, let's talk about scheduling.  I see from plaintiff's letter that you propose that the parties proposed that I schedule opening brief for June 1, 2021.  I am happy to do that as a result of focus of our discussion should be on the amount of time required for the plaintiff's submission and the rely.

counsel, have you given a thought to those issues as well?

Let me turn first to counsel for plaintiff.

MR. ALEXANDER:  Could we have 30 days, your Honor?

THE COURT:  Yes.  That's fine.

Counsel for defendants, is two weeks sufficient for you to file your reply?

MS LEVITT:  Your Honor, I was going to say yes, then

L2QAASKIC                        Conference

it occurred to me that to the extent the world does open back up, that might be the 4th of July week.

THE COURT:  Thank you.  That's fine.

Counsel for plaintiff, what's your view regarding with proposal I give them three weeks with respect to the 4th of July holiday, which I think does come in the middle of what would otherwise be their response period?

MR. ALEXANDER:  That's fine with us, your Honor.

THE COURT:  Thank you.

MS LEVITT:  Thank you.

THE COURT:  So, I'll enter an order to that effect. You will see that later today or perhaps over the weekend.

Anything else that we need to talk about here, counsel for plaintiff?

MR. ALEXANDER:  No, your Honor.

THE COURT:  Good.  Thank you.

Counsel for defendants?

MS LEVITT:  Your Honor, no further issues.

Thank you.

THE COURT:  Good.  Thank you, all.

(Adjourned)