**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS SKIADAS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>            V.<br><br>ACER THERAPEUTICS INC., CHRIS SCHELLING, and HARRY PALMIN,<br><br>        Defendants. | Case No. 1:19-cv-06137-GHW<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND <u>ESTABLISHING NOTICE PROCEDURES</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT ..................................... 2

    A. Procedural History ................................................................................................ 2

    B. Settlement Negotiations ....................................................................................... 4

III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES ......................................................................................... 4

    A. Numerosity ........................................................................................................... 5

    B. Commonality ........................................................................................................ 6

    C. Typicality .............................................................................................................. 6

    D. Adequacy ............................................................................................................. 7

       1. Adequacy of the Proposed Class Representative ........................................... 8

       2. Rule 23(g) Adequacy of the Proposed Class Counsel ................................... 8

    E. Common Questions Predominate and the Class Is Superior to Other Methods of
       Adjudication .......................................................................................................... 9

IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 11

    A. Standards for Preliminary Approval .................................................................... 11

    B. Lead Plaintiff and His Counsel Have Adequately Represented the Class ...................... 13

    C. The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by
       Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ......... 13

    D. The Relief Provided Meets the Adequacy Requirement ................................................ 14

       1. The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay
       of Trial and Appeal Support Preliminary Approval ...................................... 14

         a) The Complexity, Expense, and Likely Duration of the Litigation ......................... 15

         b) The Stage of the Proceedings and the Amount of Discovery Completed ................ 16

         c) The Risk of Establishing Liability and Damages ..................................... 16

d) The Risks of Maintaining the Class Action Through Trial ..................................... 17

e) The Ability of Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund ........................................................................................ 18

2. The Proposed Method for Distributing Relief Is Effective ......................................... 19

3. Attorneys' Fees, Litigation Expenses, and Award to Lead Plaintiff ........................... 20

4. The Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs ............. 20

E. There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably ....................................................................................................................... 21

V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ................................................................................................................... 22

VI.   PROPOSED SCHEDULE OF EVENTS .......................................................................... 24

VII.  CONCLUSION ................................................................................................................ 25

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................... 10

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................... 4, 5, 10, 11

*Cagan v. Anchor Sav. Bank FSB*,
   No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 19

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ....................................................................................................... 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ........................................................................................... 5

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................... 8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................... 14, 19

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ............................................................................. 23

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .............................................................................................. 5

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................................ 13

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ..................................................................................................... 21

*Espinoza v. 953 Assocs. LLC*,
   280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................................... 10

*Fogarazzao v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ..................................................................................... 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990) ........................................................................................... 7

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)................................. 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ....................................................................................................... 18

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................................... 21

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................. 15, 16

*In re China Med. Corp. Sec. Litig.*
8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ................................... 14

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ..................................................................................... 21

*In re Deutsche Bank AG Sec. Litig.*,
No. 109CV01714GHWRWL, 2020 WL 3162980 (S.D.N.Y. June 11, 2020)......................... 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................ 5, 6, 7, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ...................................................................................... 6

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................... 8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 6, 18

*In re Indep. Energy Holdings PLC*,
No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................ 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................ 7, 11, 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................................... 16

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................... 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 15

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015)...........................................21

*In re Vivendi Universal, S.A.,*
  242 F.R.D. 76 (S.D.N.Y. 2007)........................................................................................ 5, 6, 7

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986) .................................................................................................. 15

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) .................................................................................................. 6

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................................. 5

*Leung v. Home Boy Rest. Inc.*,
  No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................. 13

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................... 20

*Marisol A. by Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996)......................................................................................... 7

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................................................... 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................................................. 24

*Palacio v. E\*TRADE Fin. Corp.*,
  No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012)........................... 11

*Pasini v. Fishs Eddy, LLC*,
  No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018).............................. 21

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................................. 11

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................................... 5

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 22

*Spann v. AOL Time Warner Inc.*,
  No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)..................................... 11

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................................... 21

*Vargas v. Cap. One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ................................................................................................ 22

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................................. 11, 13

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ........................................................................................................ 4

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................................ 8

**Statutes**

15 U.S.C. §78aa .............................................................................................................................. 10

