M171SKIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NICHOLAS SKIADAS, Individually
and on behalf of all others
similarly situated,

                    Plaintiff,

         v.                              19 Civ. 6137 (GHW)

ACER THERAPEUTICS INC., et
al.,
                                         Fairness Hearing
                    Defendants.          (Remote)
------------------------------x
                                         January 7, 2022
                                         12:12 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                         District Judge

                              APPEARANCES

THE ROSEN LAW FIRM
        Attorneys for Plaintiffs
BY:   LAURENCE M. ROSEN, ESQ.
      BRIAN B. ALEXANDER, ESQ.
      ERICA STONE, ESQ.

MORRISON & FOERSTER LLP
        Attorneys for Defendants
BY:   JAMIE A. LEVITT, ESQ.
      JORDAN ETH, ESQ.
      MICHAEL G. AHERN, ESQ.

M171SKIC

THE COURT:  Let me begin by taking appearances from the parties.  I'm going to ask each set of lawyers to identify the principal spokesperson for their side as well as to ask them to identify the members of their team who are on the line. I'd rather we do that than to ask each lawyer to identify themselves individually.

So let me begin with counsel for plaintiff.  Who's on the line for plaintiff?

MR. ROSEN:  Good afternoon, your Honor.  This is Laurence Rosen from The Rosen Law Firm for the plaintiffs. Also on the line for the plaintiffs is Brian Alexander and Erica Stone, both from The Rosen Law Firm.

THE COURT:  Good.  Thank you.

And who's on the line on behalf of defendants?

MS. LEVITT:  Good afternoon, your Honor.  This is Jamie Levitt from Morrison & Foerster, and I'm on the line with Jordan Eth and Michael Ahern, A-H-E-R-N, also of Morrison & Foerster.

THE COURT:  Very good.  Thank you.

So counsel, can I confirm that this line is open to the public as described in the notice?

MR. ROSEN:  Yes, your Honor.  The same dial-in information that was sent to the Court was in the class notice that went out to all of the class members, and we also published it on the settlement website for class members to

M171SKIC

see.

THE COURT:  Very good.  Thank you.

So counsel, the hearing was scheduled with respect to the approval of the proposed settlement in the case of *Skiadas v. Acer Therapeutics, Inc.*, which is Case No. 19-cv-6137.  Lead plaintiff Nicholas Skiadas, on behalf of himself and the Settlement Class, seeks final approval of the class action settlement between the Class and defendants Acer Therapeutics, Chris Schelling, Harry Palmin, the reaffirmation of my prior certification of the Settlement Class for purposes of effectuating the settlement, and approval of the Plan of Allocation.  Lead counsel, The Rosen Law Firm, P.A., moves for an award of attorneys' fees and expenses and a service award for compensation for Mr. Skiadas' time and service representing the class in the case.  The defendants do not oppose these motions.  I've reviewed the submissions and am prepared to take them up now.

Let me just say a brief words about the rules that the parties and any other people who may have dialed in to the call should follow.

First off, please remember that this is a public proceeding.  As counsel just confirmed, the dial-in information for this conference was made available in the notice and was distributed to potential class members.

Please state your name, counsel, each time that you

M171SKIC

speak during this conference.  You should do that even if you've spoken previously to help us keep a clear record.

Third, please keep your devices on mute at all times except when you're speaking to me or to your adversary, or another member of your team.

Fourth, I'm inviting our court reporter to let us know if she has any difficulty hearing or understanding anything that we have to say today.  If she asks you to do something that will make it easier for her to do her job, please do it, to the extent that you can.

And finally, I'm ordering that there be no recording or rebroadcast of all or any portion of the call today.

So counsel, as I say, I've reviewed the submissions and am prepared to rule on them.  Just briefly, counsel, since this is a securities action, I don't see a representation, an express representation from the parties regarding their compliance with Rule 11 in connection with the case.  Let me just ask, counsel, did I miss a representation from the parties regarding their respective compliance with Rule 11 here?  Counsel, first, for plaintiff?