15 U.S.C. §78u-4(a)(4) ................................................................................................................... 20

15 U.S.C. § 78u-4(a)(7) .................................................................................................................. 23

**Rules**

Fed. R. Civ. P. 16 ............................................................................................................................. 3

Fed. R. Civ. P. 23 ..................................................................................................................... passim

Fed. R. Civ. P. 23 (a) .................................................................................................................... 4, 5

Fed. R. Civ. P. 23 (a)(1) ................................................................................................................... 5

Fed. R. Civ. P. 23 (a)(3) ................................................................................................................... 6

Fed. R. Civ. P. 23 (a)(4) ................................................................................................................... 7

Fed. R. Civ. P. 23 (b) ....................................................................................................................... 5

Fed. R. Civ. P. 23 (b)(3) ........................................................................................................... passim

Fed. R. Civ. P. 23 (b)(3)(D) ........................................................................................................ 5, 10

Fed. R. Civ. P. 23 (c)(1)(C) ............................................................................................................ 18

Fed. R. Civ. P. 23 (c)(2) ................................................................................................................. 22

Fed. R. Civ. P. 23 (c)(2)(B) .................................................................................................. 24

Fed. R. Civ. P. 23 (e) ................................................................................................... 12, 22

Fed. R. Civ. P. 23 (e)(1) ...................................................................................................... 12

Fed. R. Civ. P. 23 (e)(2)(B) ................................................................................................. 13

Fed. R. Civ. P. 23 (e)(2)(C)(iii) ........................................................................................... 20

Fed. R. Civ. P. 23 (e)(2)(D) ................................................................................................. 21

Fed. R. Civ. P. 23 (e)(2)(ii) .................................................................................................. 12

Fed. R. Civ. P. 23 (e)(3) ....................................................................................................... 12

Fed. R. Civ. P. 23 (g) ......................................................................................................... 7, 8

## Other Authorities

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 (1986) .............. 10

*Manual for Complex Litigation* (Fourth) ............................................................................... 5

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Nicholas Skiadas ("Skiadas" or "Lead Plaintiff") respectfully submits this memorandum in support of his Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I. INTRODUCTION[1]

Lead Plaintiff and Acer Therapeutics Inc. ("Acer" or the "Company"), Chris Schelling, and Harry Palmin (collectively, "Defendants"), have agreed to settle this Action for $8,350,000 by the terms stated in the Stipulation. By this motion, Lead Plaintiff respectfully requests the Court enter an order: (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a Final Approval Hearing ("Settlement Hearing") at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and case contribution awards, and entry of the Final Judgment.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of nationally regarded mediator Jed Melnick, Esq. of JAMS. The immediate cash settlement provides a guaranteed recovery for Settlement Class Members. This is a highly favorable result in light of several obstacles Lead Plaintiff faced with ongoing litigation, including proving liability and damages. For example, Lead Plaintiff would face significant challenges in proving that Defendants' statements about the September 2015 FDA meeting and the Ong Trial were false and misleading when made. Defendants would also argue that even if the statements were false or misleading, they did not have an intent to mislead investors or motive to commit the fraud.

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation") dated July 21, 2021 and filed herewith.

1

Defendants would further contend at summary judgment and trial that Lead Plaintiff would have difficulty establishing loss causation and that any alleged damages would be substantially smaller than Lead Plaintiff alleges. Lead Plaintiff believes that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class Members' best interest. Similarly, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. Thus, the Court should preliminarily approve the Settlement.

## II. SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A. Procedural History

This litigation was commenced on July 1, 2019 styled as *Sell v. Acer Therapeutics Inc., et. al.*, Case No. 1:19-cv-06137-GHW, alleging violations of the Securities Exchange Act of 1934 ("Exchange Act") against the Defendants (Dkt. No. 1). After filing a motion seeking appointment as lead plaintiff and approval of lead counsel, on September 25, 2019, the Court appointed Skiadas as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel (Dkt. No. 24).