MR. ROSEN:  Your Honor, I don't -- typically we put that into the stipulation of settlement, and I would have to double-check that, so that I would expect to find it there, and it might also be in the final approval order, but if it's not, then that would be an oversight on my part.

THE COURT:  Thank you.  I'm sure it's in the order. The question is whether or not I have the basis to make the required finding.  So counsel for plaintiff, let me just ask you, did counsel for plaintiff and plaintiff comply with Rule 11 here with respect to any complaint, responsive pleading, or dispositive motion filed in the case?

MR. ROSEN:  You're asking plaintiff's counsel, your Honor?

THE COURT:  I am.

MR. ROSEN:  Yes, your Honor.  I think that we had a reasonable basis for each of the allegations in each of the four complaints that we filed -- or three complaints, three complaints that we filed.  And I think that the fact that the Court sustained the complaint is a reasonable inference that there were good-faith allegations, and I don't think the defendants at any point suggested that we had violated Rule 11, and in the stipulation, I believe -- and in the order that they consented to, you know, they implicitly agreed that we complied with Rule 11.

THE COURT:  Thank you.  Counsel for plaintiffs, did counsel for plaintiffs and plaintiffs comply with Rule 11 with respect to any complaint, responsive pleading, or dispositive motion filed in the case?

MS. LEVITT:  Judge, is that addressed to counsel for defendants?

M171SKIC

THE COURT:  No.  It's addressed to counsel for plaintiffs, who did not respond to that yes/no question with a yes or a no.

Counsel for plaintiffs?

MR. ROSEN:  Yes, your Honor.  The answer is yes.

THE COURT:  Thank you.  Thank you.

Counsel for defendants, did counsel for defendants and each of the defendants comply with Rule 11 with respect to any complaint, responsive pleading, or dispositive motion filed in this case?

MS. LEVITT:  Your Honor, we did comply with Rule 11 with respect to all of our responsive pleadings and our motions, and I should note that although we don't oppose anything that plaintiff said, we of course dispute all of the allegations of the complaint.

THE COURT:  Very good.

Counsel, is there anything else that the parties would like to add with respect to the application here before I rule on the motion?

MR. ROSEN:  Your Honor, this is Laurence Rosen for the plaintiffs.  The only thing I would add is that as of today, there's been no objections, there's been no requests for exclusion, there's been about 694 claims received so far, and the notice program has been successful, and I think the result we obtained for the class has been excellent, and in the face

M171SKIC

of a very difficult case.  With these FDA cases, they're very complex and difficult, and I think we did a good job.  And I think the class is going to receive a good recovery.  That's all, your Honor.

THE COURT:  Very good.  Thank you.

Counsel for defendants, anything that you'd like to add before I rule on the motion?

MS. LEVITT:  Your Honor, without being repetitive, I will just note that in entering into this settlement agreement, the defendants aren't acknowledging, conceding, or admitting any fault, wrongdoing or liability whatsoever.  We are agreeing to this settlement to avoid the uncertainties, the burdens, the expenses of litigation and to focus on the continued development of life-saving pharmaceuticals.  Thank you, your Honor.

THE COURT:  Thank you.  Good.

So please place your devices on mute.  I'm prepared to rule on the motions.  I expect to grant the applications here, and I'm going to describe the reasons for that now on the record.

So first, with respect to class certification:

On August 11, 2021, pursuant to Rule 23 of the Federal Rules of Civil Procedure, I preliminarily certified a Settlement Class for settlement purposes only.  The Settlement Class is defined as:

M171SKIC

all persons and entities that purchased or otherwise acquired publicly traded Acer Therapeutics Inc. common stock between September 25, 2017, and June 24, 2019, both dates inclusive, and suffered compensable damages thereby.  Excluded from the Settlement Class are Defendants and their immediate families; the officers and directors of Acer at all relevant times; their legal representatives, heirs, successors or assigns; any entity in which Defendants have or had a controlling interest; and any entity affiliated with, controlling, controlled by, or under common control with TVM Capital Life Science.  Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with this Order.

Dkt. No. 125 at 1-2.