On December 3, 2019, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") asserting claims under Section 10(b) and 20(a) of the Exchange Act (Dkt. No. 28). On January 15, 2020, Defendants filed a pre-motion letter requesting leave to move to dismiss the Amended Complaint (Dkt. No. 31), which Lead Plaintiff opposed (Dkt. No. 35). On February 7, 2020, Defendants filed a motion to dismiss (Dkt No. 38). In response to Defendants' motion to dismiss, Lead Plaintiff filed the Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint") (Dkt. No. 43) on February 28, 2020.

On May 1, 2020, Defendants filed a motion to dismiss the Second Amended Complaint, which was fully briefed on May 29, 2020. On June 16, 2020, the Court granted in part and denied

2

in part Defendants' motion to dismiss the Second Amended Complaint ("Motion to Dismiss Order") (Dkt. No. 54). On July 1, 2020, Defendants filed a motion for reconsideration of the Motion to Dismiss Order, which was fully briefed on July 17, 2020. (Dkt. No. 62). On July 21, 2020, the Court denied Defendants' motion for reconsideration (Dkt. No. 63). Accordingly, on August 7, 2020, Defendants filed their answer to the Second Amended Complaint (Dkt. No. 64).

On August 8, 2020, in advance of the Initial Pretrial Conference, the Parties jointly submitted a letter advising the Court about the status of the case (Dkt. No. 65). The Court held the Initial Pretrial Conference on August 17, 2020 and entered the Amended Civil Case Management Plan and Scheduling Order (Dkt. No. 67).

On November 10, 2020, Lead Plaintiff filed a letter indicating his intention to file a proposed Third Amended Complaint for Violation of the Federal Securities Laws ("Third Amended Complaint") (Dkt. No. 72). Defendants submitted a letter in response objecting to Lead Plaintiff's intention to move to file an amended complaint (Dkt. No. 74). At a November 25, 2020 pre-motion conference, the Court directed the Parties to focus their briefs concerning Lead Plaintiff's motion for leave to amend on issues relating to Rule 16 of the Federal Rules of Civil Procedure only. The Court further instructed Defendants to raise any arguments relating to the legal sufficiency of the proposed Third Amended Complaint in a motion to dismiss.

On December 3, 2020, Lead Plaintiff filed a motion for leave to file a Third Amended Complaint, which was fully briefed on December 18, 2020. After a telephonic hearing held on January 18, 2021, the Court granted Lead Plaintiff's motion (Dkt. No. 93). The Court also stayed discovery pending resolution of Defendants' anticipated motion to dismiss the Third Amended Complaint.  On February 4, 2021, Lead Plaintiff filed the operative Third Amended Complaint (Dkt. No. 97). An unredacted version of the Third Amended Complaint was filed on February 16,

2021 (Dkt. No. 101). On February 18, 2021, Defendants filed a pre-motion letter requesting leave to move to dismiss part of the Third Amended Complaint (Dkt. No. 104). Lead Plaintiff responded on February 23, 2021 (Dkt. No. 106). After a telephonic conference on Defendants' pre-motion letter, the Court granted Defendants' request for leave to file a motion to dismiss  (Dkt. No. 108).

On May 6, 2021, the Parties jointly requested that the Court stay the Action in light of the Parties reaching a settlement in principle to allow the Parties to negotiate and finalize the settlement papers (Dkt. No. 112). The Court stayed the Action on May 6, 2021 (Dkt. No. 113).

### B.  Settlement Negotiations

The Parties began settlement negotiations in the fall of 2020. On October 7, 2020, Lead Plaintiff and Defendants engaged in a mediation via videoconference before Mr. Melnick. Prior to the mediation, Defendants produced more than 36,000 pages of documents, which Lead Plaintiff reviewed. The Parties also exchanged detailed mediation statements with numerous exhibits that were submitted to Mr. Melnick. A settlement was not reached at the mediation, but extensive negotiations continued after the mediation with Mr. Melnick's assistance. The Parties attended a second mediation with Mr. Melnick on March 30, 2021. A settlement was not reached at the second mediation, but negotiations continued after the second mediation with Mr. Melnick's assistance. On May 3, 2021, Mr. Melnick made a mediator's proposal for a resolution of the Action. On May 4, 2021, Mr. Melnick informed the Parties that both sides accepted the mediator's proposal.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class settlement under Rules 23(a) and (b)(3). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d

4

Cir. 1982). Before granting preliminary approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Amchem,* 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

## A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Lead Plaintiff must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007)

5

(numerosity requirement is generally met in cases involving nationally traded securities.).