**APPROVAL OF THE SETTLEMENT**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  Under Rule 23(e)(2), amended on December 1, 2018, courts must consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any

proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.* To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Courts in this Circuit have historically determined substantive fairness by analyzing the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). "The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's [*Grinnell*] factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (citing Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018)); *see also In re Payment Card Interchange Fee & Merck Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the [*Grinnell*] factors.")).

The Court examines the procedural and substantive fairness of a proposed settlement in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116.  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.*  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

For the reasons set forth below, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell*, and accordingly, the Settlement is approved.

A.  Procedural Fairness

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion.  "Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, 'constitute the "procedural" analysis' of the fairness inquiry." *Christine Asia Co.*, 2019 WL 5257534, at *9 (quoting *Payment Card*, 330 F.R.D. at 29).  The parties engaged in two full-day mediation sessions with Jed Melnick of JAMS.  Declaration of Laurence Rosen ("Rosen Decl."), Dkt. No. 132, ¶¶ 26-31.  Following the second mediation, the parties continued negotiations with the

M171SKIC

assistance of Mr. Melnick. *Id.* ¶ 28. Mr. Melnick then made a mediator's proposal, which both sides accepted. *Id.* ¶ 29. The parties then spent additional time negotiating and ultimately agreed on the Settlement Agreement that I preliminarily approved on August 11, 2021 (the "Settlement"). *Id.* ¶ 30; Dkt. No. 125. Here, given the proceedings before Mr. Melnick and the parties' months-long arms-length negotiations, there is no evidence to rebut the presumption of procedural fairness. As a result, I conclude that the Settlement is procedurally fair.

### B. Substantive Fairness

The settlement is also substantively fair. "[C]ourts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate[,]" as required by Rule 23(e)'s amendments. *Christine Asia Co.*, 2019 WL 5257534, at *10. The factors set forth in *Grinnell* provide the analytical framework for evaluating the substantive fairness of a class action settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. "[N]ot every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Christine Asia*, 2019 WL 5257534, at *9 (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

### 1.   *Grinnell* Factors

Here, litigation through trial would be complex, expensive, and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.  *See Payment Card*, 330 F.R.D. at 36 ("Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial.").

With respect to the second *Grinnell* factor, the class members' reaction to the Settlement has been overwhelmingly positive.  As of the date of the objection deadline, no Class Members have objected to the settlement.  *See* Supplemental Declaration of Josephine Bravata, Dkt. No. 134–1 ("Bravata Supp. Decl.") ¶ 6.  Further, no Class Members have filed requests for exclusion.  *Id.* ¶ 5.  The overall favorable response demonstrates that the class approves of the settlement and supports final approval.

While the parties have not completed discovery, the

M171SKIC

pertinent question here is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).  Lead Counsel spent significant time and resources analyzing and litigating the legal and factual issues of this case, including:  (i) an extensive legal and factual investigation into the claims asserted; and (ii) engaging in a detailed formal mediation process.  Rosen Decl. ¶ 73. Therefore, the third *Grinnell* factor weighs in favor of final approval.

Turning to the fourth and fifth *Grinnell* factors, the risk of establishing liability and damages further weighs in favor of final approval.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits.  *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  Here, Plaintiffs would have faced numerous risks as to both liability and damages if they had continued to litigate.  Defendants anticipated filing a motion to dismiss the third amended complaint, arguing that that the alleged misstatements were not false or misleading and that Plaintiffs could not establish scienter.  Rosen Decl. ¶¶ 37-38. Further, "Lead Plaintiff would have confronted considerable

challenges in establishing class-wide damages." *Id.* ¶ 39.  The proposed settlement eliminates these uncertainties.  These factors therefore weigh in favor of final approval.

The risk of obtaining class certification and maintaining it through trial is also present.  Plaintiffs' claims would have had to survive a motion for class certification and a motion for summary judgment, *see id.* ¶ 40, all of which would have required further and extensive briefing, and also could have entailed additional appeals.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

Turning to the seventh *Grinnell* factor, the Defendants here do have financial constraints.  While they might be able to withstand a somewhat greater judgment, "a defendant is not required to empty its coffers before a settlement can be found adequate."  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quotation omitted).  Defendants' financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the Settlement is fair, reasonable and adequate.