Here, there are likely hundreds, if not thousands, of potential Class Members as Acer's common stock was publicly traded on NASDAQ with millions of shares traded during the Settlement Class Period. Thus, the numerosity requirement is met.

### B.  Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct, such as making misrepresentations in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Acer's SEC filings and public statements, whether the statements were made with scienter, and the extent of damages sustained by Settlement Class Members as well as the appropriate measure of damages.

### C.  Typicality

The Rule 23(a)(3) typicality requirement is fulfilled when "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the

6

proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *See EVCI*, 2007 WL 2230177, at *13; *Vivendi*, 242 F.R.D. at 85 ("[P]laintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Lead Plaintiff is the proposed class representative. As was the case with all other members of the proposed Settlement Class during the Settlement Class Period, Lead Plaintiff purchased Acer common stock during the Settlement Class Period based on Defendants' allegedly materially false and misleading statements and was harmed in the same way when the truth emerged. Lead Plaintiff's claims stand or fall with those of the Settlement Class and thus, he is typical.

### D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, a showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Lead Plaintiff is adequate if his interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class

7

representatives. In any event, both prongs of the adequacy requirement are satisfied here.

### 1.  Adequacy of the Proposed Class Representative

Lead Plaintiff does not have interests antagonistic to those of the proposed Settlement Class Members. The proposed class representative purchased Acer common stock during the Settlement Class Period and was damaged thereby. The proposed class representative is seeking, on his own behalf and on behalf of all members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. Since his interests are congruent with the interests of other Settlement Class Members, Lead Plaintiff should be deemed the Class Representative.

### 2.  Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and courts throughout the country. Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case …"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is

8

highly experienced in the complex field of securities fraud class action litigation"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement"). Lead Counsel's firm resume was filed as Dkt. No. 14-4.

Rosen Law utilized its skills and resources to reach the Settlement. Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. The Settlement was achieved after Lead Counsel spent considerable time for the benefit of Acer shareholders. Lead Counsel's work included conducting a thorough investigation, including retaining a private investigator and experts; drafting several pleadings, including the Third Amended Complaint; opposing Defendants' pre-motion letters and defeating the motion to dismiss (in part) and motion for reconsideration; requesting and reviewing more than 36,000 pages of documents; successfully moving for leave to file the Third Amended Complaint; and participating in the mediation and settlement discussions, including drafting a mediation statement. Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

## E. Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Lead Plaintiff satisfies the predominance and superiority criteria.

9

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, the existence of common questions predominates over individual issues, exemplified by the fact that if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. The Court is an appropriate forum because pursuant to 15 U.S.C. §78aa, Acer may be properly sued in any district court in the United States. Moreover, Acer common stock trades on the NASDAQ, which is located in this District and some of the alleged false and misleading statements were made in this District. Additionally, as to Rule 23(b)(3)(D), Lead Plaintiff believes no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without class actions, investors who have been defrauded by securities law

10

violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). And if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3).  As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases, because they tie up substantial judicial resources, use up the parties' time and money, and litigation resolution is usually significantly delayed. *Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (4th ed. 2002) §

11

11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *12. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as recently amended, preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>>
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

**B.  Lead Plaintiff and His Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have diligently prosecuted this Action.  Lead Plaintiff and Lead Counsel variously, reviewed and/or investigated the facts in this case and drafted several pleadings including the operative Third Amended Complaint, responded to Defendants' pre-motion letters requesting to file motions to dismiss the various complaints, opposed Defendants' motion to dismiss the Second Amended Complaint, opposed Defendants' motion for reconsideration, reviewed more than 36,000 pages of documents, moved the Court for leave to file the Third Amended Complaint, and negotiated a favorable settlement that provides immediate recovery to Settlement Class Members.