Finally, the amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "is not susceptible

of a mathematical equation yielding a particularized sum." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000).  Instead, "there is a range of reasonableness with respect to a settlement–a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, Lead Counsel asserts that the Settlement would constitute 12% percent of the estimated recoverable damages.  Rosen Decl. ¶¶ 45-46.  This is a reasonable result when compared to the median recovery for securities class action settlements of 1.7% in 2020.  *Id.*  Therefore, the amount of this immediate recovery is reasonable and this factor weighs in favor of final approval.

Weighing the *Grinnell* factors, I find that the Settlement is substantively fair and weighs in favor of final approval.

### 2.   Rule 23(e)'s Remaining Factors

The proposed method of distribution is effective.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  The settlement provides for the distribution of proceeds in accordance with the Plan of Allocation.  Under the Plan of Allocation, the Claims Administrator will calculate a recognized claim amount for each settlement class member's purchases of stock during the

M171SKIC

relevant time frame. Rosen Decl. ¶ 63. The Claims Administrator will then distribute a *pro rata* share of the net settlement to each authorized claimant. *Id.* ¶ 64. "This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019).

The proposed award of attorneys' fees is fair and reasonable when the terms of the proposed award are considered. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed below, the proposed attorneys' fees of 1/3 of the total settlement, or $2,783,333.33, to be paid upon approval by the Court, are reasonable in light of the work of Lead Counsel, their investment of resources in the case, their prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the settlement achieved.

The parties are also required to identify agreements entered into in connection with the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3) require that the parties seeking approval file a statement identifying any agreement made in connection with the proposal, and that I consider any such agreements in my evaluation of the settlement. Here, "[t]he Parties entered into a confidential agreement establishing conditions under which the Company may terminate

the Settlement if Settlement Class Members who collectively have claims equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement." Memorandum of Law in Support of Motion for Final Approval ("Final Approval Mem."), Dkt. No. 128, at 14.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *15.

And finally, the Settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D).  As discussed further below, the Plan of Allocation provides that each eligible class member will receive a *pro rata* share of the net settlement based on their purchases of stock as calculated under the Plan of Allocation.

### IV.  PLAN OF ALLOCATION

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized–namely, it must be fair and adequate . . . .  An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation and quotation omitted). "[A] plan of allocation need not be perfect," *EVCI*, 2007 WL 2230177, at *11 (collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," *In re*

*PaineWebber*, 171 F.R.D. at 133.  Thus, "[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."  *EVCI*, 2007 WL 2230177, at *11.

Here, "[u]nder the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim Amount for each Settlement Class Member's purchases of Acer common stock between September 25, 2017 and June 24, 2019, both dates inclusive."  Rosen Decl. ¶ 63.  "An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Acer the Claimant purchased, acquired, or sold during the relevant period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants."  *Id.* ¶ 65.

Because the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced class counsel and its expert, I find it to be fair and adequate.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008).

## V.  DISSEMINATION OF NOTICE

On August 11, 2021, I entered an order granting preliminary approval of the Settlement as "sufficiently fair, reasonable, and adequate" to class members.  Dkt. No. 125. Strategic Claims Services ("SCS"), the Court-appointed Claims Administrator, mailed or emailed the settlement notice to 7,349 potential settlement class members.  Rosen Decl. ¶ 5.  SCS

published a summary notice in *Investor's Business Daily* and transmitted the summary notice over *GlobeNewswire*. *Id.* ¶ 55. SCS further established a Settlement Website that provided additional information for potential settlement class members. *Id.* ¶ 56. It also created and continues to maintain a toll-free telephone number for potential class members to obtain more information about the Settlement and the process for filing a claim. *Id.* ¶ 57.

These notices apprised settlement class members of, among other things, (1) a summary of the Settlement; (2) the proposed plan of allocations; (3) the amount Lead Counsel would seek in attorney's fees and expenses and the award to Lead Plaintiff; (4) instructions on how to object and a date by which settlement class members must object; (5) an explanation of the reasons for the Settlement; (6) a date by which settlement class members must file a request for exclusion; and (7) the deadline for submitting a claim form. *Id.* ¶ 51; *see also* Fed. R. Civ. P. 23(c)(2)(B).