**C.  The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

Rule 23(e)(2)(B) considers if "the proposal was negotiated at arm's length." Courts initially presume that a settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties…"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

13

The Parties participated in two virtual mediations with Mr. Melnick of JAMS. Prior to the first session, held on October 7, 2020, the Parties exchanged detailed mediation submissions. A settlement was not reached at this session, but extensive negotiations continued with Mr. Melnick's assistance. The second session was held on March 30, 2021. Again, a settlement was not reached, but settlement discussions continued. On May 3, 2021, Mr. Melnick made a mediator's proposal which the Parties accepted shortly thereafter. Given the multiple mediation sessions and additional negotiations, the settlement discussions were at all times hard-fought and at arm's length, and have produced a result that Lead Plaintiff and Lead Counsel believe to be in the Settlement Class's best interest. The arm's-length nature of the negotiations and Mr. Melnick's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval). Thus, the Court should preliminarily approve the Settlement.

### D.  The Relief Provided Meets the Adequacy Requirement

#### 1.  The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements

or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). It is not possible to evaluate the second factor, the reaction of the class to the settlement, at this time, as notice of the Settlement has not yet been disseminated. Lead Plaintiff, however, supports the Settlement.

### a)  The Complexity, Expense, and Likely Duration of the Litigation

Courts generally recognize that securities class actions are complex and expensive. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage").

The Settlement provides a guaranteed, immediate recovery. If the Settlement were not reached, the Parties would have to incur substantial costs and engage in prolonged litigation through a decision on the motion to dismiss the Third Amended Complaint, discovery, class certification, summary judgment, trial and, if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could easily exceed the several million dollar range for Lead Plaintiff. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses. There is no guarantee that Lead Plaintiff would have been able to obtain the necessary evidence to prove his case through discovery; and even if he could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

15

**b)  The Stage of the Proceedings and the Amount of Discovery Completed**

At the time of settlement, Lead Plaintiff was armed with sufficient information to evaluate the Settlement's benefits and drawbacks. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (internal quotations omitted). Although discovery was stayed after Lead Plaintiff's moved the Court for leave to file the Third Amended Complaint, Defendants produced a number of significant documents in their more than 36,000 page pre-mediation production, including the minutes of Acer's meetings with the FDA. Based on those documents and Lead Plaintiff's thorough investigation, Lead Plaintiff had the information he needed to evaluate the Settlement and make an informed decision of the risk of continued litigation versus settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

**c)  The Risk of Establishing Liability and Damages**

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Defendants contended that, contrary to Lead Plaintiff's allegations, the alleged misstatements regarding the September 2015 FDA meeting were not false or misleading because they related to the submission of the New Drug Application, rather than approval. Defendants further contended that the alleged misstatements regarding the Ong Trial were not false or misleading because the data and results from the Ong Trial were publicly available and the Company was not required to disclose interim feedback from the FDA during the review process. Defendants further contended that, even if any of their statements were false or misleading, they

16

did not have any intent to mislead investors and did not make the statements with deliberate recklessness. Defendants further asserted that there was no motive or other evidence of intent to commit fraud and the Individual Defendants did not benefit from the alleged fraud by selling shares during the Class Period. Defendants would further argue that Lead Plaintiff would not be able to recover the full stock price drop as damages.

Although Lead Plaintiff believes he would be successful defeating the motion to partially dismiss the Third Amended Complaint, there is no guarantee that the Court would not have dismissed some or all of the new misstatements that Lead Plaintiff pled based on the falsity and scienter arguments that Defendants intended to raise. Additionally, to survive a summary judgment motion, Lead Plaintiff will need to prove — not merely allege — that Defendants' statements were false and misleading, that Defendants acted with scienter, and that Defendants' misstatements caused the losses of investors in Acer's common stock. If he survived summary judgment, Lead Plaintiff would then have to establish each element of his claims and damages to a jury's satisfaction. Even if Lead Plaintiff won at trial, he would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. And if Defendants' loss causation, damages, or other arguments were accepted, the maximum damages that could be established at trial might have been even lower than Lead Plaintiff's estimate of damages and, of course, Lead Plaintiff may have lost at summary judgment, trial, or an appeal on some or all of his claims, resulting in a recovery of little or nothing. The Settlement avoids these genuine risks.