I find that these efforts fairly and adequately advised class members of the terms of the settlement, including informing class members of the deadline and manner in which they were required to submit a claim form to be eligible for a distribution, and informing all class members of their rights, including their right to object to the Settlement and to attend the final fairness hearing today. I find that the notice and

M171SKIC

its distribution comported with all constitutional requirements, including those of due process.

### VI.  ATTORNEYS' FEES, COSTS AND EXPENSES

Lead Counsel requests attorneys' fees in the amount of $2,783,333.33 plus interest.  This amounts to 33.3% of the $8.35 million Settlement Fund.  Memorandum of Law in Support of Motion for Attorney Fees ("Fee Mem."), Dkt. No. 131.  Lead Counsel also requests reimbursement of $160,016.52 plus interest in litigation expenses.  *Id.*  In addition, the Lead Plaintiff requests an  award of $10,000 as compensation for the costs and expenses incurred in prosecuting the case on behalf of the Class as Lead Plaintiff.

The trend in the Second Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases, although the Court has discretion to award attorneys' fees based on either the lodestar method or the percentage-of-recovery method.  *See Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019).

The notice provided to class members advised that class counsel would apply for attorneys' fees for up to 33% of the Settlement Fund.  Dkt. No. 132-2 Ex. A at 1.  No class member objected to that provision.

### A.  *Goldberger* Factors

Reasonableness is the touchstone when determining

M171SKIC

whether to award attorney's fees.  In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Id.* at 50.

### 1.  Lead Counsel's Time and Labor

Lead Counsel's fee declaration show a total of 2,120.18 hours spent on the litigation over the course of this action.  Declaration of Laurence Rosen Concerning Attorney's Fees ("Rosen Fee Decl."), Dkt. 132-4, ¶ 5.

### 2.  Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  "In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (quotation omitted).  This case is one of substantial magnitude.  In addition to all of the complications that attend to any large securities class action, this matter involved

M171SKIC

complex scientific factual issues, discovery, and litigation. The amount sought by Plaintiffs' counsel is commensurate with the magnitude and complexity of this litigation.

### 3.   The Risk of Litigation

As discussed, Lead Counsel faced significant risk in prosecuting this action and proving the merits of the claims. Defendants adamantly denied any wrongdoing and, in the event that litigation had continued, would have continued to aggressively litigate their defenses through further class certification proceedings, summary judgment, trial, and appeals.

### 4.   Quality of Representation

Lead Counsel has considerable experience in consumer class actions lawsuits, such as this.  See Rosen Law Firm Biography, Dkt. No. 132-4 Ex. A.  Here, the Court has no reason to doubt the quality of their representation.

The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement. Morrison & Foerster LLP is a prominent defense firm, and "the ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010); *see also Christine Asia Co.*, 2019 WL 5257534, at *19 ("[o]ne marker

M171SKIC

of the quality of representation the Class received is the quality of the result obtained.").

Accordingly, I find that this *Goldberger* factor weighs in favor of approving the requested fee award.

### 5.    The Requested Fee in Relation to the Settlement

Generally, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.  As stated previously, Lead Counsel was permitted to seek up to 33% under the Settlement and seeks that amount.  In this case, that fee is within the range of reasonableness in light of other class action settlements in this circuit.  *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Warren v. Xerox Corp.*, 2008 WL 4371367, at *22 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33% of the total settlement value, and finding such a sum "comparable to sums allowed in other cases").

### 6.    Public Policy Considerations

When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  "Courts have, as a

M171SKIC

generic matter, frequently observed that the public policy of vigorously enforcing the federal securities laws must be considered in calculating an award." *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 502 (S.D.N.Y. 2017) (quotation omitted), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63 (2d Cir. 2019). Vigorous, private enforcement of the federal securities laws can only occur if private investors can obtain some parity in representation with that available to large corporate defendants. Accordingly, public policy favors granting Lead Counsel's fee request.