### d)  The Risks of Maintaining the Class Action Through Trial

For class certification, Lead Plaintiff must show that common issues predominate over individual issues.  Defendants would have opposed Lead Plaintiff's motion for class certification and disputed Lead Plaintiff's ability to certify a class.  To certify a class. Lead Plaintiff must show

17

that Acer's common stock traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' allegedly materially false statements. Defendants would have been permitted to rebut the presumption by showing that the false statements did not have an impact on Acer's stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Accordingly, there is a risk that the Court could deny class certification and, even if Lead Plaintiff was able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. The Settlement avoids the uncertainty with respect to maintaining certification and, thus, supports approval of the Settlement.

   e) **The Ability of Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund**

   In securities class actions, plaintiffs primarily look to the company defendant for settlement funds. It is highly unlikely that Acer would be able to withstand a greater judgment. Acer's market capitalization is only approximately $34 million and its most recent quarterly report filed with the SEC stated that the Company had only $15.9 million in cash and cash equivalents as of March 31, 2021 and that there is "substantial doubt about the Company's ability to continue as a going concern."[2]

   The Stipulation provides a Settlement of $8,350,000 to be paid into the Settlement Fund.

---

[2] *See* Form 10-Q for the quarter ending March 31, 2021, at 6-7, Available at:
https://www.sec.gov/Archives/edgar/data/0001069308/000156459021028403/acer-10q_20210331.htm.

18

Based on an aggressive analysis, Lead Plaintiff estimates damages to be $69.2 million. The Settlement represents a highly favorable result compared to other cases with this range of damages, returning over 12% to investors. Cornerstone Research found that for cases with damages estimated between $25 million and $74 million, between 2011 and 2019, the median recovery was 7.6% and for 2020 was 5.3%. *See* Exhibit 1 to the Declaration of Laurence Rosen, dated July 21, 2021 and filed concurrently with this motion ("Rosen Decl."). Additionally, NERA Economic Consulting concluded that the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Exhibit 2 to the Rosen Decl. Moreover, the recovery here is well above recoveries courts have declared reasonable. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5%-6.2% of estimated losses). As such, the Settlement falls well within the range of possible approval.

## 2. The Proposed Method for Distributing Relief Is Effective

As demonstrated below at pages 22-24, the method of the proposed notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how Settlement Class Members' claims will be calculated and, ultimately, how money

19

will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages consultant.

### 3. Attorneys' Fees, Litigation Expenses, and Award to Lead Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $200,000. This fee request is in line with other settlements approved in this District. *See e.g., In re Deutsche Bank AG Sec. Litig.*, No. 109CV01714GHWRWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) ( Woods, J.) (awarding attorneys' fees of one-third of settlement); *In re Namaste Technologies Inc. Sec. Litig.,* Case No. 18-cv-10830-GHW (S.D.N.Y. March 11, 2020) (Dkt. No. 76)  (awarding attorneys' fees of 33.3% of settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding attorneys' fees of one-third and holding that this "request…falls comfortably within the range of fees typically awarded in securities class actions"); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third and finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases).

Further, as explained in the proposed notice, Lead Plaintiff intends to request an amount not to exceed $10,000 for reasonable costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4) in connection with his representation of the Settlement Class.

### 4. The Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs

The Parties have agreed to a standard supplemental agreement providing that if Settlement Class Members representing a certain number of shares of Acer common opt out of the Settlement, Acer shall have the option to terminate the Settlement. Stipulation ¶11.4. As standard in securities

20

class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to extract an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at \*5 (N.D. Cal. Oct. 20, 2017) (same).

### E. There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at \*6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017); *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at \*2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case and loss causation principles. Accordingly, the Plan does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the revelation of the truth. *See Dura Pharms.*,

21

*Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Each claimant's Recognized Loss is calculated based on the number of shares purchased during the Class Period and held as of the close of trading on June 24, 2019, the date the alleged fraud was publicly disclosed and Acer's share price declined. Under the Plan, Authorized Claimants will receive his, her, or its *pro rata* share of the Net Settlement Fund calculated as $15.13 (the share price decline net of industry and market related effects) for each share held as of June 24, 2019, subject to adjustment for the PSLRA's 90-day lookback cap on damages. Each Recognized Claim is divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount of the Settlement Fund. Lead Plaintiff and all other Settlement Class Members will receive their payment pursuant to the same formula.