After considering all the *Goldberger* factors, the requested fee award appears to be reasonable.

### B.  Litigation Expenses

Lead Counsel also moves the Court for reimbursement of $160,016.52 in litigation expenses, which include investigator and expert fees, legal research and document retrieval fees, discovery database hosting fees, mediation fees, postage fees, notice fees, travel and transportation fees, and photocopying, scanning, and printing fees. *See* Rosen Fee Decl. ¶ 7. Courts routinely award such costs. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); Fed. R. Civ. P. 23(h). Counsel's motion for costs and expenses is granted.

### C.  Lodestar "Cross Check"

In *Goldberger*, the Second Circuit "encourage[d] the practice of requiring documentation of hours as a "cross check" on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.*  Counsel submitted a summary of time records detailing the billable rate and hours worked by each attorney in this case.  Rosen Fee Decl. ¶ 5.  I find that these billable rates, based on the timekeeper's title, specific years of experience, and market rates for similar professionals in their fields nationwide and in New York, where the Rosen Law Firm is based, to be reasonable in this context.

Based on Plaintiffs' Counsel's requested fee-one third of the Settlement, $2,783,333.33-the lodestar yields a "crosscheck" multiplier of about 1.70.  Therefore, the fee is below the multipliers typically awarded in this Circuit. "Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (quotation omitted) (collecting cases).  Thus, the lodestar "cross check" confirms that Plaintiffs' counsel's requested fee is reasonable.

The Court therefore finds that, based on the

M171SKIC

*Goldberger* factors and the lodestar "cross check," that Plaintiffs' Counsel's requested fees are reasonable.

### D. Lead Plaintiff's Expenses

Lead Plaintiff seeks an award of $10,000 in recognition of the time and expense that he incurred on behalf of the class.  Declaration of Nicholas Skiadas ("Skiadas Decl."), Dkt. No. 132-3, ¶ 12.  15 U.S.C. § 77z-1(a)(4) allows "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

As set forth in his declaration, Lead Plaintiff dedicated time to the successful prosecution of this Action, including by reviewing pleadings and motions, discussing strengths and risks of the case, and consulting with Lead Counsel regarding settlement.  Skiadas Decl. ¶ 7.  These are the kinds of activities which regularly are found to support awards to class representatives.  Lead Plaintiff asserts that $10,000 is a conservative estimate of the value of the time and resources he invested in this case.  *Id.* ¶ 12.  And the application here is consistent with the Notice, which disclosed that the "Award to Lead Plaintiff [is] not to exceed $10,000." Dkt. No. 132-2 Ex. A at 1.

Thus, I find that the requested award of $10,000 to Lead Plaintiff is reasonable.

## VII.   CONCLUSION

In conclusion, I am reaffirming my certification of the class for the purpose of effectuating the settlement, approve the class action settlement for $8,350,000 and approve the plan for allocating and distributing the net proceeds of the settlement.  I award Lead Counsel $2,783,333.33 in fees-which amounts to one-third of the Settlement fund-in addition to their requested reimbursement of $160,016.52 in litigation expenses.  I also award Lead Plaintiff a service award of $10,000.  I expect to enter an order and judgment consistent with the parties' proposals later today or tomorrow. Please send me a Word version of the proposed Order to my chambers email account.  If you could do that as promptly as possible, it would be very helpful.

Counsel, anything else that we need to take up here before we adjourn?  First, counsel for plaintiffs?

MR. ROSEN:  This is Laurence Rosen.  Your Honor, nothing else from plaintiff other than to alert the Court that we will probably, in the next 90 days or 120 days, file a motion to distribute the settlement proceeds once quality control checks have been completed.

THE COURT:  Thank you very much.  We'll look for that.

Counsel for defendants, anything else?

MS. LEVITT:  Nothing further, your Honor.  Just to thank the Court for its attention to this matter.

M171SKIC

THE COURT:  Good.  Thank you, all.  Thank you for your hard work on the case and your efforts to resolve it amicably. This proceeding is adjourned.  Thank you, all.

o0o