## V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The requirements of the PSLRA and the Due Process Clause of the United States Constitution are

similar. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

The proposed Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Lead Plaintiff; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Long Notice to those persons for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[3]

The proposed Long Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (d) provides the contact information for Claims Administrator[4] and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order mandates that Lead Counsel provide Class Members notice of the Settlement by either: (a) emailing the Summary Notice to Settlement Class

---

[3] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

[4] Lead Plaintiff requests Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements.

23

Members for whom the Claims Administrator is able to obtain email addresses[5] or (b) mailing the Long Notice, if an email address cannot be obtained, by first class mail to Settlement Class Members who can be identified with reasonable effort. After entry of the Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's website. Additionally, Summary Notice will be published electronically once over *GlobeNewswire* and in print once in the *Investor's Business Daily*. The proposed notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts routinely find that these, and similar, methods of notice are sufficient. *See, e.g.*, *In re Namaste Technologies Inc. Sec. Litig.,* Case No. 18-cv-10830-GHW (S.D.N.Y.) (Oct. 25, 2019) (Dkt. No. 66) (approving notice program that included mailing of notice and claim form, settlement designated webpage, and summary notice disseminated over a newswire and printed in *Investor's Business Daily*); *In re Vale S.A. Sec. Litig.*, Case No. 15-cv-09539-GHW (S.D.N.Y.) (Feb. 22, 2020) (Dkt. No. 192) (similar). Accordingly, the form and manner of providing notice are the best practicable under the circumstance and satisfy due process, Rule 23, and the PSLRA.

## VI. PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule as set forth in the Preliminary Approval Order, paragraphs of which are referenced in the chart:

---

[5] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an electronic method of notice. Providing electronic notice to class members by email, if obtained, will reduce administration costs and ultimately benefit the class. Similar electronic notice is permitted in securities class action settlements. *See Zubrinski, et al., v. BioAmber Inc., et. al.,* Case No. 2:17-cv-01531 (E.D.N.Y.) (Dkt. No. 59); *In re Silver Wheaton Corp. Sec. Litig*., Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); *In re Akers Biosciences, Inc., Sec. Litig.,* Case No. 18-cv-10521 (D.N.J.) (Dkt. No. 40).

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice and/or mailing Long Notice. | Within 16 Business Days after the entry of the Preliminary Approval Order (¶13). |
| Posting Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's website | Within 16 days after entry of the Preliminary Approval Order (¶16). |
| Publication of the Summary Notice. | Within 10 days after the mailing of the Long Notice and emailing of Summary Notice. (¶17). |
| Deadline to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 28 days prior to the Settlement Hearing. (¶27) |
| Deadline for requests for exclusion. | No later than 21 days prior to the Settlement Hearing. (¶21) |
| Deadline for objections. | No later than 21 days prior to the Settlement Hearing. (¶25) |
| Deadline for Claim Forms. | No later than 30 days prior to the Settlement Hearing. (¶19(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 7 days prior to the Settlement Hearing. (¶28) |
| Date for Settlement Hearing | 120 days after the Preliminary Approval Order. |

## VII.    CONCLUSION

For the above-stated reasons, Lead Plaintiff requests that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Hearing.

Dated: July 21, 2021                                   Respectfully submitted,

                                                       **THE ROSEN LAW FIRM, P.A.**

                                                       By: /s/ *Laurence Rosen*
                                                       Laurence Rosen
                                                       Phillip Kim
                                                       Brian B. Alexander
                                                       275 Madison Avenue, 40th Floor
                                                       New York, NY 10016
                                                       Tel: (212) 686-1060
                                                       Fax: (212) 202-3827
                                                       Email: lrosen@rosenlegal.com
                                                               pkim@rosenlegal.com
                                                               balexander@rosenlegal.com

                                                       *Lead Counsel for Lead Plaintiff and the Class*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence Rosen*
Laurence Rosen